Law Office of Richard W. Snyder
Richard W. Snyder, Esq.
131 N. Tustin Avenue, Ste. 200
Tustin, CA 92780
Tel. (714) 505-7585 x250
Fax (714) 505-7588
Attorney for Plaintiff
Billie Rene' Frances Lillian Powers

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| BILLIE RENE' FRANCES LILLIAN POWERS,<br><br>    Plaintiff,<br><br>    vs.<br><br>COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE BANK, FSB; COMMONWEALTH LAND TITLE INSURANCE COMPANY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS"; BANK OF AMERICA, N.A.; RECONTRUST COMPANY, N.A.; BAC HOME LOANS SERVICING, LP; QUALITY LOAN SERVICING CORPORATION ; SELECT PORTFOLIO SERVICING, INC.; THE BANK OF NEW YOUR MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-HY9, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY9; THE BANK OF NEW YOUR MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE , FOR THE CERTIFICATE HOLDERS, ALTERNATIVE LOAN TRUST 2007-HY9 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-HY9; JON SECRIST; AND DOES 1 TO 10,<br><br>    Defendant(s). | Case No.:  SACV17-01386-DOC-KES<br><br>Assigned to District Judge:<br>Hon. David O. Carter<br><br>Courtroom 9D<br><br>Assigned Discovery Magistrate Judge:<br>Hon. Karen E. Scott<br><br>PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS<br><br><br><br>Hearing on Motion<br>Date:  November 20, 2017<br>Time: 8:30 am<br>Dept:  9D<br><br>Date Filed: August 11, 2017 |

Comes Now, the plaintiff Billie Rene' Frances Lillian Powers ("Plaintiff") and filed this response to the Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") brought by the two (2) defendants' Select Portfolio Servicing, Inc. and the Bank of New York Mellon, f/k/a/ the Bank of New York, as Trustee, on behalf of the holders of the Alternative Loan Trust 2007-HY9, Mortgage Pass-Through Certificates Series 2007-HY9 (cumulatively referred to hereinafter as the "Defendants" and individually referred to as "Select" and "BONY as Trustee", respectively).

This opposition is based on the declarations contained herein and attachments hereto as well as any and all documents contained in this court's file, including but not limited to those documents contained in the Defendants' Request for Judicial Notice supporting its motion, as well as any evidence and argument presented at the hearing on the instant motion.

Date:  October 30, 2017                                Respectfully,

_____
Richard W. Snyder, Esq.
Attorney for Plaintiff

## MEMORANDUM OF POINTS AND AUTHOIRTIES

## I.    INTRODUCTION

On or about April 13, 2007, the Plaintiff executed a Residential Purchase Agreement and Joint Escrow Instructions respecting her intended purchase of the real property located at 40701 Ortega Hwy, San Juan Capistrano (unincorporated), CA 92530 ("Property").  Plaintiff took possession of the Property on or about July 2, 2007 and resided thereat at all times subsequent thereto but prior to the filing of the First Amended Complaint ("FAC") in this matter.  From the very moment of the opening of the purchase escrow through the filing of the FAC, Plaintiff has been the victim of numerous fraud schemes respecting her title to the Property.  Among the documents contained in the purchase escrow file, there existed a grant deed, a promissory note (the "Note"), and a deed of trust which purportedly secured the Note in favor of Countrywide Bank, FSB ("Lender"[1]).  As a result of the fraudulent conveyances, neither the Plaintiff nor the Lender nor its purported successors received any interest in the Property.  Thus, the entity ultimately conducting the foreclosure sale lacked authority to do so rendering the sale void.

In addition, on or before May 4, 2010, the entity then servicing the Note accelerated the balance due.  The acceleration of the balance due commenced the six year statute of limitations prescribed by Cal. Comm. Code § 3-118.  On August 8, 2016, more than six years after the acceleration of the debt a trustee's sale was conducted.  As a result of the expiration of the statute of limitations, the entity conducting the foreclosure sale lacked authority to do so.

### Fraud in the Grant Deed

In the process of the purchase, on or about April 17, 2007, a document titled "Additional Escrow Instructions" was executed.  The instructions indicated that title was to be vested in Plaintiff solely (see Exhibit "1").  On April 26, 2007, the seller of the Property Roger Lee

---

[1]  At some point in time between 2007 and 2010, Countrywide Home Loans, Inc. and its subsidiaries, among which was Countrywide Bank, FSB, were purchased by Bank of America, N.A.  Throughout this brief wherever the term "Lender" is used it refers to Countrywide Bank, FSB prior to the purchase and Bank of America, N.A. after the purchase.

Delong ("Seller") executed a Grant Deed (the "True Grant Deed") naming Plaintiff as the sole grantee.  Three weeks later, on May 15, 2007, and addendum to the Residential Purchase Agreement was prepared reconfirming the fact that Plaintiff was the sole buyer (see Exhibit "2"). On May 29, 2007, the Plaintiff received 2 documents each titled "Escrow Modification".  Each of said documents identified the Plaintiff as the sole buyer (see Exhibit "3"), again confirming that Plaintiff was the sole buyer.  Sometime between June 1, 2007 and June 15, 2007, the Plaintiff was advised by Lender that she no longer qualified for the prospective loans and that she need to have a co-signor.  At this time, **over 5 weeks after** the True Trust Deed was executed and notarized, the Plaintiff's sister and brother-in-law Louis J. Hanson and Jacqueline M. Hanson agreed to co-sign (see Exhibit "4").  This was their first appearance as a purchaser in the purchase transaction.

