Law Office of Richard W. Snyder
Richard W. Snyder, Esq.
131 N. Tustin Avenue, Ste. 200
Tustin, CA 92780
Tel. (714) 505-7585 x250
Fax (714) 505-7588
Attorney for Plaintiff
Billie Rene' Frances Lillian Powers

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| BILLIE RENE' FRANCES LILLIAN POWERS,<br><br>    Plaintiff,<br><br>  vs.<br><br>COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE BANK, FSB; COMMONWEALTH LAND TITLE INSURANCE COMPANY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS"; BANK OF AMERICA, N.A.; RECONTRUST COMPANY, N.A.; BAC HOME LOANS SERVICING, LP; QUALITY LOAN SERVICING CORPORATION ; SELECT PORTFOLIO SERVICING, INC.; THE BANK OF NEW YOUR MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST2007-HY9, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY9; THE BANK OF NEW YOUR MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE , FOR THE CERTIFICATE HOLDERS, ALTERNATIVE LOAN TRUST 2007-HY9 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-HY9; JON SECRIST; ANDDOES 1 TO 50,<br><br>    Defendant(s).| Case No.: SACV17-01386-DOC-KES<br><br>EX PARTE APPLICATION FOR TEMPORARY RESTRAING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED<br><br><br><br>Date:  11/02/2017<br>Time:  8:30<br>Dept:  9D<br><br>Judge:  Hon. David O. Carter |

Please take notice that by this motion, Plaintiff does hereby move this honorable court for an immediate order restraining and enjoining defendants and their agents, employees, and person acting with them or on their behalf from taking possession of, selling or attempting to sell the property that is the subject of the underlying complaint together with the personal property contained thereon.

Plaintiff further moves the Court to enjoin the above named defendants and their agents from moving to evict or evicting Plaintiff (or if lockout has already occurred restoring Plaintiff into possession) from said property while the Court litigates the Complaint on the basis of the merits.  Plaintiff also moves for an order directing defendants to Show Cause why a preliminary or permanent injunction should not be granted.

Plaintiff further requests that any bond requirement be waived. *See Gilmore v. Wells Fargo Bank N.A., 2014 WL 3749984, at \*6 (N.D. Cal. July 29, 2014)* ("[A] court … has the discretion to waive the bond requirement if there is a high probability of success that equity compels waiving the bond, the balance of the equities overwhelming favors the movant, it appears unlikely that the defendant will suffer any harm as a result of the preliminary injunction, or the requirement of a bond would negatively impact the movant's constitutional rights.").

The attached Memorandum of Points and Authorities supports this motion.

Date:  October 30, 2017

Respectfully,

Richard W. Snyder, Esq.
Attorney for Plaintiff

MEMORANDUM OF POINTS AND AUTHOIRTIES IN SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I.

INTRODUCTION

On or about April 13, 2007, the plaintiff Billie Rene' Frances Lillian Powers ("Plaintiff")
executed a Residential Purchase Agreement and Joint Escrow Instructions respecting her
intended purchase of the real property located at 40701 Ortega Hwy, San Juan Capistrano
(unincorporated), CA 92530 ("Property").  Plaintiff took possession of the Property on or about
July 2, 2007 and resided thereat at all times subsequent thereto but prior to the filing of the First
Amended Complaint ("FAC") in this matter.  From the very moment of the opening of the
purchase escrow through the filing of the FAC, Plaintiff has been the victim of numerous fraud
schemes respecting the title to the Property.  In the purchase escrow, there existed a promissory
note purportedly secured by a deed of trust.  As a result of the fraudulent conveyances, neither
the Plaintiff nor the lender nor its purported successors received any interest in the Property.
Thus, the entity ultimately conducting the foreclosure sale lacked authority to do so rendering the
sale invalid.

In addition, on or before May 4, 2010, the entity servicing the promissory note
accelerated the balance due on the promissory note.  The acceleration of the balance due
commenced the six year statute of limitations prescribed by Cal. Comm. Code § 3-118.  On
August 8, 2016, more than six years after the acceleration of the debt a trustee's sale was
conducted.  As a result of the expiration of the statute of limitations, the entity conducting the
foreclosure sale lacked authority to do so.

**Fraud in the Grant Deed**

In the process of the purchase, on or about April 17, 2007, a document titled "Additional
Escrow Instructions" was executed.  The instructions indicated that title was to be vested in
Plaintiff solely (see Exhibit "1").  On April 26, 2007, the seller of the Property Roger Lee

Delong ("Seller") executed a Grant Deed (the "True Grant Deed") naming Plaintiff as the sole grantee. On May 15, 2007, and addendum to the Residential Purchase Agreement was prepared reconfirming the fact that Plaintiff was the sole buyer (see Exhibit "2"). On May 29, 2007, the Plaintiff received 2 documents each titled "Escrow Modification". Each of said documents identified the Plaintiff as the sole buyer (see Exhibit "3"), again confirming that Plaintiff was the sole buyer. Sometime between June 1, 2007 and June 15, 2007, the Plaintiff was advised by Lender that she no longer qualified for the prospective loans and that she need to have a co-signor. At this time, OVER A MONTH AFTER the True Trust Deed was executed and notarized, the Plaintiff's sister and brother-in-law Louise J. Hanson and Jacqueline M. Hanson agreed to co-sign (see Exhibit "4").