At closing, on July 2, 2007, a materially altered version of the True Grant Deed (the "Fraud Grant Deed") dated April 26, 2007 was recorded[2] (see Exhibit "5").  The True Grant Deed was altered to remove the Plaintiff's name and replace it with the names "Billie Rene Powers", "Louise J. Hanson", and "Jacqueline M. Hanson".  The replaced names were not written in the same font as the balance of the document, but instead appear to be from a typewriter.  Additionally, the name Louis J. Hanson was misspelled as Louise J. Hanson.

In short, the True Grant Deed was executed on April 26, 2007, at a time when only the Plaintiff was to be on title as evidenced by the aforesaid escrow instructions.  Approximately 5 weeks later, when the Plaintiff needed co-signors, Louis J. Hanson and Jacqueline M. Hanson were added as buyers.  Magically, at the close of escrow on July 2, 2007, the Fraud Grant Deed, dated April 26, 2007 mysteriously contained the names of the additional buyers.

In further support of the fact that the True Grant Deed was modified to add the additional buyers after it was notarized and delivered to the escrow, the notary Nancy F. Ganzon, who prior to August 2014 was a stranger[3] to Plaintiff, executed an affidavit (see Exhibit "7") wherein she

---

[2] All references to a document being "recorded" refer to being recorded in the office of the County Recorder for the County of Orange, State of California unless clearly expressed or implied otherwise.

[3] In support of her testimony that she did not know the Notary Nancy F. Ganzon, Exhibit "6" is a copy of a form for a complaint with the State of California, Secretary of State, Notary Public Section, requesting information on the Notary.

testified and will further testify if needed, that the Fraud Grant Deed, bearing her signature and notary stamp, is not the document that she notarized, but instead is an altered version of the one she notarized.  The post notarization material alteration of the True Grant Deed rendered the Fraud Grant Deed void.

### The Deed of Trust Failed to Convey Any Interest in the Property

Pursuant to the illusory powers granted to her in the Fraud Grant Deed, on June 27, 2007, Plaintiff executed a Deed of Trust (the "1st DOT", see Exhibit "8") on her own behalf and on behalf of Louis J. Hanson and Jacqueline M. Hanson via 2 powers of attorney.  The Fraud Grant Deed and the 1st DOT were recorded sequentially on July 2, 2007 as document numbers 2007000417170 and 2007000417171.  On the 1st DOT, the "Lender" is Counrtywide Bank, FSB ("Lender"), the "Trustee" was ReconTrust Company, N.A. ("DOT Trustee"), and Mortgage Electronic Registration Systems, Inc, ("Mers") a Delaware company was identified as the "Beneficiary" acting solely as the nominee for Lender.  Because the Fraud Grant Deed was void, Plaintiff received nothing by way of the Fraud Grant Deed.  In turn, when Plaintiff executed the 1st DOT and "conveyed" the Property to the DOT Trustee for the benefit of Mers as nominee for Lender, Plaintiff had no interest in the Property to convey and the DOT Trustee, Mers, and Lender received nothing.

### Fraud in the Assignment of the 1st DOT

On or about October 26, 2010, a document titled "Corporate Assignment of Deed of Trust" ("Assignment of DOT", see Exhibit "9") was recorded purporting to assign the 1st DOT to The Bank of New York Mellon fka The Bank of New York, as Trustee, **for the Certificateholders CWALT Inc.**, Alternative Loan Trust 2007-HY9 Mortgage Pass-Through Certificates, Series 2007-HY9 ("BONY as Trustee")(emphasis added).  The Assignment of DOT was purportedly signed by Nichole Clavadetscher in her capacity as a Certifying Officer of Mers. The Assignment of DOT was purported to have been notarized by Jon Secrist ("Secrist"), whose notary commission number is 1893949.

On or about November 16, 2012, Plaintiff initiated a claim with Merchants Bonding Company ("Bond Co") who provided a notary bond for the notary, Secrist (see Exhibit "10"). Through its claim Plaintiff alleged that the signature for Nichole Clavadetscher on the Assignment of DOT was not genuine and therefore, Secrist's representation on the notary acknowledgement, made under penalty of perjury, that Nichole Clavadetscher personally appeared before him, was false.  In its November 29, 2012 reply letter asking for more information to substantiate the Plaintiff's claim, Bond Co stated that it only paid actual damages (see Ex. "10", pg 1, ¶ 3) and that policy limit was $15,000.00 (see Ex. "10", pg 3).  On or about December 6, 2012, Plaintiff submitted a written "Proof of Claim" to Bond Co (see Exhibit "11"). Thereafter, on or about February 27, 2013 (after nearly 3 month time to investigate its liability) Bond Co paid Plaintiff the full policy limit of $15,000.00 in settlement of Plaintiff's claim (see Exhibit "12").  The forged signature of Nichole Clavadetscher on the Assignment of DOT rendered it void.

**The Assignment of DOT was to BONY as Trustee, However Subsequent to the Assignment, a Substitution of Trustee, a Notice of Default and a Trustee's Deed Upon Sale Were All Executed in a Different Name.**

The Assignment of DOT purports to transfer the beneficial interest under the 1st DOT to an entity named "The Bank of New York Mellon fka The Bank of New York, as Trustee, **for the Certificateholders CWALT Inc.,** Alternative Loan Trust 2007-HY9 Mortgage Pass-Through Certificates, Series 2007-HY9" (emphasis added)(see Exhibit "9").