At closing, on July 2, 2007, a materially altered version of the True Grant Deed (the "Fraud Grant Deed") was recorded[1] (see Exhibit "5"). The Fraud Grant Deed was altered to remove the Plaintiff's name and then insert, with what appears to be a typewriter, the names "Billie Rene Powers", "Louise J. Hanson", and "Jacqueline M. Hanson".

Aside from the fact that Louis J. Hanson and Jacqueline M. Hanson were not named in the escrow instructions nor a party to the Residential Purchase Agreement at the time the True Trust Deed was executed and would therefore never be included in the documents theretofore drafted, the notary Nancy F. Ganzon, who prior to August 2014 was a stranger[2] to Plaintiff executed an affidavit (see Exhibit "7") wherein she testified and will further testify if needed, that the Fraud Grant Deed, bearing her signature and notary stamp, is not the document that she notarized, but instead is an altered version of the one she notarized. The post notarization material alteration of the True Grant Deed rendered the Fraud Grant Deed void.

**The Deed of Trust Failed to Convey Any Interest in the Property**

---

[1] All references to a document being "recorded" refer to being recorded in the office of the County Recorder for the County of Orange, State of California unless clearly expressed or implied otherwise.
[2] In support of her testimony that she did not know the Notary Nancy F. Ganzon, Exhibit "6" is a copy of a form for a complaint with the State of California, Secretary of State, Notary Public Section, requesting information on the Notary.

Pursuant to the illusory powers granted to her in the Fraud Grant Deed, on June 27, 2007, Plaintiff executed a Deed of Trust (the "1st DOT", see Exhibit "8") on her own behalf and on behalf of Louis J. Hanson and Jacqueline M. Hanson via 2 powers of attorney. The Fraud Grant Deed and the 1st DOT were recorded sequentially on July 2, 2007 as document numbers 2007000417170 and 2007000417171. On the 1st DOT, the "Lender" is Counrtywide Bank, FSB ("Lender"), the "Trustee" was ReconTrust Company, N.A. ("DOT Trustee"), and Mortgage Electronic Registration Systems, Inc, ("Mers") a Delaware company was identified as the "Beneficiary" acting solely as the nominee for Lender. Because the Fraud Grant Deed was void, Plaintiff received nothing by way of the Fraud Grant Deed. In turn, when Plaintiff executed the 1st DOT and "conveyed" the Property to the DOT Trustee for the benefit of Mers as nominee for Lender, Plaintiff had no interest in the Property to convey and the DOT Trustee, Mers, and Lender received nothing.

**Fraud in the Assignment of the 1st DOT**

On or about October 26, 2010, a document titled "Corporate Assignment of Deed of Trust" ("Assignment of DOT", see Exhibit "9") was recorded purporting to assign the 1st DOT to The Bank of New York Mellon fka The Bank of New York, as Trustee, **for the Certificateholders CWALT Inc.**, Alternative Loan Trust 2007-HY9 Mortgage Pass-Through Certificates, Series 2007-HY9 ("BONY as Trustee")(emphasis added). The Assignment of DOT was purportedly signed by Nichole Clavadetscher in her capacity as a Certifying Officer of Mers. The Assignment of DOT was purported to have been notarized by Jon Secrist ("Secrist"), whose notary commission number is 1893949.

On or about November 16, 2012, Plaintiff initiated a claim with Merchants Bonding Company ("Bond Co") who provided a notary bond for the notary, Secrist (see Exhibit "10"). Through its claim Plaintiff alleged that the signature for Nichole Clavadetscher on the Assignment of DOT was not genuine and therefore, Secrist's representation on the notary acknowledgement, made under penalty of perjury, that Nichole Clavadetscher personally appeared before him, was false. In its November 29, 2012 reply letter asking for more

information to substantiate the Plaintiff's claim, Bond Co stated that it only paid actual damages (see Ex. "10", pg 1, ¶ 3) and that policy limit was $15,000.00 (see Ex. "10", pg 3).  On or about December 6, 2012, Plaintiff submitted a written "Proof of Claim" to Bond Co (see Exhibit "11"). Thereafter, on or about February 27, 2013 (after nearly 3 month time to investigate its liability) Bond Co paid Plaintiff the full policy limit of $15,000.00 in settlement of Plaintiff's claim (see Exhibit "12").  The forged signature of Nichole Clavadetscher on the Assignment of DOT rendered it void.