On February 28, 2014, a Substitution of Trustee, purporting to substitute Quality Loan Service Corporation ("Quality") as a successor trustee to the DOT Trustee (see Exhibit "13") was recorded.  On the 4th page of the Notice of Default, the beneficiary is identified as "The Bank of New York Mellon fka The Bank of New York, as Trustee, **on behalf of the holders of the** Alternative Loan Trust 2007-HY9 Mortgage Pass-Through Certificates, Series 2007-HY9". ("BONY for Wrong Trust")(emphasis added).  The beneficiary name on the Notice of Default is materially different from that contained in the 1st DOT and the Assignment of DOT, in that the

words "for the Certificateholders of the Cwalt, Inc." (in the 1st DOT and in the Assignment of DOT) was replaced with the words "on behalf of the holders" (in the Substitution of Trustee). The name of the beneficiary making the substitution of trustee was clearly not BONY for Trustee as identified on the 1st DOT and the Assignment of DOT.

On September 25, 2014, a Notice of Default, claiming to be a notice of default on the 1st DOT (see Exhibit "14", pg 2, circled item 1) was recorded.  On the 4th page of the Notice of Default, the beneficiary was identified as BONY for Wrong Trust, the exact same way it was identified in the Substitution of Trustee.  The name of the beneficiary on behalf of which Quality was recording the Notice of Default was clearly not BONY as Trustee, but rather was BONY for Wrong Trust.

On August 8, 2016, a Trustee's Sale was conducted by Quality and on August 8, 2016, Quality recorded a Trustee's Deed Upon Sale (see Exhibit "15").  On the Trustee's Deed Upon Sale, the grantee was identified as BONY for Wrong Trust, the exact same way it was identified in the Substitution of Trustee and the Notice of Default.  The name of the beneficiary/grantee on behalf of which Quality conducted the trustee's sale and on whose behalf Quality recorded the Trustee's Deed Upon Sale and who was the putative credit purchaser, was clearly not the beneficiary identified on the 1st DOT and the Assignment of DOT.  Furthermore, on the Trustee's Deed Upon Sale, it states that the grantee on the Trustee's Deed Upon Sale was the foreclosing beneficiary, when clearly it was not.

**The Note was never endorsed from Lender to Bony as Trustee.**

In order to foreclose on the Note through the power of sale clause ion the 1st DOT, the foreclosing party must be the holder of the Note.  Without the Note, BONY for Wrong Trust can not be the holder entitled to foreclose.  In fact, the Note was never endorsed by Lender, its successor BOA or its servicer BAC, to BONY as Trustee or to BONY for Wrong Trust.  As the court can see, BONY for Wrong Trust's Request for Judicial notice includes approximately 500 pages of support documents.  BONY for Wrong Trust failed to included a copy of the Note

1   because BONY for Wrong Trust simply does not have the Note and therefore is not the holder.

2   Since it is not the holder, it was without power to foreclose.

3

4   **The Statute of Limitations Expired prior to the Foreclosure Sale Rendering the Note**

5   **Void.**

6   At the time of closing of escrow on July, 2, 2007, there existed a promissory note (the

7   "Note") which was purportedly secured by the 1st DOT. In or before May 6, 2008, Lender, or its

8   servicer BAC Home Loans Servicing, LP ("BAC") declared the Plaintiff, Louis J. Hanson and

9   Jacqueline M. Hanson (cumulatively "Borrowers") in default on the Note and exercised its right

10   to accelerate the debt allegedly due on the Note (see RJN, Ex. "D"). Thereafter, on November 5,

11   2008, Lender or its servicer BAC recorded a Notice of Trustees Sale (see RJN, Ex. "F"), thus

12   reaffirming that the alleged debt due on the Note was accelerated. The acceleration of the

13   alleged balance due on the Note commenced the six year statute of limitations prescribed by Cal.

14   Comm. Code § 3-118. Subsequent to January 1, 2010, the Plaintiff has made no payments on the

15   Note to anyone and has not acknowledged any obligation on the Note. On or about May 4, 2010,

16   BAC sent the Plaintiff a letter demanding what it determined to be the balance due on the Note

17   (see Exhibit "17"). On May 6, 2010, BAC recorded a Notice of Default wherein it reaffirmed its

18   position that the accelerated balance was due (see Exhibit "18"). On August 8, 2016, more than

19   six years after the acceleration of the debt, a trustee's sale was conducted. As a result of the

20   expiration of the statute of limitations the Note became unenforceable. Thus, the entity

21   conducting the foreclosure sale lacked authority to do so.

22

23   **II.   EFFECT OF JUDICIAL ESTOPPLE FROM PRIOR BANKRUPTCY FILINGS**

24   "In the bankruptcy context, the federal courts have developed a basic default rule: If a

25   plaintiff-debtor omits a pending (or soon to be filed) lawsuit from the bankruptcy schedules **and**

26   **obtains a discharge (or plan confirmation)**, judicial estopple bars the action." M. Ah Quin v.