**The Assignment of DOT was to BONY as Trustee, However Subsequent to the Assignment, a Substitution of Trustee, a Notice of Default and a Trustee's Deed Upon Sale Were All Executed in a Different Name.**

The Assignment of DOT purports to transfer the beneficial interest under the 1st DOT to an entity named "The Bank of New York Mellon fka The Bank of New York, as Trustee, **for the Certificateholders CWALT Inc.**, Alternative Loan Trust 2007-HY9 Mortgage Pass-Through Certificates, Series 2007-HY9" (emphasis added)(see Exhibit "9").

On February 28, 2014, a Substitution of Trustee, purporting to substitute Quality Loan Service Corporation ("Quality") as a successor trustee to the DOT Trustee (see Exhibit "13") was recorded.  On the 4th page of the Notice of Default, the beneficiary is identified as "The Bank of New York Mellon fka The Bank of New York, as Trustee, **on behalf of the holders of the** Alternative Loan Trust 2007-HY9 Mortgage Pass-Through Certificates, Series 2007-HY9". ("BONY for Wrong Trust")(emphasis added).  The beneficiary name on the Notice of Default is materially different from that contained in the 1st DOT and the Assignment of DOT, in that the words "for the Certificateholders of the Cwalt, Inc." (in the 1st DOT and the Assignment of DOT) was replaced with the words "on behalf of the holders" (in the Substitution of Trustee). The name of the beneficiary making the substitution of trustee was clearly not BONY for Trustee as identified on the 1st DOT and the Assignment of DOT.

On September 25, 2014, a Notice of Default, claiming to be a notice of default on the 1st DOT (see Exhibit "14", pg 2, circled item 1) was recorded.  On the 4th page of the Notice of

Default, the beneficiary was identified as BONY for Wrong Trust, the exact same way it was identified in the Substitution of Trustee. The name of the beneficiary on behalf of which Quality was recording the Notice of Default was clearly not BONY as Trustee, but rather was BONY for Wrong Trust.

On August 8, 2016, a Trustee's Sale was conducted by Quality and on August 8, 2016, Quality recorded a Trustee's Deed Upon Sale (see Exhibit "15"). On the Trustee's Deed Upon Sale, the grantee was identified as BONY for Wrong Trust, the exact same way it was identified in the Substitution of Trustee and the Notice of Default. The name of the beneficiary/grantee on behalf of which Quality was conducted the trustee's sale and on whose behalf Quality recorded the Trustee's Deed Upon Sale and who was the putative credit purchaser, was clearly not the beneficiary identified on the 1st DOT and the Assignment of DOT. Furthermore, on the Trustee's Deed Upon Sale, it states that the grantee on the Trustee's Deed Upon Sale was the foreclosing beneficiary, when clearly it was not.


**The Statute of Limitations Expired prior to the Foreclosure Sale Rendering it Void.**

At the time of closing of escrow on July, 2, 2007, there existed a promissory Note (the "Note") which was purportedly secured by the 1st DOT. In or about December, 2009, the Plaintiff became of the belief that she did not owe a debt to Lender or its servicer at that time BAC Home Loans Servicing, LP ("BAC"). Subsequent to January 1, 2010, the Plaintiff has made no payments on the Note to anyone and has not acknowledged any debt to anyone. On or about May 4, 2010, BAC sent the Plaintiff a letter demanding what it determined to be the balance due on the Note (see Exhibit "17"). On May 6, 2010, BAC recorded a Notice of Default wherein it declared the accelerated balance due (see Exhibit "18"). The acceleration of the balance due commenced the six year statute of limitations prescribed by Cal. Comm. Code § 3-118. On August 8, 2016, more than six years after the acceleration of the debt a trustee's sale was conducted. As a result of the expiration of the statute of limitations, the entity conducting the foreclosure sale lacked authority to do so.

II.

STANDING

In <u>Yvanova v. New Century Mortgage Corp.</u>, 62 Cal. 4th 919 (2016), the California Supreme Court addressed "[u]nder what circumstances, if any, may the borrower challenge a nonjudicial foreclosure on the ground that the foreclosing party is not a valid assignee of the original lender." (Id. at p. 928.)

The California Supreme Court decided that question as follows:

> "We conclude a home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale." (Id. at pp. 942-943.)

The court in <u>Yvanova</u> also considered whether a borrower must show prejudice when it addressed the defendants' argument that an allegedly invalid assignment leading to a foreclosure by an unauthorized party causes no harm or prejudice to a borrower in default of a loan because the actual holder of the beneficial interest under the deed of trust could have foreclosed on the property. (<u>Yvanova</u> at 937.) The court stated:

> "As it relates to standing, we disagree with defendants' analysis of prejudice from an illegal foreclosure. A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interests [citation]—the borrower has lost ownership to the home in an allegedly illegal trustee's sale."

The court also rejected the view that an offer of tender of the amount of the secured indebtedness, or an excuse of tender, was needed to establish the borrower's standing. (<u>Yvanova</u> at 929, fn. 4.)  In <u>Yvanova,</u> the California Supreme Court unanimously rejected the argument that borrower standing required a showing of prejudice and a tender of the balance due on the loan. (<u>Yvanova</u> at 929, fn. 4.)  Under <u>Yvanova</u>, a borrower has standing to challenge a foreclosure by an unauthorized entity.  This is exactly the allegations herein.