27   County of Kauai Department of Transportation, 733 F. 3d 267, 271 (9th Cir. 2013)(emphasis

28   added). In its brief, the defendant identifies the following bankruptcy cases:

February 17, 2009       Chapter 7

November 11, 2009      Chapter 13

December 28, 2009      Chapter 13

February 10, 2010       Chapter 11

July 14, 2010              Chapter 11

August 4, 2017            Chapter 13

The Plaintiff only received a discharge (or a confirmed plan) in the February 17, 2009 chapter 7 bankruptcy case.  Thus, without obtaining a discharge or a confirmed plan, Judicial estopple is not applicable to any of the dismissed bankruptcy cases.

1.      **February 17, 2009 Chapter 7 Bankruptcy Case**

On February 17, 2009, the Plaintiff filed a Chapter 7 bankruptcy petition (see RJN, Ex. "R").  The Plaintiff received a discharge in the February 17, 2009 Chapter 7 bankruptcy filing.  The Plaintiff's obligation to list the causes of action therein are analyzes as follows:

A.  **Cancellation of Fraud Grant Deed and Wrongful Foreclosure Stemming Therefrom .**  At that time Plaintiff filed the February 17, 2009 Chapter 7 Bankruptcy Case, she did not suspect the grant deed she received through the escrow was materially altered and therefore void.  It follows necessarily that any cause of action for cancellation of the Fraud Grant Deed would not be identified in the bankruptcy schedules.  The Purpose of Judicial Estopple "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to exigencies of the moment." <u>M. Ah Quin</u>, supra at 270.  Intent to conceal is absent in this case.  In <u>M. Ah Quin</u>, supra at 276-277, the court stated:

> "Courts must determine whether the omission occurred by accident or was made without intent to conceal.  The relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset—though those are certainly factors.  The relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules."

Here, the Plaintiff had no idea of the fraud in the Fraud Grant Deed.  Having no knowledge of the fraud, the Plaintiff had no obligation to list the cause of action in her Schedule B.  The Plaintiff did in fact make those disclosures she was then aware of when she listed her

interest in the Property in her bankruptcy Schedule A (see RJN, Ex. "R").  Plaintiff's ownership

in the Property was duly listed and any infirmities in the chain of title were discoverable by the

Chapter 7 Trustee who elected not to investigate the hidden infirmities, but rather to conclude its

investigation into Plaintiff's title when it filed its Chapter 7 Trustee's Report of No Distribution

(see RJN, Ex. Q, Doc #15).   The Plaintiff's lack of knowledge of the fraud perpetrated on her by

a third party renders judicial estopple inapplicable as a matter of law.

   The standard movant would have this court apply is that if one files bankruptcy and has

real estate, one must either have an attorney and a document examiner examine one escrow file

to make sure all the documents are genuine and effective or waive the undiscovered fraud.

Filing bankruptcy is simply not a waver of undiscovered causes of action.

   B.  **Cancellation of the Assignment of DOT and Wrongful Foreclosure Stemming**
**Therefrom.**  BONY for Wrong Trust's alleged authority to foreclose stems from the Assignment

of DOT which was recorded October 26, 2010, some 1 year and 8 months after the February 17,

2009 bankruptcy filing.  The cause of action for wrongful foreclosure did not arise until the

foreclosure sale on August 8, 2016, long after the February 17, 2009 bankruptcy filing.  This

cause of action occurred post-petition and therefore it was not possible to list the cause of action

in the bankruptcy.

   C.  **Wrongful Foreclosure When BONY as Trustee was not the Holder of the**
**Note.**  The cause of action for wrongful foreclosure, based on the fact that BONY for Wrong

Trust was not the holder of the Note, did not occur until the August 8, 2016 foreclosure sale,

long after the February 17, 2009 bankruptcy filing.  This cause of action occurred post-petition

and therefore it was not possible to list the cause of action in the bankruptcy.

   D.  **Wrongful Foreclosure When BONY as Trustee Performed Non-Judicial**
**foreclosure after the Expiration of the Statute of Limitations.**  The statute of limitations did

not expire until at least 6 years after the May 6, 2008 acceleration which was in excess of 5 years

after the February 17, 2009 bankruptcy filing.   This cause of action occurred post-petition and

therefore it was not possible to list the cause of action in the bankruptcy.

   2.   **November 11, 2009 Chapter 13 Bankruptcy Case**

It is a determinative fact that Plaintiff did not receive a discharge in the November 11, 2009 Chapter 13 case and thus judicial estopple can not apply.  Aside from that, the Plaintiff's lack of any obligation to list the causes of action in the November 11, 2009 Chapter 13 bankruptcy are identical to those for the February 17, 2009 Chapter 7 bankruptcy.  In addition thereto, the November 11, 2009 Chapter 13 bankruptcy petition (see RJN, Ex. "U") was filed incomplete.  This type of filing is allowed so long as the required documents would be filed before November 27, 2009 (see RJN, Ex. "T").  The Plaintiff failed to timely file her Schedule A or her Schedule B as well as numerous other required documents.  Thus, she made no inconsistent representations because she made no representations at all.  Based on her failure to timely file her documents, the bankruptcy court dismissed her bankruptcy case.