III.

STANDARD

In deciding whether to issue a preliminary injunction, a court must weigh two interrelated factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction. (see Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 541 (1987). The trial court's determination must be guided by a mix of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support the injunction. A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff, would ultimately prevail on the merits of the claim. (*Butt v. State of California (1992 4 Cal. 4th 668, 677-678; see generally Code Civ. Proc., §§526.527*).

The general purpose of [a preliminary] injunction is the preservation of the status quo until a final determination of the merits of the action. (see <u>Granny Goose Foods v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County</u>, 415 U.S. 423, 439 (1974). In <u>IT Corp. v. County of Imperial</u>, 35 Cal. 3d 63, at pages 69-70 (1983), the court stated "[By ] balancing the respective equities of the parties, [the trial court] concludes that, pending a trial on the merits, the defendant should or that she should not be restrained from exercising the right claimed by her". In this case, the standards are met. The Plaintiff has been forcibly evicted from of her residential real property and has been forced to rely on the generosity of friends to shelter herself and her minor daughter. This litigation could potentially last for years. As such, the Plaintiff will suffer irreparable harm by being deprived of her home for an extended period of time. In addition, without an order restraining defendants, there is a likelihood the defendants will attempt to solidify their position by selling the home to a bona fide purchaser. The Plaintiff has no adequate remedy if such actions occur. (see <u>Arcamuzi v. Continental Air Lines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1987). Per the analysis below, the Plaintiff is substantially likely to prevail on the merits because the deed through which the foreclosing party employed was forged and as such, void. (see <u>Ashcroft v. American Civil Liberties Union</u>, 542 US 656, 665 (2004)).

IV.

ARGUMENT FOR RELIEF

A recent California Supreme Court gave guidance to the trial courts that a borrower has standing to sue for wrongful foreclosure based on an allegedly void assignment. (see <u>Yvanova</u>, <u>supra</u>.)  In this case, the evidence will show that, as a result of 2 void conveyances and a missing conveyance in the chain of title, Plaintiff has never held title to the Property, BONY as Trustee has never held any interest in the Property whatsoever, and BONY for Wrong Trust has never held any interest in the Property whatsoever.  (BONY as Trustee and BONY for Wrong Trust are hereinafter cumulatively referred to as "Defendants").  Having no interest in the Property, the Defendants, and each of them, fraudulently moved forward with a non judicial foreclosure sale of Plaintiff's property without any lawful authority to do so.  As explained below, the facts alleged in the amended complaint and the facts judicially noticeable do not establish an unbroken or perfect chain of title from Plaintiff to either of the Defendants.

**1.    THE CHAIN OF TITLE FROM THE GRANT DEED THROUGH THE TRUSTEE'S DEED UPON SALE IS BROKEN, RESULTING IN THE FORECLOSING TRUSTEE LACKING AUTHORITY TO SELL THE PROPERTY.**

"Links" in a chain of title are created by a transfer of an interest in the underlying property from one person or entity to another. An examination of each link in the purported chain of title relied upon by the Defendants reveals that certain links were not established. Analysis begins with a description of each link in the purported chain (and each related document), beginning with the Seller who sold the residence to Plaintiff and ending with the trustee's sale to BONY for Wrong Trust.

**Link 1 – Sale to the Plaintiff**: Seller agreed to sell the Property to Plaintiff.  On April 26, 2007 Seller executed the True Grant Deed granting a fee simple interest in the Property to Plaintiff and delivered the True Grant Deed to West Coast Escrow.  The True Grant Deed was never recorded and therefore never delivered to the Plaintiff.  Without delivery, the True Grant Deed failed to

convey any interest in the Property to the Plaintiff.  Sometime between April 26, 2007 and July 2, 2007, the True Grant Deed was materially altered into the Fraud Grant Deed.  The forgery of the Fraud Grant Deed is supported by the following facts:

1) The Additional Escrow Instructions dated April 17, 2007, dated just 9 days prior to the execution of the True Grant Deed, indicated title was to be in the name of the Plaintiff only (see Exhibit "1").

2) On April 26, 2007, Seller executed the True Grant Deed naming Plaintiff as the only buyer as per the Additional Escrow Instructions.

3) On May 15, 2007, an addendum to the Residential Purchase agreement was prepared.  The addendum identified the Plaintiff as the only buyer (see Exhibit "2").

4) As of May 29, 2007, the Plaintiff received 2 documents titled "Escrow Modification" and each identified Plaintiff as the only buyer (see Exhibit "3").

3) On or about June 1, 2007, Lender advised the Plaintiff that she did not qualify for the financing she sought and that she would need a co-signor.  Between June 1, 2007 and June 13, 2007, **long after the True Grant Deed was executed**, the Plaintiff's sister and brother-in-law Louis J. Hanson and Jacqueline M. Hanson agreed to co-sign for the Plaintiff.