3.      **December 28, 2009 Chapter 13 Bankruptcy Case**

It is a determinative fact that Plaintiff did not receive a discharge in the December 28, 2009 Chapter 13 case and thus judicial estopple can not apply.  The Plaintiff's lack of any obligation to list the causes of action in the December 28, 2009 Chapter 13 bankruptcy are identical to those for the February 17, 2009 Chapter 7 bankruptcy.  In addition thereto, the December 28, 2009 Chapter 13 bankruptcy petition (see RJN, Ex. "W") was filed incomplete. This type of filing is allowed so long as the required documents would be filed before January 11, 2010 (see RJN, Ex. "V").  The Plaintiff failed to timely file her Schedule A or her Schedule B as well as numerous other required documents.  Thus, she made no inconsistent representations because she made no representations at all.  Based on her failure to timely file her documents, the bankruptcy court dismissed her bankruptcy case.

4.      **February 10, 2010 Chapter 11 Bankruptcy Case**

It is a determinative fact that Plaintiff did not receive a discharge in the February 10, 2010 Chapter 13 case and thus judicial estopple can not apply.  The Plaintiff's lack of any obligation to list the causes of action in the February 10, 2010 Chapter 11 bankruptcy are identical to those for the February 17, 2009 Chapter 7 bankruptcy.

5.      **July 14, 2010 Chapter 11 Bankruptcy Case**

It is a determinative fact that Plaintiff did not receive a discharge in the July 14, 2010 Chapter 13 case and thus judicial estopple can not apply.  The Plaintiff's lack of any obligation to list the causes of action in the July 14, 2010 Chapter 11 bankruptcy are identical to those for the February 17, 2009 Chapter 7 bankruptcy.

      6.    **August 4, 2017 Chapter 13 bankruptcy**

It is a determinative fact that Plaintiff did not receive a discharge in the August 4, 2017 Chapter 13 case and thus judicial estopple can not apply.  Amazingly the movant's states that "she did not disclose the existence of any of the claims asserted in the instant action or the fact that she had even filed the instant action" (see Motion to Dismiss, Pg 6 lines 19-20) without disclosing to the court that the filing was incomplete and that the Schedule B, wherein causes of action must be disclosed was not due until August 18, 2017 (see RJN, Ex. "JJ", Docket #1).  As the court will notice from a review of the docket, docket entry #5 set a hearing on August 7, 2017, just 3 days after the filing and 11 days before the date the disclosures were due.  At that hearing the Plaintiff's bankruptcy case was dismissed.  There were simply no representations past due and no representations made to the court at the time the case was dismissed.  Movant's attempt to mislead the court into thinking that the Plaintiff somehow failed to make the required disclosure justifying judicial estopple is egregious.   That being said, the movant's complaint that she had failed to disclose "that she had even filed the instant action" is audacious.  The bankruptcy was filed on August 4, 2017 and dismissed on August 7, 2017, thereafter this lawsuit was filed on August 11, 2017.  How could the Plaintiff fail to disclose filing a lawsuit that had not yet been filed?

**III.**      **EFFECT OF JUDICIAL ESTOPPLE FROM THIRD PARTY LITIGATION**
           **Billie Rene Powers v. Val-Chris Investments, Inc.**

In its brief, the movant takes issue with the case of Billie Rene Powers v. Val-Chris Investments.  In or about November 2007, the Plaintiff borrowed $400,000.00 ("Junior Lien") from a hard money lender named Val-Chris Investments Inc. ("Val-Chris") and pledged the Property via a second deed of trust.  Unknown to the Plaintiff, Val-Chris conducted a foreclosure

sale of the Property in September 2009, which it voluntarily set aside citing irregularities in the foreclosure process (see RJN, Ex. "GG", Ex. "R" thereto), and a second foreclosure sale on or about October 15, 2009 to a Thomas Peppers ("Peppers"). Plaintiff claimed the second sale was likewise unlawful. The first sale was conducted prior to all of the Plaintiff's 2009 and 2010 bankruptcies and the second sale was prior to some of them. Because the Plaintiff knew about the potential wrongful foreclosure cause of action prior to the said bankruptcies and failed to disclose them in her Schedule B in each case, when she filed her wrongful foreclosure complaint in 2012, the court dismissed it based on judicial estopple. The wrongful foreclosure of the junior lien in 2012, by a third party is a wholly distinct set of facts which have no relationship to the facts constituting the wrongful foreclosure by BONY for Wrong Trust in this instant matter.

**Thomas F. Peppers v. Billie Rene Powers**

In its brief, the movant takes issue with the case of Thomas F. Peppers, Trustee of the Thomas F. Peppers Trust, UDT and or Its Successors, and/or Assignees in Interest v. Billie Rene Powers. This unlawful detainer litigation arose out of the Val-Chris second foreclosure sale of the Property to Peppers. Peppers ultimately prevailed after which a settlement was reached and the Plaintiff retained title to the Property. This case is irrelevant.

## IV.   FAILURE TO JOIN INDISPENSABLE PARTIES

In its brief, movant claims the following parties are indispensable: Peppers, Louise J. Hanson, Jacqueline M. Hanson, and Rancho Sonata, LLC.

1.   **Peppers** – The movant names Peppers as an indispensable party but fails to state why other than that he "purchased the Property in 2009 at a foreclosure sale under a junior lien." In fact, the Plaintiff settled with Val-Chris and on June 20, 2013, a document was recorded titled "Mutual Agreement for the Recission of Trustee's Deed and Reconveyance of Deed of Trust. The document was recorded ad Document number 2013000372246. The document rescinds the October 15, 2009 foreclosure sale and reconveys the second deed of trust. Peppers is simply not a indispensable party.