4) On June 15, 2007, an addendum to the Residential Purchase Agreement was prepared stating that "Jackie and Louie Hanson and Rene Powers" will be on title (see Exhibit "4").

5) The Closing Instructions dated June 27, 2007, dated after the True Grant Deed was executed indicated title was to be in the name of the Plaintiff and Louis J. Hanson.

6) On July 2, 2007, the Fraud Grant Deed, purporting to have been executed and notarized on April 26, 2007, was recorded (see Exhibit "5").  The Fraud Grant Deed was an altered version of the True Grant Deed.  On the Fraud Grant Deed, Plaintiff's name was removed, and someone using a typewriter, inserted the

names "Billie Rene Powers", "Louise J. Hanson", and "Jacqueline M. Hanson". (the name "Louise" is a mis-spelling of "Louis").

7)    On or about August 27, 2014, the notary Nancy F. Ganzon, who prior to August 2014 was a stranger to the Plaintiff, executed an affidavit (see Exhibit "7"), wherein she testified and will further testify if needed, that the Fraud Grant Deed, bearing her signature and notary stamp, is not the document that she notarized, but instead is an altered version of the one she notarized.

In <u>La Jolla Grp. II v. Bruce</u>, 211 Cal.App.4th 461 (2014) the court stated that "a Deed that has been materially altered after it was signed is a forgery." The court in <u>La Jolla Grp. II</u>, went on to cite <u>Montgomery v. Bank of America</u>, 85 Cal. App. 2d 559, 563 (1948) where the court stated "Since the deed was altered without the knowledge, consent or approval of plaintiffs, after it had been signed by them and transmitted to the escrow holder, it was void. The court in <u>Montgomery</u> at 564 went on to cite <u>Trout v. Taylor</u>, 220 Cal. 652, 656 for the statement that a "void instrument such as an undelivered or a forged deed does not convey anything and cannot be made the foundation of a good title." (<u>Trout v. Taylor</u>, 220 Cal. 652, 656 [32 P.2d 968])

Here, the Additional Escrow Instructions dated April 17, 2007, executed just 9 days prior to the execution of the True Grant Deed clearly provided for title to be taken in the name of Plaintiff only. On April 26, 2007, Seller executed and the notary notarized the True Grant Deed to the Plaintiff only (as she was the only name on the Amended Escrow Instructions at that time and the 2 co-signors had not appeared in the transaction and would not so appear until at least 30 days later) and thereafter it was delivered it to escrow. Sometime in the beginning of June 2007, the Lender required a co-signor. The Plaintiff's relatives Louis J. Hanson and Jacqueline M. Hanson agreed to co-sign, long after the True Grant Deed was executed. In preparation for closing, on June 27, 2007, the 1st DOT was drafted to include all 3 names "Billie Rene Powers", "Louis J. Hanson", and "Jacqueline M. Hanson". However, rather than have the Seller execute a new Grant Deed, someone altered the True Grant Deed by removing the name "Billie Rene Powers" and typing into the document "Billie Rene Powers", "Louise J. Hanson", and "Jacqueline M. Hanson" in an attempt to have it conform to the 1st DOT.

The post notarization material alteration of the True Grant Deed rendered the Fraud Grant Deed a forgery and as such it was and is now void. The Fraud Grant Deed could not and did not convey anything to the Plaintiff and cannot and did not provide the foundation of a good title to the Plaintiff. Link 1 in the chain of title is broken.

**Link 2 - 1st DOT to Lender**: Pursuant to the illusory powers granted to her in the Fraud Grant Deed, on June 27, 2007, the Plaintiff executed the "1st DOT". Because the Fraud Grant Deed was void, Plaintiff received nothing by way of the Fraud Grant Deed. In turn, when Plaintiff executed the 1st DOT and "conveyed" the Property to the DOT Trustee for the benefit of Mers as nominee for Lender, Plaintiff had no interest in the Property to convey. "A mortgage assignment is void, not merely voidable, where the assignor "had nothing to assign" or "no interest to assign" Sciarratta v. U.S. Bank National Association, 247 Cal.App. 4th 552, 564 (2016) citing Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013).

The Defendants can not rely on their putative status as a bona fide purchaser. In La Jolla Grp. II at 477-478, the court, citing Schiavon v. Arnuado Brothers, 84 Cal.App. 4th 374, 378 (2000), stated that "[a]lthough the law protects innocent purchasers and encumbrancers, that protection extends only to those who obtained good legal title… [A] forged document is void ab initio and constitutes a nullity; as such it cannot provide the basis for a superior title…" (citations omitted, internal quotation marks omitted). Because of the failure of Link 1, Link 2 is necessarily broken.

**Link 3 - Purported Transfer via the Assignment of DOT**: Link Three fails for 2 separate and independent reasons.

1.      The first is the natural continuation of the failure of Link 1 and Link 2. Since the Plaintiff received nothing via the Fraud Grant Deed and therefore conveyed nothing via the 1st DOT to the DOT Trustee as trustee for the benefit of Mers as nominee for Lender, Mers had nothing to transfer to BONY as Trustee when Mers executed the Assignment of DOT. (see Culhane, supra) Because of the failure of Link 1 and Link 2, Link 3 is necessarily broken.