2.    **Louise J. Hanson** – Again, the Fraud Grant Deed when the forger attempted to type in the name Louis J. Hanson, he misspelled the name as Louise J. Hanson.  Compare the Fraud Grant Deed (Ex "5", Louise) with the DOT (Ex "8", Louis).  The bottom line is that Louis J. Hanson was married to the Plaintiff's sister Jacqueline M. Hanson.  The Plaintiff has testified that Louis J. Hanson is deceased and has been since May 6, 2014.

3.    **Jacqueline M. Hanson** – Jacqueline M. Hanson was an alleged co-obligor on the Note and was identified on the Fraud Grant Deed and the DOT.  She was subsequently removed from title via a grant deed recorded July 10, 2007.

4.    **Rancho Sonata, LLC** – Rancho Sonata, LLC was a limited liability company which was created for the sole purpose of holding title to the Plaintiff's real estate.  The Plaintiff conveyed title to the Property to Rancho Sonata, LLC on July 10, 2007 and on November 26, 2014 Rancho Sonata, LLC conveyed to back to the Plaintiff.  Rancho Sonata, LLC is not an indispensable party.

5    **Conclusion** – None of the 4 parties listed are indispensable and the movant does not give any reasons other than to list them.  If the court decides that one or more are, the Plaintiff will add them accordingly.

.

## V.    FAILURE TO STATE A CLAIM

In Section 5 of the movant's motion, after quoting Federal Rules of Civil Procedure, Rule 12(b), the movant commits just 14 lines of boilerplate, which in sum states that one must plead sufficiently.  The 1 paragraph does not analyze any of the causes of action whatsoever and should be disregarded.  The Plaintiff acknowledges that the FAC was drafted by a paralegal rather than an attorney and requests that if any such deficiencies exist, that the Plaintiff be granted leave to amend the FAC to address any issues.

## VI.    STANDING

In its motion, the movant tries to make the case that all of the Plaintiff's causes of action are all part of the February 17, 2009 chapter 7 bankruptcy case and that they may only be

brought by the chapter 7 trustee therein.   A cause of action belongs to the debtor at the time of

the bankruptcy filing and thus is transferred into the bankruptcy estate if the cause of action had

"accrued" at the time of filing. (see State Farm Life Ins. Co. v. Swift (In re Swift)., 129 F.3d 792,

795 (5th Cir. 1997); see also Cusano v. Klein., 264 F.3d 936, 947 (9th Cir. 2001)).  To

determine accrual for this purpose, the courts look to the applicable state law. (Cusano, at p.

947.) Under California law, "[a] cause of action accrues 'when [it] is complete with all of its

elements'—those elements being wrongdoing, harm, and causation." Pooshs v. Philip Morris

USA, Inc., 51 Cal.4th 788, 797 (2011).  In this case, the wrongful foreclosure which is the

gravamen of the Plaintiff's complaint did not occur until August 8, 2016, long after the 2009 and

2010 bankruptcies and therefore did not accrue pre-petition.  As to the August 4, 2017, while the

cause of action accrued pre-petition, it was dismissed 3 days after it was filed which was before

the disclosures were due on August 18, 2017.  Simply stated, at the time the case was dismissed,

the Plaintiff's had not yet filed a Schedule B and therefore she made no representations at all and

at that time her Schedule B was not due.  The Plaintiff in fact did not fail to disclosure of causes

of action.

## VII.    TRUSTEE'S SALE IS NOT PRESUMED VALID

There exists a presumption that a trustee's sale has been conducted regularly and properly

as stated in movant's Motion to Dismiss at page 11, paragraph 8.  The presumption does not

apply to the validity of the sale, only the notice given.  Civil Code § 2924 does not provide a

conclusive presumption of unassailable title. The Court in Melendrez v. D & I Investment, Inc.,

127 Cal.App.4th 1238 (2005) specifically stated at Foot Note 26:

"FN 26. Section 2924's conclusive presumption language for BFP's applies only to
challenges to statutory compliance with respect to default and sales notices. In reaching this
conclusion, we recognize that there is dictum that suggests that the conclusive presumption under
section 2924 applies across the board to any claimed irregularities in the trustee's sale.     In
Moeller the court held that the presumption under section 2924 provides that the trustee's "sale
has been conducted regularly and properly," and that, as against a BFP, the presumption operates
to prevent the trustor from "attacking the validity of the sale." (Moeller, supra, 25 Cal.App.4th
822, 831.) Cases following Moeller have similarly described the conclusive presumption--
applicable under section 2924 there the buyer is a BFP who has received a trustee's deed--as
precluding any attack on the trustee's sale. (See Residential Capital v. Cal-Western
Reconveyance Corp. (2003) 108 Cal.App.4th 807, 817 (Residential Capital) [once trustee's deed

1    is delivered, "there was a conclusive presumption of validity under section 2924"]; 6 Angels,
     Inc. v. Stuart-Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1286 [same]; Angell v.
2    Superior Court (1999) 73 Cal.App.4th 691,699-700 [same].) To the extent that Buyer may
     construe these cases as describing section 2924's presumption as precluding any attack on the
3    foreclosure sale as to a BFP--irrespective of whether the challenge relates to the trustee's
     compliance with procedural requirements concerning the default and sale notices--**we decline to
4    follow such Interpretation**. (See 4 Miller & Starr, Cal. Real Estate, supra, Deeds of Trust §
     10:211, p. 680 [section 2924 "presumption only applies to the propriety of the required notices,
5    but it does not apply to other requirements of the foreclosure process".) " (emphasis added)

6         In <u>Crummer v. Whitehead</u>., 230 Cal, App. 2d 264, 268 (1964), the court held that in an

7    unlawful detainer action "brought pursuant to Code of Civil Procedure §1161 a(b )(3), the

8    Defendants (trustor or homeowner) was entitled to dispute the validity of the trustee's sale and to

9    place respondent's title in issue," citing <u>Kartheiser v. Superior Court</u>, 174 Cal.App.2d 617, 620

10   (1959). The <u>Crummer</u> court further held that "the burden of proof rested upon respondent to

11   show that the trust property had been "duly" sold to him and that her title was "duly perfected."