**2.**     Notwithstanding the invalidity of the Assignment of DOT for the reasons aforesaid, the Assignment of DOT fails because it is itself a forgery. The Assignment of DOT purports to have been executed by a person named Nichole Clavadetscher and notarized by Secrist.  The Plaintiff suspected that the signature of Nichole Clavadetscher was a forgery and as such, Secrist's certification under penalty of perjury, that Nichole Clavadetscher personally appeared before him, provided him with identification, and signed the document, is a false statement.

On or about November 16, 2012, the Plaintiff initiated a claim with Bond Co against Secrist's notary bond (see Exhibit "10").  Through its claim Plaintiff alleged that the signature for Nichole Clavadetscher on the Assignment of DOT was not genuine and therefore, Secrist's representation on the notary acknowledgement, made under penalty of perjury, that Nichole Clavadetscher personally appeared before him, was false.  In its November 29, 2012 reply letter asking for more information to substantiate the Plaintiff's claim, Bond Co stated that it only paid actual damages (see Ex. "10", pg 1, ¶ 3) and that policy limit was $15,000.00 (see Ex. "10", pg 3).  On or about December 6, 2012, Plaintiff submitted a written "Proof of Claim" to Bond Co (see Exhibit "11").  Thereafter, on or about February 27, 2013 (after nearly 3 month time to investigate its liability) Bond Co paid Plaintiff the full policy limit of $15,000.00 in settlement of Plaintiff's claim (see Exhibit "12").  The forged signature of Nichole Clavadetscher on the Assignment of DOT rendered it void.  Link 3 is broken.

**Link 4 – Purported Transfer from BONY as Trustee to BONY for Wrong Trust**:
Independent of the failure of Link 1, Link 2, and Link 3, Link 4 fails.  On the Assignment of DOT, the Property was purported to have been transferred from Mers as nominee for Lender to BONY as Trustee.  On the Substitution of Trustee, recorded on February 28, 2014, the beneficiary was identified as BONY for Wrong Trust.  The record is devoid of a transfer from BONY as Trustee to BONY for Wrong Trust.  Link Four is broken.

**Links 5, 6, and 7 – Substitution of Trustee, Notice of Default, and Trustee's Deed Upon Sale**: Links 5, 6, and 7 all fail for the same reason. On February 28, 2014 a Substitution of Trustee purporting to substitute Quality Loan Service Corporation ("Foreclosing Trustee") in place of the DOT Trustee. The Substitution of Trustee purports to be made by BONY for Wrong Trust. Since there is no Assignment of the 1st DOT to BONY for Wrong Trust, BONY for Wrong Trust had no power to substitute the Foreclosing Trustee for the DOT Trustee. "[O]nly the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process." Yvanova at 928. The appointment of the Foreclosing Trustee failed and Link 5 is broken.

Because BONY for Wrong trustee had no power to appoint the Foreclosing Trustee via the Substitution of Trustee, the Foreclosing Trustee lacked any authority to record the Notice of Default (see Exhibit "14") and the Notice of Trustee's Sale (see Exhibit "15"), and had no authority to conduct the foreclosure sale and had no authority to issue a valid Trustee's Deed Upon Sale (see Exhibit "16"). Because of the independent failure of Link 5, Links 6 and 7 necessarily fail.

## 2.   THE STATUTE OF LIMITATION ON THE NOTE PRIOR TO THE NON-JUDICIAL FORECLOSURE SALE RENDERING THE SALE INVALID.

On or about May 4, 2010, the purported owner of the Note, BAC, mailed a letter (see Exhibit "17") to the Plaintiff advising the Plaintiff that the balance was due on the Note and two days later, the DOT Trustee, recorded a Notice of Default .

Under California Uniform Commercial Code section 1103, the provisions of the Code of Civil Procedure pertaining to limitations of actions apply unless there is a special statute of limitations set forth in the California Uniform Commercial Code. (Kaichen's Metal Mart, Inc. v. Ferro Cast Co., 33 Cal. App. 4th 8, 12-13 (1995); Bank of America v. Security Pacific Nat. Bank, 23 Cal. App 3d 638, 642, fn3). California Uniform Commercial Code section 3118, subdivision (a), is a special statute of limitations for promissory notes, establishing "a six-year statute of limitations, from the final due date, for promissory notes payable at a definite time." (Cadle Co.v. World Wide Hospitality Furniture, Inc., 144 Cal. App. 4th 504, 514, fn8; See Witkin, Cal.

Procedure (4th ed. 1996) Actions, § 453, p. 575.)  Section 3118, subdivision (a) (§ 3118(a))

provides, "an action to enforce the obligation of a party to pay a note payable at a definite time

shall be commenced within *six years* after the due date or dates stated in the note or, if a due date

is accelerated, within six years of the accelerated due date." (Italics added.)