12        The trustee sale is not presumed valid.

13

14   **VIII.   TENDER IS NOT REQUIRED**

15        Movant next argues that the Plaintiff has failed to allege the ability to comply with the

16   tender rule.  The tender rule is applicable in equitable actions to set aside a trustee's sale[4].  To the

17   extent this Plaintiff's wrongful foreclosure case is founded on the fact that the Fraud Grant Deed

18   was void, this action is NOT an equitable action to set aside a foreclosure sale, rather it is an

19   action at law to declare the foreclosure sale void.  Tender is not required when the trustor is not

20   required to rely on equity to attack the deed as void. (see <u>Lona v. Citibank, N.A</u>., 202

21   Cal.App.4th 89, 112-113 (2011).  This is simply not an action in equity.  The Fraud Grant Deed

22   is void, not voidable.  It passed no rights whatsoever to the Plaintiff who in turn passed no rights

23   whatsoever to Lender via the DOT.  Having received no rights via the DOT, Lender and the

24   Foreclosing Trustee had no right to conduct a foreclosure sale and could not issue anything other

25   than a void trustee's deed upon sale.

26   _____

27   [4]   The elements of a cause of action to set aside the trustee's sale: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully
     oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always
     the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor
28   tendered the amount of the secured indebtedness or was excused from tendering. [Citations.]" (<u>Lona v. Citibank, N.A.</u> (2011) 202 Cal.App.4th 89,
     104 (<u>Lona</u>).) .

To the extent the court were to find the tender rule applicable, the Plaintiff is still not required to tender because the first of four recognized exceptions to the tender rule: (see <u>Lona</u>, Supra at 112-113) is "if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt."  Here, the Plaintiff asserts that the 6 year statute of limitations as set forth in California Commercial Code § 3118 has expired and therefore the debt is not valid.

## IX.    PARAGRAPHS 11 THROUGH 20 ADDRESS POORLY PLEAD BUT POTENTIALLY MERITORIOUS CAUSES OF ACTION.

Movant makes a good point via paragraphs 11 through 20, that being: the FAC is very poorly plead, it is missing required facts, it is by and large not plead with the particularity required, it is difficult to determine exactly the merits or demerits of the causes of action, and at times remedies are plead as causes of action.  At the outset, it is reasonable for the court to allow for the Plaintiff's attorney to review the causes of action and concisely restate the facts and set forth the causes of action based on those facts.

## X.    CONCLUSION

For the reasons set forth hereinabove, this Court should deny the movant's motion to dismiss and should grant the Plaintiff leave to file a second amended complaint.

Dated: October 30, 2017

Respectfully Submitted,

Richard W. Snyder, Esq.
Attorney for the Plaintiff
Billie Rene' Frances Lillian Powers

### DECLARATION OF BILLIE RENE' FRANCES LILLIAN POWERS

1.      I, Billie Rene' Frances Lillian Powers, am the Plaintiff herein.  I have personal knowledge of all facts set forth herein and if called as a witness to testify thereto I could and would do so.

2.      On or about April 13, 2007, I executed a Residential Purchase Agreement and Joint Escrow Instructions respecting my intended purchase of the Property.  I have resided thereat, along with my minor daughter, at all times subsequent to the purchase through the filing of the FAC in this matter.  At this time, I have been evicted from the property and am relying on the generosity of friends in order to shelter myself and my daughter.

3.      West Coast Escrow handled the escrow.

4.      In the process of the purchase, on or about April 17, 2007, I received a document titled "Additional Escrow Instructions" from West Coast Escrow.  The instructions indicated that title was to be vested in myself solely.  Attached hereto and identified as Exhibit "1" is a true and correct unsigned copy of the Additional Escrow Instructions dated April 17, 2007.

5.      On April 26, 2007, the Seller executed the True Grant Deed naming myself as the sole grantee.  Thereafter, it was delivered to West Coast Escrow.

6.      On May 15, 2007, an Addendum to the Residential Purchase Agreement was prepared indicating myself as the sole buyer.  Attached hereto and identified as Exhibit "2" is a true and correct copy of the Addendum to the Residential Purchase Agreement dated May 15, 2007.

7.      On May 29, 2007, I received 2 documents from West Coast Escrow both of which were titled "Escrow Modification".  Each of said documents identified myself as the only buyer. Attached hereto and identified as Exhibit "3" is a true and correct copy of the "Escrow Modification" documents dated May 29, 2007.