When BAC exercised its right to accelerate the debt by declaring the entire amount due

and sought to exercise this right through foreclosure, the statute began to run when "the creditor,

by some affirmative act, manifests his election" to enforce the acceleration clause upon a default.

(*Garver v. Brace* (1996) 47 Cal.App.4th 995, 1000; accord, *Jones v. Wilton* (1938) 10 Cal.2d

493, 500 (*Jones*); *Trigg v. Arnott* (1937) 22 Cal.App.2d 455, 458 (*Trigg*).) Even with a

mandatory acceleration clause, the limitations period does not accrue until the creditor

affirmatively declares a default. (*Trigg, supra*, 22 Cal.App.2d at p. 458.)

In this case, the balance of the Note was accelerated via the May 4, 2010 letter and the

May 6, 2010 Notice of Default.  Thus, the foreclosure sale was required to occur prior to the

expiration of six years thereafter.  In this case, the foreclosure sale did not occur until August 8,

2016, some six years and 3 months later.

The purported lien created by the 1st DOT is incidental to the principal obligation it

purports to secure, the Note, and is therefore deemed extinguished when the statute of limitations

runs on that principal obligation. (see CC §2911).  A deed of trust "may not be nonjudicially

foreclosed under a power of sale clause, because the power to sell derives from the lien and is

extinguished along with the lien under CC § 2911" (see CEB California Mortgages, Deeds of

Trust, and Foreclosure Litigation § 3.18 citing Flack v. Boland, 11 C2d 103 (1938)).

Aside from the above arguments about the broken chain of title, the statute of limitations

on the Note expired on or about May 4, 2016 and the lien purporting to secure the Note was

extinguished by that expiration.  As a result thereof, the Foreclosing Trustee lost whatever

authority it claimed rendering the foreclosure sale void.

V.

BOND REQUIREMENT

A TRO typically is accompanied by payment of a bond "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, 15 U.S.C. § 53(b) provides,

[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond . . . . 15 U.S.C. § 53(b) (emphasis added).

As discussed above, the Fraud Grant Deed in and of itself renders all documents in the defendants chain of to be void.  Given Plaintiff's demonstrated likelihood of success on the merits, a temporary injunction is in the public interest. Accordingly, the Court should not require Plaintiff to post a bond. See 15 U.S.C. § 53(b).

## IV.

## CONCLUSION

For the foregoing reasons and for the evidence on file in this case, Plaintiff requests that this honorable court grant a temporary restraining order forthwith and issue an order to the Defendants to show cause why the preliminary injunction should not be granted.

Dated: October 30, 2017

Respectfully Submitted,

Richard W. Snyder, Esq.
Attorney for the Plaintiff
Billie Rene' Frances Lillian Powers

## DECLARATION OF BILLIE RENE' FRANCES LILLIAN POWERS

1.      I, Billie Rene' Frances Lillian Powers, am the Plaintiff herein.  I have personal knowledge of all facts set forth herein and if called as a witness to testify thereto I could and would do so.

2.      On or about April 13, 2007, I executed a Residential Purchase Agreement and Joint Escrow Instructions respecting my intended purchase of the Property.  I have resided thereat, along with my minor daughter, at all times subsequent to the purchase through the filing of the FAC in this matter.  At this time, I have been evicted from the property and am relying on the generosity of friends in order to shelter myself and my daughter.

3.      West Coast Escrow handled the escrow.

4.      In the process of the purchase, on or about April 17, 2007, I received a document titled "Additional Escrow Instructions" from West Coast Escrow.  The instructions indicated that title was to be vested in myself solely.  Attached hereto and identified as Exhibit "1" is a true and correct unsigned copy of the Additional Escrow Instructions dated April 17, 2007.

5.      On April 26, 2007, the Seller executed the True Grant Deed naming myself as the sole grantee.  Thereafter, it was delivered to West Coast Escrow.

6.      On May 15, 2007, an Addendum to the Residential Purchase Agreement was prepared indicating myself as the sole buyer.  Attached hereto and identified as Exhibit "2" is a true and correct copy of the Addendum to the Residential Purchase Agreement dated May 15, 2007.

7.      On May 29, 2007, I received 2 documents from West Coast Escrow both of which were titled "Escrow Modification".  Each of said documents identified myself as the only buyer. Attached hereto and identified as Exhibit "3" is a true and correct copy of the "Escrow Modification" documents dated May 29, 2007.