8.      Sometime between June 1, 2007 and June 15, 2007, I was advised by Lender that I no longer qualified for the prospective loans an that I need to have a co-signor.  At that time, OVER A MONTH AFTER the True Trust Deed was executed and notarized, my sister and brother-in-law Louise J. Hanson and Jacqueline M. Hanson agreed to co-sign.  Attached hereto and

1   identified as Exhibit "4" is a true and correct copy of the Addendum to the Residential Purchase

2   Agreement dated June 5, 2007.

3   9.      At closing, on July 2, 2007, the Fraud Grant Deed was recorded which is a materially

4   altered version of the True Grant Deed.  The Fraud Grant Deed was altered to remove the

5   Plaintiff's name and then insert, with what appears to be a typewriter, the names "Billie Rene

6   Powers", "Louise J. Hanson", and "Jacqueline M. Hanson".  Attached hereto and identified as

7   Exhibit "5" is a true and correct copy of the Fraud Grant Deed dated April 26, 2007.

8   10.     Prior to August of 2014, I attempted to contact Nancy F. Ganzon, the notary who

9   notarized the True Grant Deed and whose signature and notary stamp appear on the Fraud Grant

10  Deed.  At that time she was a stranger to me.  When I was unable to find her, I placed a claim

11  against her notary bond.   Attached hereto and identified as Exhibit "6" is a true and correct copy

12  of the Complaint Form dated February 25, 2014.

13  11.     Sometime in August of 2014, I was contacted by the notary Nancy F. Ganzon.  On or

14  about August 27, 2014, Nancy F. Ganzon executed an affidavit wherein she testified that the

15  Fraud Grant Deed, bearing her signature and notary stamp, is not the document that she

16  notarized, but instead is an altered version of the one she notarized.  Attached hereto and

17  identified as Exhibit "7" is a true and correct copy of the Affidavit of Nancy F. Ganzon dated

18  February 25, 2014.

19  12.     On June 27, 2007, I executed the 1st DOT on my own behalf and on behalf of Louis J.

20  Hanson and Jacqueline M. Hanson via 2 powers of attorney.  The Fraud Grant Deed and the 1st

21  DOT were recorded sequentially on July 2, 2007 as document numbers 2007000417170 and

22  2007000417171.  Attached hereto and identified as Exhibit "8" is a true and correct copy of the

23  1st DOT.

24  13.     On October 26, 2010, the Assignment of DOT was recorded purporting to assign the 1st

25  DOT to BONY as Trustee.  The Assignment of DOT was purportedly signed by Nichole

26  Clavadetscher in her capacity as a Certifying Officer of Mers.  The Assignment of DOT was

27  purported to have been notarized by Secrist, whose notary commission number is 1893949.

28

Attached hereto and identified as Exhibit "9" is a true and correct copy of the Assignment of DOT.

14.     On or about November 16, 2012, I initiated a claim with Bond Co, who provided a notary bond for Secrist.  Through my claim, I alleged that the signature for Nichole Clavadetscher on the Assignment of DOT was not genuine and therefore, Secrist's representation on the notary acknowledgement, made under penalty of perjury, that Nichole Clavadetscher personally appeared before him, was false.  Attached hereto and identified as Exhibit "10" is a true and correct copy of a November 29, 2012 letter I received from Bond Co in response to my claim.  In the letter Bond Co asked me for more information to substantiate my claim.  Therein, Bond Co stated that it only paid actual damages (see Ex. "10", pg 1, ¶ 3) and that policy limit was $15,000.00 (see Ex. "10", pg 3).

15.     On or about December 6, 2012, I submitted a written "Proof of Claim" to Bond Co respecting my claim.  Attached hereto and identified as Exhibit "11" is a true and correct copy of my December 6, 2012 "Proof of Claim".

16.     On or about February 27, 2013 (after nearly 3 month time to investigate its liability) Bond Co paid me the full policy limit of $15,000.00 in settlement of my claim.  Attached hereto and identified as Exhibit "12" is a true and correct copy of the $15,000.00 check I received from Bond Co in settlement of my bond claim.

17.     On February 28, 2014, a Substitution of Trustee, purporting to substitute Quality Loan Service Corporation ("Quality") as a successor trustee to the DOT Trustee was recorded. Attached hereto and identified as Exhibit "13" is a true and correct copy of the Substitution of Trustee.

18.     On September 25, 2014, a Notice of Default, claiming to be a notice of default on the 1st DOT was recorded.  Attached hereto and identified as Exhibit "14" is a true and correct copy of the Notice of Default.

19.     On September 30, 2015, a Notice of Trustee's Sale was recorded.  Attached hereto and identified as Exhibit "15" is a true and correct copy of the Notice of Trustee's Sale.

20.     On August 8, 2016, a Trustee's Sale was conducted by Quality and on August 16, 2016, Quality recorded a Trustee's Deed Upon Sale.  Attached hereto and identified as Exhibit "16" is a true and correct copy of the Trustee's Deed Upon Sale.

21.     On or about May 5, 2010, I received a letter from BAC advising me that the balance was accelerated and the entire balance of $1,366,003.88 was then due.  Attached hereto and identified as Exhibit "17" is a true and correct copy of the said letter.

22.     On or about May 6, 2010, the DOT Trustee recorded a Notice of Default advising the Plaintiff that BAC had elected to sell the Property under the 1st DOT.  Attached hereto and identified as Exhibit "18" is a true and correct copy of the said Notice of Default.

        I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed at Tustin, California on October 24, 2017.

                                        By: _____
                                        Billie Rene' Frances Lillian Powers, Declarant