8.      Sometime between June 1, 2007 and June 15, 2007, I was advised by Lender that I no longer qualified for the prospective loans an that I need to have a co-signor.  At that time, OVER A MONTH AFTER the True Trust Deed was executed and notarized, my sister and brother-in-law Louise J. Hanson and Jacqueline M. Hanson agreed to co-sign.  Attached hereto and

1   identified as Exhibit "4" is a true and correct copy of the Addendum to the Residential Purchase

2   Agreement dated June 5, 2007.

3   9.      At closing, on July 2, 2007, the Fraud Grant Deed was recorded which is a materially

4   altered version of the True Grant Deed.  The Fraud Grant Deed was altered to remove the

5   Plaintiff's name and then insert, with what appears to be a typewriter, the names "Billie Rene

6   Powers", "Louise J. Hanson", and "Jacqueline M. Hanson".  Attached hereto and identified as

7   Exhibit "5" is a true and correct copy of the Fraud Grant Deed dated April 26, 2007.

8   10.     Prior to August of 2014, I attempted to contact Nancy F. Ganzon, the notary who

9   notarized the True Grant Deed and whose signature and notary stamp appear on the Fraud Grant

10  Deed.  At that time she was a stranger to me.  When I was unable to find her, I placed a claim

11  against her notary bond.   Attached hereto and identified as Exhibit "6" is a true and correct copy

12  of the Complaint Form dated February 25, 2014.

13  11.     Sometime in August of 2014, I was contacted by the notary Nancy F. Ganzon.  On or

14  about August 27, 2014, Nancy F. Ganzon executed an affidavit wherein she testified that the

15  Fraud Grant Deed, bearing her signature and notary stamp, is not the document that she

16  notarized, but instead is an altered version of the one she notarized.  Attached hereto and

17  identified as Exhibit "7" is a true and correct copy of the Affidavit of Nancy F. Ganzon dated

18  February 25, 2014.

19  12.     On June 27, 2007, I executed the 1st DOT on my own behalf and on behalf of Louis J.

20  Hanson and Jacqueline M. Hanson via 2 powers of attorney.  The Fraud Grant Deed and the 1st

21  DOT were recorded sequentially on July 2, 2007 as document numbers 2007000417170 and

22  2007000417171.  Attached hereto and identified as Exhibit "8" is a true and correct copy of the

23  1st DOT.

24  13.     On October 26, 2010, the Assignment of DOT was recorded purporting to assign the 1st

25  DOT to BONY as Trustee.  The Assignment of DOT was purportedly signed by Nichole

26  Clavadetscher in her capacity as a Certifying Officer of Mers.  The Assignment of DOT was

27  purported to have been notarized by Secrist, whose notary commission number is 1893949.

28

Attached hereto and identified as Exhibit "9" is a true and correct copy of the Assignment of DOT.

14.     On or about November 16, 2012, I initiated a claim with Bond Co, who provided a notary bond for Secrist.  Through my claim, I alleged that the signature for Nichole Clavadetscher on the Assignment of DOT was not genuine and therefore, Secrist's representation on the notary acknowledgement, made under penalty of perjury, that Nichole Clavadetscher personally appeared before him, was false.  Attached hereto and identified as Exhibit "10" is a true and correct copy of a November 29, 2012 letter I received from Bond Co in response to my claim.  In the letter Bond Co asked me for more information to substantiate my claim.  Therein, Bond Co stated that it only paid actual damages (see Ex. "10", pg 1, ¶ 3) and that policy limit was $15,000.00 (see Ex. "10", pg 3).

15.     On or about December 6, 2012, I submitted a written "Proof of Claim" to Bond Co respecting my claim.  Attached hereto and identified as Exhibit "11" is a true and correct copy of my December 6, 2012 "Proof of Claim".

16.     On or about February 27, 2013 (after nearly 3 month time to investigate its liability) Bond Co paid me the full policy limit of $15,000.00 in settlement of my claim.  Attached hereto and identified as Exhibit "12" is a true and correct copy of the $15,000.00 check I received from Bond Co in settlement of my bond claim.

17.     On February 28, 2014, a Substitution of Trustee, purporting to substitute Quality Loan Service Corporation ("Quality") as a successor trustee to the DOT Trustee was recorded. Attached hereto and identified as Exhibit "13" is a true and correct copy of the Substitution of Trustee.

18.     On September 25, 2014, a Notice of Default, claiming to be a notice of default on the 1st DOT was recorded.  Attached hereto and identified as Exhibit "14" is a true and correct copy of the Notice of Default.

19.     On September 30, 2015, a Notice of Trustee's Sale was recorded.  Attached hereto and identified as Exhibit "15" is a true and correct copy of the Notice of Trustee's Sale.

20.     On August 8, 2016, a Trustee's Sale was conducted by Quality and on August 16, 2016, Quality recorded a Trustee's Deed Upon Sale.  Attached hereto and identified as Exhibit "16" is a true and correct copy of the Trustee's Deed Upon Sale.

21.     On or about May 5, 2010, I received a letter from BAC advising me that the balance was accelerated and the entire balance of $1,366,003.88 was then due.  Attached hereto and identified as Exhibit "17" is a true and correct copy of the said letter.

22.     On or about May 6, 2010, the DOT Trustee recorded a Notice of Default advising the Plaintiff that BAC had elected to sell the Property under the 1st DOT.  Attached hereto and identified as Exhibit "18" is a true and correct copy of the said Notice of Default.

       I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed at Tustin, California on October 24, 2017.

By: _____
       Billie Rene' Frances Lillian Powers, Declarant