1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1



WEST COAST
ESCROW

6841 Quail Hill Parkway
Irvine, CA 92603
Phone (949) 854-7353 · Fax (949) 854-7152
Sheila.Knight@westcoastescrow.com

## ADDITIONAL ESCROW INSTRUCTIONS

ESCROW OFFICER: SHEILA KNIGHT     **BUYER'S COPY**     ESCROW NO.: IR-15391-SK
DATE: APRIL 17, 2007

We the undersigned hand you a signed copy of **California Residential Purchase Agreement and Joint Escrow Instructions**, dated **April 13, 2007.** Your duties as Escrow Holder are as set forth in Paragraph 28 of the Agreement.

## FOR CLARIFICATION PURPOSES, THE FOLLOWING SHALL APPLY:

| | |
|---|---|
| **CASH DOWN PAYMENT:**<br>(of which the sum of $20,000.00 has been deposited into escrow) | $20,000.00 |
| New FIRST TRUST DEED (CONVENTIONAL) LOAN: | $1,680,000.00 |
| TOTAL PURCHASE PRICE: | $1,700,000.00 |

Subject property is located in the City of **San Juan Capistrano**, County of **Orange**, State of California, and is described as follows:

See Exhibit "A" attached hereto and made a part hereof for complete legal description.

PROPERTY ADDRESS: 40701 Ortega Highway, San Juan Capistrano, CA 92530

CLOSE OF ESCROW WILL BE ON: June 14, 2007 or sooner by mutual agreement

**TITLE IS TO BE VESTED IN: Billie Rene Powers**

Escrow holder is instructed to correct the Grant Deed being delivered in the above numbered escrow to reflect the vesting designated by Buyer, over the signed, notarized signatures of Seller herein.

A. **FINANCING:** Buyer to apply, qualify for and obtain a **NEW CONVENTIONAL LOAN** in the amount of **$1,680,000.00.** Buyer agrees to comply with the requirements of the lender for the new 1st Trust Deed loan. Buyer's execution of lender's documents will signify Buyer's approval of all terms and conditions contained therein and Escrow Holder's authority to comply with lender's requirements.

Buyer understands it is Lenders responsibility to provide Buyer with copies of loan documents. In the event copies of all loan documents are not furnished by Lender, Escrow Holder is authorized to charge Buyer $50.00 to provide copies.

In the event loan documents are transmitted to Escrow Holder via email, it is understood that Escrow Holder will not be responsible for the correctness and/or contents of such loan documents. Buyer agrees to pay a separate fee of $50.00 for this printing service, per set of documents, in addition to the copying charge as outlined above.

B. **SATISFACTION OF CONTINGENCIES:** Buyer will sign C.A.R. Form CR (Contingency Removal) outside of escrow that all contingencies have been removed and requires no action of the Escrow Holder.

C. **EQUITY LINE OF CREDIT:** In the event there is a Home Equity Line of Credit being paid off through this escrow, in addition to the payoff amount, the title company may require a hold up to the

SELLER INITIALS: _____ _____     BUYER INITIALS: _____ _____

remaining unused equity line plus $5,000.00 until the title company has been provided with a freeze confirmation from the lender. Contact your lender and request that they forward information to the title company indicating that the Line of Credit has been frozen and closed and that the borrower can no longer obtain funds through the equity line.

D.  **SEPTIC SYSTEM:** Seller shall pay to have septic or private sewage disposal system inspected, pumped and certified and authorizes payment of same if bill presented into escrow.

E.  **DOMESTIC WELL TESTING:** Seller shall pay to have wells tested for water potability and productivity and shall provide evidence of compliance to the Buyer before close of escrow. Escrow Holder is instructed to charge Seller's account for same if bill presented into escrow.

F.  **FURNITURE:** Mentioned herein for memorandum purposes only, with which Escrow Holder is not to be concerned or held liable, home is to be sold with all furniture.

G.  **SELLER TO PAY FOR DEVELOPMENT OF LOWER ACREAGE:** Escrow Holder is authorized and instructed to pay Paul Mitchell **$300,000.00** from Seller's proceeds for the development of the lower acreage of said property, at the close of escrow.

H.  **SUPPLEMENTAL TAX BILLS AND RE-ASSESSMENT OF TAXES AFTER CLOSE OF ESCROW:** Buyer and Seller instruct Escrow Holder that all SUPPLEMENTAL TAXES assessed prior to the close of escrow shall be paid by the Seller. If the supplemental tax bill covers the current tax year, Escrow Holder is authorized and instructed to prorate the supplemental taxes.

In the event Escrow Holder receives notice of supplemental tax bills immediately prior to or on the date escrow closes, Escrow Holder is to pay bills from proceeds due the Seller and prorate as instructed above. In such event, Buyer agrees to immediately deposit with Escrow Holder good funds in an amount to cover the proration of said supplemental tax bills.

Sellers are advised to submit to Escrow Holder any and all supplemental tax bills as soon as possible, but no later than five (5) business days prior to the close of escrow. **IN THE EVENT SUPPLEMENTAL TAX BILL(S) HAVE BEEN ISSUED AND THEY DO NOT SHOW ON THE TITLE REPORT, BUYER AND SELLER UNDERSTAND AND AGREE TO HANDLE ANY ADJUSTMENTS OUTSIDE OF ESCROW, UNLESS SELLER HAS DELIVERED THE SUPPLEMENTAL BILL(S) TO ESCROW HOLDER.** The undersigned hereby hold harmless and indemnify West Coast Escrow and its employees, from and against any loss, cost, damage, liability and expense including attorney's fees arising out of any claim or dispute in connection with the foregoing. This agreement shall survive the close of escrow.

Buyer understands that a Change of Ownership will cause a reassessment by the Tax Assessor's office. A Supplemental Tax Bill will be issued after close of escrow and Buyer accepts total responsibility for all additional taxes due because of a reassessment.

I.  **CHANGE OF OWNERSHIP:** Buyer will complete a "Preliminary Change of Ownership Report" which shall be presented to the County Recorder at the same time of recordation as the Deed for the subject property. Should Buyer decline to complete said "Preliminary Change of Ownership Report", or if rejected by the County Recorder, Buyer (or Seller if required by lender) will be assessed with an additional $20.00 surcharge by the County Recorder, which shall be charged to the Buyer's account (or to Seller's account if required by lender). In this event, a Standard Change in Ownership statement (Revenue and Taxation Code, Section 480) will be mailed to the Buyer by the Office of the County Assessor. Failure on the part of the Buyer to complete and return said Standard Change of Ownership mailed under authority of Section 480 within 45 days, will result in a penalty of 10% of the taxes due, after processing the reassessment caused by a change in ownership or $100.00, whichever is greater, but not to exceed the sum of $2,500.00.

J.  **TAX WITHHOLDING REQUIREMENTS:** Buyer and Seller are aware of the requirements of Internal Revenue Code, Section 1445, Foreign Investment in Real Property Tax Act (FIRPTA), which provides that every Buyer must, unless an exemption applies, deduct and withhold 10% of the gross sales price from Seller's proceeds and send to the Internal Revenue Service, if the Seller is a "foreign person" under that

SELLER INITIALS: _____  _____  BUYER INITIALS: _____  _____

statute.

In addition, effective January 1, 2003 in accordance with Assembly Bill 2065 which revised Section 18662 of the Revenue and Taxation Code, a Buyer may be required to withhold an amount equal to 3 1/3% of the sales price in the case of a disposition of California real property interest. The law requires the buyer to withhold when escrow has properly notified the buyer of the withholding requirements as set forth below:

Withholding is required on all transfers of real property unless:

- The total sales price does not exceed $100,000
- The property is being foreclosed upon
- The seller is a bank acting as a trustee other than a trustee of a deed of trust, or
- The seller qualifies for one of the exemptions set forth below

**Sellers must complete Form 593-C, *Real Estate Withholding Certificate*. Sellers must give the completed Form 593-C to Escrow within the first five days of opening escrow to avoid delaying the close of escrow. Incomplete or improperly completed forms may not exempt the seller from withholding. You cannot submit Form 593-C after the close of escrow. If the seller does not return the completed Form 593-B and Form 593-C by the close of escrow, escrow holder is required to withhold 3 ⅓% of the total sales price.** The Seller may be exempt from withholding if:

• The property qualifies as the seller's principal residence under Internal Revenue Code (IRC) Section 121. Generally, a home will qualify as a principal residence if, during the five year period ending on the date of sale, the sellers owned and lived in the property as their main home for at least two years. There may be other restrictions, limitations or exceptions for special circumstances.

• The property was last used by the sellers as their principal residence under IRC Section 121, even if the seller did not meet the two out of the last five years requirement or one of the special circumstances.

• The seller will incur a loss or zero gain on the sale for California income tax purposes. The seller must complete Form 593-E, *Real Estate Withholding – Computation of Estimated Gain or Loss.*

• The property is being involuntarily converted and will qualify for nonrecognition of gain for California income tax purposes under IRC Section 1033.

• The seller is transferring the property to the seller's corporation or partnership and the transfer will qualify for nonrecognition under IRC Section 351 or 721.

• The seller is a corporation (or an LLC classified as a corporation for federal and California income tax purposes) that is either qualified through the California Secretary of State or has a permanent place of business in California.

• The seller is a partnership (or an LLC that is not a disregarded single member LLC and is classified as a partnership for federal and California income tax purposes) with recorded title to the property in the name of the partnership or LLC.

• The seller is a tax-exempt entity under either California or federal law.

• The seller is an insurance company, individual retirement account, qualified pension/profit sharing plan, or charitable remainder trust.

Withholding may also be reduced or deferred when:

• The sale qualifies as an IRC Section 1031 exchange. However, withholding will be required on any cash or cash equivalent the seller receives unless the cash or cash equivalent does not exceed $1,500.

• The sale is an installment sale and the buyer agrees in writing to withhold on the down payment, each principal payment and any balloon payment. The buyer must complete Form 593-I, *Real Estate Withholding Installment Sale Agreement.*

The Seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement. **For additional information, please contact the Franchise Tax Board at (888) 792-4900.**

K. **CUSTODIAL FEE:** You are authorized and instructed to deduct $25.00 per month as a custodial fee from

SELLER INITIALS: _____  _____    BUYER INITIALS: _____  _____

any funds on deposit not disbursed within 3 months after close of escrow, or 3 months after scheduled close of escrow.

L. **CLOSING FUNDS/COSTS:** Each party acknowledges that the close of escrow is conditioned on check clearances. Funds to close must be in the form of a Cashiers Check drawn on a bank with a clearing house in the State of California two (2) days prior to recording of documents OR be wire transferred to **West Coast Escrow** Trust Account no later than two (2) days prior to recording to avoid any delay in closing. **ALL FINAL FUNDS DEPOSITED IN ESCROW FOR CREDIT OF BUYER IN EXCESS OF $100,000.00 MUST BE WIRE TRANSFERRED.** Buyer and Seller to each pay their normal and customary charges in connection with this transaction. All parties are aware that one or more of the principals may be eligible for a repeat client/courtesy charge.

## GENERAL PROVISIONS

1. Each of the persons who are the parties to the transaction to which this escrow relates (the "Principals") agrees, understands and acknowledges that West Coast Escrow is acting as an escrow holder in connection with this transaction and is not acting as a trustee or in any other fiduciary capacity. West Coast Escrow's duties shall be limited to safekeeping of such money and documents received by it as Escrow Holder, and for the disposition of such money and documents in accordance with the written instructions accepted by it in this escrow.

Unless the Principals direct West Coast Escrow in writing to establish a separate, interest-bearing account for the money deposited in escrow and provide all necessary account opening documentation (including taxpayer reporting and customer identification information), all funds received in this escrow by West Coast Escrow shall be deposited in a non-interest bearing account (the "Escrow Account") with a federally insured financial institution (the "Depository"). West Coast Escrow may also deposit escrow funds for other customers for unrelated transactions to the Escrow Account.

**EACH OF THE PRINCIPALS AGREES, UNDERSTANDS AND ACKNOWLEDGES THAT: THE ESCROW TRUST ACCOUNT IS NON-INTEREST BEARING; NO FINANCIAL OR OTHER BENEFITS WILL BE EARNED BY OR PROVIDED TO ANY OF THE PRINCIPALS WITH RESPECT TO FUNDS HELD IN THE ESCROW TRUST ACCOUNT; AS A RESULT OF MAINTAINING THE ESCROW ACCOUNT WITH THE DEPOSITORY, West Coast Escrow AND/OR ITS AFFILIATES MAY RECEIVE FROM THE DEPOSITORY DIRECT AND INDIRECT FINANCIAL AND OTHER BENEFITS, SUCH AS BANK SERVICES, ACCOMMODATIONS, LOANS FOR INVESTMENT AND OTHER PURPOSES OR OTHER ECONOMIC BENEFITS ("COLLATERAL BENEFITS"); ALL COLLATERAL BENEFITS SHALL ACCRUE TO THE SOLE BENEFIT OF West Coast Escrow AND West Coast Escrow SHALL HAVE NO OBLIGATION TO ACCOUNT TO THE PRINCIPALS FOR THE VALUE OF ANY SUCH COLLATERAL BENEFITS.**

2. You shall not be responsible or liable in any manner whatsoever for the sufficiency or correctness as to form, manner of execution or validity of any documents deposited in escrow, nor as to the identity, authority or rights of any person executing the same, either as to documents of record or those handled in this escrow. You shall not be required to take any action in connection with the collection, maturity or apparent outlaw of any obligations deposited in this escrow, unless otherwise instructed. You shall not be liable for any of your acts or omissions done in good faith, nor for any claims, demands, losses or damages made, claimed or suffered by any party to this escrow, excepting such as may arise through or be caused by your willful neglect or gross misconduct.

3. Escrow to close on or before the time set forth in these instructions. However, you may close escrow after that date unless Buyer or Seller has made written demand upon you for the return of monies or documents deposited by him, in which event you are instructed to prepare cancellation instructions. In the event of cancellation, all documents prepared by you will remain unrecorded in your possession.

4. NO ACTION SHALL LIE AGAINST ESCROW HOLDER FOR ANY CLAIMS, LOSS, LIABILITY, OR ALLEGED CAUSE OF ACTION OF ANY KIND OR NATURE WHATSOEVER, HOWEVER CAUSED OR OCCURRED UNDER THIS ESCROW, OR IN CONNECTION WITH THE HANDLING OR PROCESSING OF THIS ESCROW, UNLESS BROUGHT WITHIN TWELVE (12) MONTHS AFTER THE CLOSE OF ESCROW, A CANCELLATION, OR A TERMINATION OF THIS ESCROW FOR ANY REASON WHATSOEVER.

5. All notices, demands and instructions must be in writing. In the event conflicting demands or notices are made or served upon you or any controversy arises between the parties hereto or with third person growing out of or relating to this escrow, you shall have the absolute right to withhold and stop all further proceedings in, and performances of, this escrow, until you receive written notification satisfactory to you of the settlement of the controversy by agreement of the parties thereto, or by final judgment of a court of competent jurisdiction. All of the parties to this escrow hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify you and

SELLER INITIALS: _____ _____  BUYER INITIALS: _____ _____

to hold you harmless from and against all litigation and interpleader costs, damages, judgments, attorney's fees, expenses, obligations and liabilities of every kind which, in good faith, you may incur or suffer in connection with or arising out of this escrow, whether said litigation, interpleader, obligations, liabilities or expenses arise during the performance of this escrow, or subsequent thereto, directly or indirectly.

6. These instructions may be executed in counterparts, each of which shall constitute an original regardless of the dates of its execution and delivery. All such counterparts together shall constitute one and the same document.

7. You are hereby authorized to deposit any funds or documents handed you under these escrow instructions, or cause the same to be deposited, with any duly authorized sub-escrow agent, subject to your order at or prior to close of escrow, in the event such deposit shall be necessary or convenient for the consummation of this escrow.

8. The parties to these escrow instructions authorize you to destroy these instructions and all other instructions and records in this escrow at any time after five (5) years from close of escrow or cancellation of escrow, without liability or further notice.

9. Escrow Holder to provide copies to Buyer and Seller and their agents of any notices received from the other party or their agents. Each party signing these instructions states they have read and approved instructions on all previous pages.

10. If Seller unilaterally assigns or orders the proceeds of this escrow to be paid to other than the original parties to this escrow, such assignment or order shall be subordinate to the expenses of this escrow, liens of record on the subject property, and payments directed to be made by Buyer and Seller together. If the result of such assignment or order would be to leave the escrow without sufficient funds to close, then you are directed to close nevertheless and to pay such assignments or orders only out of the net proceeds due Seller except for such assignments or orders, and to pay them in the order in which such assignments or orders are received by you.

11. You are not to be concerned with the giving of any disclosures except as expressly required by Federal or State law to be given by an escrow agent. Neither are you to be concerned with the effect of zoning ordinances, land division regulations, or building restrictions which may pertain to or affect the land or improvements that are the subject of this escrow.

12. Parties hereto understand Escrow Holder may, upon their sole discretion, rely and act upon facsimile instructions or e-mail including but not limited to escrow instructions, amendments or modifications, demands, lender instructions and bills from third parties.

13. Order payoff statement(s) on existing liens and loans, if applicable, AND/OR order beneficiary statement(s) on loan(s) of record being taken over by the Buyer, comply with lenders' requirements and freeze or close equity lines of credit. Charge Seller for any delinquent payments, if applicable.

14. West Coast Escrow is authorized to release funds, if applicable, from money on deposit to pay for Credit Report, Appraisal, City Reports, Lender or Association Statements, Transfer Fees and/or Documents which may be required to be paid in advance. Funds released prior to the close of escrow are non-refundable regardless of the consummation of this escrow.

15. Adjustments and/or prorations called for in this escrow shall be made in the following manner:
Prorate taxes on real property only, based on the last tax bill in your possession or on latest available tax figures furnished by the title company. Prorate rent per rental statements. Make all adjustments and prorations on the basis of a 30-day month.

16. "Close of escrow" as used in this escrow means that date on which documents are recorded, unless otherwise specified. All documents and funds due the respective parties are to be mailed to the addresses set out, unless otherwise specified. Our signatures on any document and instructions pertaining to this escrow indicate our unconditional approval of same. You as escrow holder shall have no responsibility or liability for any act outside of escrow.

17. I/We agree to pay escrow fees and charges, including messenger fees, overnight delivery charges plus handling, and notary fees, if applicable. I/We irrevocably assign the fees to escrow, whether by cancellations or closing. In the event of failure to pay fees or expenses due you hereunder, on demand, I agree to pay your actual attorney's fees for any attorney services which may be required to collect such fees or expenses.

18. As the undersigned Seller, the foregoing terms, provisions, conditions and instructions are approved and accepted in their entirety and concurred with by me. I will hand you necessary documents called for on my part to cause title to be shown as above, which you are authorized to deliver when you hold or have caused to be applied funds set forth above within the time as above provided. You are authorized to pay your escrow charges, my recording fees, charges for evidence of title as called for whether or not this escrow is consummated, except those the buyer agreed to pay. You are further authorized to pay bonds, assessments, taxes, and any liens of record, including prepayment penalties, if any, to show title as called for and to pay Documentary Transfer Tax on deed as required.

19. Your duty to act as Escrow Holder shall not commence until instructions, signed by all parties, are received by

SELLER INITIALS: _____  _____  BUYER INITIALS: _____  _____

you.

20. You are authorized to furnish fully signed copies of escrow instructions, supplements, amendments, or notices of cancellation, preliminary report and closing statements in this escrow to real estate broker(s) and lender(s) referred to in this escrow. You are not required to submit any Preliminary Report issued in connection with this escrow to any party or agent unless directed to do so by mutual instructions.

21. These instructions are not intended to supersede the Real Estate Contract, unless specifically stated.

22. Due to the Good Funds Law (AB512) there may be a delay between the time Buyer's new loan is funded, close of escrow (recording), and/or disbursement of Seller's proceeds, dependent upon the manner or form in which the Buyer's new loan proceeds are disbursed by lender. Buyer is aware that interest on new loan commences on the date the funds are disbursed by lender, REGARDLESS OF DATE ESCROW CLOSES (RECORDS).

23. In the event you disburse more money to or for the benefit of any party than they are entitled to receive, said receiving party hereby agrees to reimburse and/or repay to West Coast Escrow the amount of overpayment within five (5) days after demand is made on said parties in writing. Interest shall thereafter accrue and be paid to West Coast Escrow at the rate of 10% per annum. In the event said party refuses or neglects to pay said money and interest to West Coast Escrow, and it is necessary to resort to any legal proceedings to collect said money, the defendant agrees to pay all charges, court costs and attorney's fees.

## 24. GRAMM-LEACH-BLILEY ACT (West Coast Escrow Privacy Policy)

**We Are Committed to Safeguarding Customer Information:** In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability:** This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

**Types of Information:** Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information:** We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and companies involved in real estate services, such as home warranty companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers:** Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security:** We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to help ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

SELLER INITIALS: _____ _____  BUYER INITIALS: _____ _____

COLDWELL BANKER RESIDENTIAL BROKERAGE WHO IS SERVING AS YOUR AND/OR ANOTHER PERSON'S BROKER IN CONNECTION WITH THIS REAL ESTATE TRANSACTION IS OWNED BY A COMPANY WHICH ALSO OWNS WEST COAST ESCROW.

WEST COAST ESCROW, WHO IS SERVING AS YOUR ESCROW HOLDER IN CONNECTION WITH THIS TRANSACTION, IS AFFILIATED WITH EQUITY TITLE CO. AND CARTUS FINANCIAL SERVICES CORPORATION AND ALL ARE OWNED BY A COMMON PARENT COMPANY.

WEST COAST ESCROW IS LICENSED BY THE STATE OF CALIFORNIA, DEPARTMENT OF CORPORATIONS LICENSE NO. 963-1275.

SELLER:                                    BUYER:


_____          _____
Roger Lee Delong                          Billie Rene Powers

ORDER NO.: OR0750981

EXHIBIT "A"

BEGINNING AT THE INTERSECTION OF THE WEST LINE OF THE EAST ONE-HALF OF SECTION 17, TOWNSHIP 6 SOUTH, RANGE 5 WEST, SAN BERNARDINO BASE AND MERIDIAN, AND THE RIVERSIDE AND ORANGE COUNTY BOUNDARY LINE, AS PER F.B. 113, PAGE 114, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, THENCE NORTH 33° 22' EAST, ALONG SAID BOUNDARY LINE, A DISTANCE OF 1533.47 FEET, MORE OR LESS, TO TRUE POINT OF BEGINNING, BEING AT THE SOUTHEASTERLY CORNER OF LAND CONVEYED TO MARCEL AND MALVINA CRISTIN BY DEED ON FILE IN BOOK 2089 PAGE 99 OF OFFICIAL RECORDS; THENCE NORTH 0° 03' 19" WEST, TO A POINT ON THE NORTH LINE OF SAID EAST ONE-HALF OF SAID SECTION 17, BEING AT THE NORTHEAST CORNER OF SAID LAND CONVEYED TO SAID PARCEL AND MALVINA CRISTIN; THENCE SOUTH 88° 50' EAST, ALONG THE NORTH LINE OF SAID EAST ONE-HALF OF SAID SECTION 17, A DISTANCE OF 487.03 FEET; THENCE SOUTH 0° 03' 09" EAST, TO THE INTERSECTION WITH THE SAID RIVERSIDE AND ORANGE COUNTY BOUNDARY LINE; THENCE SOUTH 33° 22' WEST, ALONG SAID BOUNDARY LINE, A DISTANCE OF 884.03 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

INITIAL HERE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**  No. _____

(C.A.R. Form ADM, Revised 10/01)

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ other_____

dated 5/15/07 , on property known as 40701 Ortega Highway San Juan Capistrano

in which Rene Powers is referred to as ("Buyer/Tenant")

and Roger de long is referred to as ("Seller/Landlord").

Buyer agrees to release 1000.05 dollars from Escrow, starting on the week of June 11 and every week after until escrow closes on property known as 40701 Ortega Highway San Juan Capistrano. This funds are non refundable and to be applied to the purchase price.

Roger de long who is the owner and seller of the property known as 40701 Ortega Highway agrees to credit Rene Powers who is the buyer, all of the money from the sale of the cell tower that is on the property.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____  Date _____
Buyer/Tenant _____  Seller/Landlord _____
Buyer/Tenant _____  Seller/Landlord _____

The copyright laws of the United States (Title 7 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.


Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

ADM REVISED 10/01 (PAGE 1 OF 1)   Print Date BDC Aug 06

**MASTER COPY**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3



WEST COAST
ESCROW

6841 Quail Hill Parkway
Irvine, CA 92603
Phone (949) 854-7353  Fax (949) 854-7152
Sheila.Knight@westcoastescrow.com

## ESCROW MODIFICATION

**ESCROW OFFICER: Sheila Knight**

**ESCROW NO.: IR-15391-SK**
**DATE: May 29, 2007**

### PROPERTY: 40701 Ortega Highway, San Juan Capistrano, CA 92530

**To: West Coast Escrow**

The Buyer and Seller agree that the Real Estate Purchase Contract and previous escrow instructions in the above numbered escrow are hereby modified/supplemented in the following particulars only:

**FUNDS FROM SALE OF CELL TOWER:** Seller agrees to credit the Buyer proceeds from the sale of the cell tower in the amount of $145,493.40 for the above mention property and the funds shall be applied toward the purchase price at the close of escrow. Seller shall deposit the $145,493.40 once the Buyer's Lender provides written loan approval. The seller shall then deposit said funds into escrow via wire transfer no later than two days prior to the close of escrow. In the event the escrow does not close, the $145,493.40 shall be immediately returned to the seller.

**PROPERTY SOLD "AS-IS":** Mentioned herein for memorandum purposes only, with which Escrow Holder is not to be concerned or held liable, Buyer acknowledges that the subject property is being sold in it's present as is condition per the provisions of the original Real Estate Purchase Contract.

**AMENDMENT TO SELLER TO PAY FOR DEVELOPMENT OF LOWER ACREAGE:** Seller and Buyer agree to amend the name of the developer who will develop lower acreage. Escrow Holder is authorized and instructed to pay L.J. Hanson $300,000.00 from Seller's proceeds at the close of escrow. Paul Mitchell is hereby removed from purchase contract.

***** All other terms and conditions shall remain the same.* ****

**SELLER:**

**BUYER:**

**Roger Lee Delong**

**Billie Rene Powers**



WEST COAST ESCROW

6841 Quail Hill Parkway
Irvine, CA 92603
Phone (949) 854-7353  Fax (949) 854-7152
Sheila.Knight@westcoastescrow.com

## ESCROW MODIFICATION

**ESCROW OFFICER: Sheila Knight**

**ESCROW NO.: IR-15391-SK**
**DATE: May 29, 2007**

### PROPERTY: 40701 Ortega Highway, San Juan Capistrano, CA 92530

---

**To: West Coast Escrow**

The Buyer and Seller agree that the Real Estate Purchase Contract and previous escrow instructions in the above numbered escrow are hereby modified/supplemented in the following particulars only:

**RELEASE OF NON-REFUNDABLE FUNDS PRIOR TO CLOSE OF ESCROW:** Upon Escrow Holder's receipt of this instruction from all parties bearing original, **NOTARIZED** signatures, Escrow Holder is authorized and instructed to release, without further instruction, $150.00 per day, of Buyer(s) funds on deposit (cleared and paid by bank) to the Seller starting on June 15, 2007 until escrow closes on or before June 30, 2007, and only upon Escrow Holders receipt of properly executed Grant Deed from Seller(s), Buyer's Contingency Removal form and acknowledgment from Buyer they have received the preliminary report. Said funds are non-refundable. Escrow Holder is authorized and instructed to release the $150.00 per day to the seller on a weekly basis.

Should Buyer not close escrow by June 30, 2007, escrow shall be deemed cancelled and both parties agree to immediately sign cancellation instructions.

The undersigned understand that this escrow is NOT closed, no documents have been recorded and no Policy of Title Insurance issued.

All parties understand that Escrow Holder and Brokers make no warranty or representation of any kind, expressed or implied, as to the ownership of or title to the property described herein, nor as to any encumbrances or liens thereon, nor as to the conditions and/or the ultimate outcome of this escrow.

Escrow Holder is released of all responsibility and/or liability for failure of any conditions of this escrow or recovery of said funds. Buyer and Seller agree to look to each other in the event of a dispute.

**STATE OF CALIFORNIA**
**COUNTY OF** _____

On _____ before me _____
a Notary Public in and for said County and State, personally appeared

_____

_____  □ personally known to me - **OR** - □ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____



**WEST COAST ESCROW**

6841 Quail Hill Parkway
Irvine, CA 92603
Phone (949) 854-7353  Fax (949) 854-7152
Sheila.Knight@westcoastescrow.com

Affix Notary Seal Here

\* \* \* \* \* All other terms and conditions shall remain the same.\* \* \* \* \*

SELLER:                                         BUYER:

_____         _____

Roger Lee Delong                              Billie Rene Powers

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

06/15/2007 15:57   1454585443   EDEX KINKO'S   PAGE   01/01

JUN.15.2007 15:43   PRUDENTIAL CALIFORNIA REALTY   #3083 P.002 /002

**ASSOCIATION OF REALTORS®**

**ADDENDUM**

(C.A.R. Form ADM, Revised 10/01)

No. __1__

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ other:_____

dated __6/15/07__ on property known as __40701 Ortega Highway San Juan__

In which __Rene Powers__ is referred to as ("Buyer/Tenant")

and __Roger de long__ is referred to as ("Seller/Landlord").

Seller will not be Paying 300,000 $ dollars to LJ Hanson for development of lower acreage.

Jackie and Louie Hanson will be purchasing 40701 Ortega Highway along with Rene Powers.

Jackie and Louie Hanson and Rene Powers will all be on Title together

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date __6/15/07__   Date _____

Buyer/Tenant _____   Seller/Landlord _____

Buyer/Tenant _____   Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



ADM REVISED 10/01 (PAGE 1 OF 1)   Print Date BDC Feb 06

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 5

RECORDING REQUESTED BY:
**EQUITY TITLE COMPANY**

AND WHEN RECORDED MAIL TO:
**Billie Rene Powers**
40701 Ortega Highway
Area of Lake Elsinore , CA 92530

Order No.: OR0750981
Escrow No.: IR-15391-SK
A.P.N.: 125-120-27

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||  **32.00**

**2007000417170** 12:51pm 07/02/07

105 27 G02 3

935.00 935.00 20.00 0.00 6.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

**GRANT DEED**

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX IS **$1,870.00**               CITY TRANSFER TAX IS $.00

[ X ]        computed on full value of property conveyed, or

[    ]        computed on full value less value of liens or encumbrances remaining at time of sale.

[    ]        unincorporated area    [ X ] City of **San Juan Capistrano** AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Roger Lee Delong, a single man**

hereby GRANT(S) to   **Billie Rene Powers, An Unmarried Woman, and Louise J. Hanson, and Jacqueline M. Hanson, Husband and Wife as joint tenants**

the following described real property in the County of **Orange**, State of California:
See Exhibit "A" attached hereto and made a part hereof for complete legal description.

Dated: **April 24, 2007**

STATE OF CALIFORNIA
COUNTY OF ___RIVERSIDE___            } SS.

On __APRIL 26, 2007__ _____ before me
__NANCY FRYE GANZON    NOTARY PUBLIC__
Notary Public, personally appeared
__ROGER LEE DELONG__

~~personally known to me~~ (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/~~are~~ subscribed to the within instrument and
acknowledged to me that he/~~she/they~~ executed the
same in his/~~her/their~~ authorized capacity(~~ies~~) and that
by his/~~her/their~~ signature(s) on the instrument the
person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ , NOTARY PUBLIC
              Signature of Notary
Commission Expiration Date: _____ 11/5/2010

**Roger Lee Delong**

NANCY FRYE GANZON
COMM. #1703328
NOTARY PUBLIC • CALIFORNIA
RIVERSIDE COUNTY
Comm. Exp. NOV. 5, 2010

(This area for official notarial seal)

MAIL TAX STATEMENTS TO:  Billie Rene Powers, 40701 Ortega Highway , Area of Lake Elsinore , CA 92530

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 6

STATE OF CALIFORNIA
Secretary of State
Notary Public Section
PO Box 942877
Sacramento, California 94277-0001
(916) 653-3595

| For Official Use Only: |
| Comm Number_____ |
| Comm Expiration_____ |
| County_____ |

## COMPLAINT FORM

### COMPLAINANT INFORMATION (please print)

Your Name: **Billie Rene Powers**  Drivers License No.: **N6250961**
Residence Address: **40701 Ortega Hwy**
**San Juan capistrano, Ca. 92675**  Residence Telephone: (**949**)**270-6783**

Business Address:
Mailing address: **40701 Ortega hwy**  Business Telephone: (    )

**Lake Elsinore, Ca. 92530**

### NOTARY PUBLIC INFORMATION (please print)

Name of Notary: **Nancy Frye Garzon**  Commission No. (if known): **1703328**
Business Address: **Mail stop etc. (closed)**  Business Telephone: (**951**) **245-2645**
**18285 Collier ave. #K**
**Lake Elsinore, Ca. 92530**

**NATURE OF COMPLAINT** (Please print or attach printed or typed statement-use reverse side if needed)

_____ This notary _____ This notary has notarized a document that has fraudulent and fictitious names on it. When

_____ the document was notarized only one name was on the Grant Deed as buyer, Billie Rene

_____ Powers.

_____ The document has a name of Louise J. Hanson and Jacqueline M. Hanson and

_____ these two were not a party to this transaction on this date of notarizing and the name

_____ Louise J. Hanson is fictitious and unknown. I tried to contact this notary when I became

_____ aware of the forgery, for the last year

_____ called her then place of business in Lake Elsinore where she notarized the document

_____ leaving a message with a person at the business, and on facebook just a couple of

_____ months ago. This document was fraudulently

_____ recorded into the land records of Orange County and is clouding my title and making my

_____ home unmarketable as well as being used multiple times to file fraudulent criminal notice

_____ off defaults  to attempt to STEAL my home by parties of no perfected standing or

_____ beneficial interest. I have requested the notary page and help from her, I have had no

_____ response

I want her oath and bond information as well please.

### OTHER QUESTIONS (Please Respond)

1. Is your signature on the subject document/s a forgery?  YES  **NO**  N/A my signature is not required or on it
2. Did you personally appear before the Notary on the date shown on the notarial acknowledgment?  YES  **N**
3. If you appeared before the Notary, did you acknowledge signing the subject document/s?  YES  NO  N/A
4. Did you sign the Notary's official notary journal record book?  YES  **NO**
5. Do you personally know the Notary?  YES  **N**

**IMPORTANT:**

1. Please attach **CERTIFIED** copies of all questioned documents to this complaint (these may be obtained from the County Recorder's Office).
2. Please attach **OTHER** records which pertain to your complaint (examples-depositions, certified copies of documents, court records).
3. Please return this complaint form, the certified copies of questioned documents and the other documents to the address shown at the top of the page.

I certify that the information in this complaint is true and correct to the best of my knowledge.

Signature _____  Date **2-25-2014**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 7

August 27, 2014

RE: 2007000417170

To Whom It May Concern

My name is Nancy F. Ganzon and this is my affidavit to the act of fraud that was perpetuated against my Notary Public commission #1703328.

On April 26, 2007 I notarized a grant deed for Roger Lee Delong where he granted Billie Rene Powers his real property located in the City of Orange. This notary took place in our place of business, MailStop, etc. located in Lake Elsinore, California. This business was closed in April of 2013.

A few days ago, as I was attempting to clear up space on my laptop, I came across some messages in my Facebook account. I don't normally access Facebook on my laptop. I work primarily off of my smart phone. I discovered that there were two in-boxes and was shocked to see messages from earlier this year. My smart phone Facebook app does not allow me to see this secondary messaging inbox.

One of these messages was from Billie Rene Powers explaining her situation and her attempts to locate me. She was trying to avoid having to file a claim against my notary bond. I immediately got in touch with her. She was requesting the page from the date and year of the grant deed that had been notarized. I gladly provided this information to her as is my duty to do so under the laws of my commission.

She in turn provided me with a copy of the Grant Deed in question. As evidenced in my journal, I did in fact notarize a Grant Deed for Roger Lee Delong. The fraud committed against me and Roger Lee Delong occurred after I did the original notary.

This copy of the Grant Deed clearly shows that the document had been fraudulently manipulated and was committed by Equity Title Company, West Coast Escrow and or Countrywide. When and where in the process the fraud occurred is not known to any of us.

The clearest point of fraud is evident in the area where Roger Delong is granting real property. That font is a typewriter font as evidenced in the strike marks specific to typewriters. This font does not match any of the original fonts that are commonly used in preparing these Grant Deeds. The second point of fraud points to the area next the acknowledgment. It is easily missed but it is a copy of a Whiteout mark. This is clear evidence that someone had tried to cut and paste the lower part of the acknowledgement to a new Grant Deed and attempted to clean up the copy marks. The last area that stands out to me is the area where I have written in the specifics of the notary including my signature. My signature specifically because it has been significantly lightened up and this would occur if a copy of my original signature had been done and repeated copies taken in the cut and paste process.

As a Notary Public for the State of California, I have to take continued education classes to keep up to date on current laws pertaining to my position. I also as a condition of my commission, have to be sworn in and swear that I will uphold my duties to the best of my abilities and with fiduciary duty to both the State and the general public. I am required to require a Bond and or additional insurance. This means that I can incur both criminal and monetary damages for errors committed in the process of my doing my job.

I have always taken my position very seriously. I am astounded at the criminality of this act against myself and my commission. This is an attack against my integrity and my livelihood. Billie Rene Powers, in her attempt to locate me first went to our former place of business not knowing we had closed up shop last year. Her first instinct upon seeing that we were gone and because I had not immediately responded to her message on Facebook, was to think the worse of me and first thought that I might have been in cahoots with these criminals.

I have provided Billie Rene Powers with copies of my journal page as per her request.

I take this personal as my integrity is something I have always stood for and has made me a stand out amongst my competitors. Knowing that I could be held liable for damages if I had done this criminal act, I would like to know what is going to be done by those responsible for this act of fraud committed against myself and Billie Rene Powers.

I would like a response to this question as soon as possible as I believe this act to be as scandalous as the recent discovery of robo-signers. The continued criminality committed against homeowners has to end now.

If there are any further questions pertaining to this affidavit I can be contacted at 951-907-8563. If my voicemail is reached, please be sure to leave a message and I will return your call as soon as possible.

Sincerely,

Nancy Ganzon

## ACKNOWLEDGMENT

State of California
County of _Riverside_                    )

On _11/18/2014_ _____ before me, _Teresa M. Rivera, Notary Public_
(insert name and title of the officer)

personally appeared _Nancy Ganzon_ _____.
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

TERESA M. RIVERA
Comm. #1961372
Notary Public-California
Riverside County
My Commission Expires
November 21, 2015

Signature _____ (Seal)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 8

RECORDING REQUESTED BY
EQUITY TITLE COMPANY

Reconting Requested By:
D. PEREZ

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖ ‖‖ ‖‖‖‖‖‖‖‖‖‖‖‖‖‖ ‖‖‖‖‖ ‖‖‖    **75.00**

**2007000417171 12:51pm 07/02/07**
105 27 D11 24

0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ELIZABETH SANTILLAN

125-120-27

[Space Above This Line For Recording Data]

IR-15391-SK
Escrow/Closing #

00017102637806007
[Doc ID #]

# DEED OF TRUST

MIN1001337-0002241128-7

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JUNE 27, 2007     , together with all Riders to this document.

(B) "Borrower" is
BILLIE RENE FOWERS, AN UNMARRIED WOMAN, AND LOUIS J HANSON, AND JACQUELINE M HANSON, HUSBAND AND WIFE AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP®-6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291      **Form 3005 1/01**
CONV/VA





DOC ID #: 00017102637806007

Borrower's address is
40701 ORTEGA HWY, SAN JUAN CAPISTRANO, CA 92530
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(D) "Trustee" is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN:TO-02, THOUSAND OAKS, CA 91360

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated JUNE 27, 2007   . The Note states that Borrower owes Lender
ONE MILLION ONE HUNDRED NINETY THOUSAND and 00/100

Dollars (U.S. $ 1,190,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JULY 01, 2037    .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

VMP -6A(CA) (0207)     CHL (08/05)      Page 2 of 16      Form 3005 1/01

Branch :O25,User :JARB          Order: 1730274  Title Officer: 10  Comment:                              Station Id :KALZ

DOC ID #: 00017102637806307

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

         COUNTY         of         ORANGE        :

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 125-120-27               which currently has the address of

         40701 ORTEGA HIGHWAY, SAN JUAN CAPISTRANO     ,

[Street/City]

California   92530   ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

VMP -6A(CA) (0207)     CHL (08/05)       Page 3 of 16             Form 3005 1/01

DOC ID #: 00017102637906007

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)          CHL (08/05)                    Page 4 of 16                              Form 3005  1/01

DOC ID #: 00017102537806007

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)     CHL (08/05)          Page 5 of 16                Form 3005 1/01

DOC ID #: 00017102637806C07

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Branch :O25,User :JARB          Order: 1730274  Title Officer: 10  Comment:                    Station Id :KALZ

DOC ID #: 00017102637806007

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

-6A(CA) (3207)          CHL (08/05)          Page 7 of 16          Form 3005 1/01

DOC ID #: 00017102637036007

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

-6A(CA) (0207)          CHL (08/05)          Page 8 of 16                    Form 3005  1/01

DOC ID #: 00017102637806007

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

-6A(CA) (0207)     CHL (08/05)       Page 9 of 16          Form 3005 1/01

DOC ID #: 0001710263780600?

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Branch :O25,User :JARE          Order: 1730274 Title Officer: 10 Comment:          Station Id :KALZ

DOC ID #: 0001710263789600?

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (08/05)          Page 11 of 16          Form 3005 1/01

DOC ID #: 0001710263780 6007

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

-6A(CA) (0207)      CHL (08/05)           Page 12 of 16                    Form 3005 1/01

Branch :O25,User :JARE    Order: 1730274    Title Officer: 10    Comment:    Station Id :KALZ

DOC ID #: 00017102637806007

compliance with the requirements of Section 15} of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

VMP -6A(CA) (0207)    CHL (08/05)    Page 13 of 16    Form 3005 1/01

DOC ID #: 00017102637806097

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VMP -6A(CA) (0207)        CHL (08/05)           Page 14 of 16                    Form 3005 1/01

DOC ID #: C0017102637806007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BILLIE RENE POKERS         -Borrower

_____ (Seal)
LOUIS J. HANSEN            -Borrower

_____ (Seal)
JACQUELINE M. HANSON       -Borrower

_____ (Seal)
                           -Borrower

-6A(CA) (0207)   CHL (08/05)   Page 15 of 16   Form 3005 1/01

DOC ID #: C0017102637806007

State of California
County of Orange } ss.

On June 27, 2007 before me, Sheila Knight, Notary Public
personally appeared

Billie Rene Powers

_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

SHEILA KNIGHT
Commission # 1448233
Notary Public - California
San Diego County
My Comm. Expires Oct 20, 2007

-6A(CA) (0207)          CHL (08/05)          Page 16 of 15                    Form 3005  1/01

LOAN #: 171026378

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-SEVENTH day of JUNE, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to Countrywide Bank, FSB.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
40701 ORTEGA HIGHWAY
SAN JUAN CAPISTRANO, CA 92530-____
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of 7.000 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JULY, 2012 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

* FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)(d)          Page 1 of 5





LOAN #: 171026378

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUART percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment. For payment adjustments occuring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 12.000 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.000 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 2 of 5

LOAN #: 171025378

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B.1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 3 of 5

LOAN #: 171026378

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460 US (10/05)       Page 4 of 5

LOAN #: 171026378

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_Billie Rene Powers_ (Seal)
BILLIE RENE POWERS                                    -Borrower

_Louis J. Hanson attorney in fact_ (Seal)
LOUIS J. HANSON                                       -Borrower

_Jacqueline M. Hanson as attorney in fact_ (Seal)
JACQUELINE M. HANSON                                  -Borrower

_____ (Seal)
                                                      -Borrower

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1F460-US (10/05)              Page 5 of 5

 **Equity Title Company**

2112 E. 4th Street, Suite 160
Santa Ana, CA 92705
(714) 972-4299 Phone
(714) 972-4253 Fax

## Government Code 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary: *Sheila Knight*

Commission Number: *1446233*

County Where Bond is Filed: *Orange*

Date Commission Expires: *10-20-07*

Vendor Number: *NNA1*

Place of Execution: _____ SANTA ANA, CA.

Date: *7-2-07*

Signature: _____

I CERTIFY UNDER PENALTY OF PERJURY THAT THE ILLEGIBLE PORTION OF THIS DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

PLACE OF EXECUTION: ___ SANTA ANA, CA _____        DATE _____

_____
EQUITY TITLE COMPANY/SIGNATURE

Prepared by: ELIZABETH SANTILLAN

**Countrywide Bank, FSB.**

DATE: 06/27/2007
CASE #:
DOC ID #: 00017102637806007
BORROWER: BILLIE RENE POWERS
PROPERTY ADDRESS: 40701 ORTEGA HIGHWAY
              SAN JUAN CAPISTRANO, CA 92530-____

Branch #: 0000100
2500 E IMPERIAL HWY , STE 198
BREA, CA 92821
Phone: (714)255-8300
Br Fax No.: (714)255-8495

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
* Legal Description Exhibit A
1C404-XX (04/03)(d)



* 2 3 9 9 1 *

* 1 7 1 0 2 6 3 7 8 0 0 0 0 0 1 0 0 6 A *

EXHIBIT "A"

BEGINNING AT THE INTERSECTION OF THE WEST LINE OF THE EAST ONE-HALF OF SECTION 17, TOWNSHIP 6 SOUTH, RANGE 5 WEST, SAN BERNARDINO BASE AND MERIDIAN, AND THE RIVERSIDE AND ORANGE COUNTY BOUNDARY LINE, AS PER F.B. 113, PAGE 114, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, THENCE NORTH 33° 22' EAST, ALONG SAID BOUNDARY LINE, A DISTANCE OF 1533.47 FEET, MORE OR LESS, TO TRUE POINT OF BEGINNING, BEING AT THE SOUTHEASTERLY CORNER OF LAND CONVEYED TO MARCEL AND MALVINA CRISTIN BY DEED ON FILE IN BOOK 2089 PAGE 99 OF OFFICIAL RECORDS; THENCE NORTH 0° 03' 19" WEST, TO A POINT ON THE NORTH LINE OF SAID EAST ONE-HALF OF SAID SECTION 17, BEING AT THE NORTHEAST CORNER OF SAID LAND CONVEYED TO SAID PARCEL AND MALVINA CRISTIN; THENCE SOUTH 88° 50' EAST, ALONG THE NORTH LINE OF SAID EAST ONE-HALF OF SAID SECTION 17, A DISTANCE OF 487.03 FEET; THENCE SOUTH 0° 03' 09" EAST, TO THE INTERSECTION WITH THE SAID RIVERSIDE AND ORANGE COUNTY BOUNDARY LINE; THENCE SOUTH 33° 22' WEST, ALONG SAID BOUNDARY LINE, A DISTANCE OF 884.03 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 9

RECORDING REQUESTED BY:
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
Recording requested by:
MORTGAGE ELECTRONIS REGISTRATION SYSTEMS, INC. (MERS)

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:

9.00

2010000564031 04:30pm 10/26/10

37 402 A32 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

BAC HOME LOANS SERVICING, LP (CWF)
400 NATIONAL WAY, MS SV-46
SIMI VALLEY, CA 93065

2 Bar Codes

10-03190
APN: 125-120-27
469382

610   171026378   D8   001   001

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE, FOR
THE CERTIFICATEHOLDERS CWALT, INC., ALTERNATIVE LOAN TRUST 2007-HY9
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-HY9

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 06/27/2007, EXECUTED BY:
BILLIE RENE POWERS AND LOUIS J. HANSON AND JACQUELINE M. HANSON, TRUSTOR: TO RECONTRUST
COMPANY, N.A., TRUSTEE AND RECORDED ON 07/02/2007 UNDER INSTRUMENT NO. 2007000417171, OF
OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF ORANGE COUNTY, IN THE STATE OF
CALIFORNIA. APN: 125-120-27

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST/~~MORTGAGE~~.

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO
BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED
OF TRUST/MORTGAGE.

DATED:   OCT 1 9 2010

MORTGAGE ELECTRONIS REGISTRATION SYSTEMS, INC.
(MERS)

State of:   California   )

County of:   Ventura   )

BY: _____

Nichole Clavadetscher
Certifying Officer

On   OCT 1 9 2010   before me, _____ Jon Secrist _____, notary public, personally appeared   Nichole Clavadetscher
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ California _____ that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JON SECRIST
Commission # 1893947
Notary Public - California
Ventura County
My Comm. Expires Jul 24, 2014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 10



**COMMON SENSE SURETY SINCE 1933**

*Claims Office*

November 29, 2012

Ms. Billie Powers
40701 Ortega Highway
Lake Elsinore, CA  92530

RE:   Jon Secrist
      Notary Bond No. CA1 138847
      Claim No. D595

Dear Ms. Powers:

We acknowledge receipt of your November 16, 2012 e-mail and attached documentation asserting a claim against the captioned notary. Please be advised that our office investigates claims pursuant to the California Fair Claims Settlement Practices Regulations (California Code of Regulations Title 10, Section 2695.1-2695.14), as applicable. In accordance with those Regulations, attached is a summary of the applicable benefits, coverage, time limits, statutes and regulations which may or may not affect the outcome of this claim, upon which Merchants will reply in processing this claim.



For your information, a notary and his/her bond may only be held liable for <u>actual</u> damages sustained as a result of official misconduct or negligence in the performance of notarial service while acting in the official capacity of a notary public. A notary cannot be held liable for damages if the alleged notarial misconduct and/or negligence did not result in a monetary loss to you nor can a notary be held liable for damages if the alleged damages stemmed from any reason other than official misconduct or negligence in the performance of notarial duties. In other words, the notarization in question must be the proximate cause of the alleged damages in order for the notary bond to be held liable. For example, IF your alleged damages were caused by your failure to pay the loan you procured, even if the notarization in question was somehow technically deficient, there would be no right of recovery on the notary bond. Another example would be IF you were to prove that you were mislead regarding the loan you procured, even if the notarization in question was somehow technically deficient, there would be no right of recovery on the notary bond..

As you may know, the main duty of the notary is to verify the identity of the signer of the document in question. When the validity of the signature is not in dispute, the purpose of the notarization is served and no damages can be proximately caused by any technical violation of the notary statute.  <u>In this connection, please provide me with documentation to support that the signature of Nicole Clavendetschen as it appears on the document in question, is not her genuine signature.</u>



As I indicated above, a notary and his/her bond may be held liable for actual damages sustained as a result of official misconduct or negligence in the performance of notarial service. In this connection, enclosed is our Proof of Claim form which needs to be completed and returned to me, together with document to support the <u>actual</u> amount of damages you are claiming as a result of the alleged notarial misconduct.

Direct line: (623) 444-6958 -- E-Mail:  kmcpart@merchantsbonding.com -- Fax: (515) 243-3854

Merchants Bonding Company (Mutual), Merchants National Bonding, Inc. and affiliated companies.
2100 Fleur Drive, Des Moines, IA 50321 1-800-678-8171 www.merchantsbonding.com

Ms. Billie Powers
November 29, 2012
Page 2

The notarized document that you provided is a form called Corporate Assignment of Deed of Trust.  Based on our review of the information you provided, it appears that the bank is apparently alleging that you became delinquent on your mortgage loan making it necessary for the bank to take foreclosure action on its security. In this connection, please provide me with a copy of your loan agreement with the bank and all correspondence you have had with the bank regarding the loan. In addition, if any legal proceedings have been commenced regarding the loan, either by you or the bank, please provide me with all pleadings filed in such legal proceedings.

Upon receipt of all of the requested information/documentation, we will be in a better position to proceed with our investigation of your claim.   In the meantime, if you have any questions, please do not hesitate to contact me. Otherwise, I look forward to receiving the requested information/documentation at your earliest convenience.

Merchants reserves all rights, defenses and remedies that may be available to our Principal and/or Merchants Bonding Company under the bond, any and all applicable law and equity, excluding, but not limited to, any applicable suit limitation period.  Nothing herein shall be construed as an admission of liability on the part of Merchants or our Principal.

Very truly yours,

Kim McPartland
Claims Examiner

Enclosures



**MERCHANTS**
BONDING COMPANY

*Claims Department*

## California Fair Claims Settlement Practices Regulations

Pursuant to Subchapter 7.5 of the California Code of Regulations, known as the California Fair Claims Settlement Practices Regulations, Merchants has adopted and implemented reasonable standards and guidelines aimed at ensuring a prompt and expedient investigation and, if appropriate, processing of your bond claim. This summary will serve to advise you of the applicable benefits, coverage, time limits, statutes and regulations which may or may not affect the outcome of your claim and upon which Merchants Bonding Company will rely in processing your claim.

### TIME LIMITS FOR CLAIM PROCESSING

In accordance with the California Code of Regulations sections 2695.10(b) and (c), and to the extent it has adequate information, Merchants Bonding Company will respond to your claim within 40 calendar days after receiving your claim documentation. To that end, Merchants Bonding Company will either (1) accept or reject your claim, in whole or in part, and either affirm or deny liability or (2) inform you that Merchants is unable to make a determination regarding the validity of your claim. If the latter scenario applies, Merchants will notify you with the reasons for the inability to make a determination regarding your claim within the initial 40-day time period. If Merchants cannot accept or deny your claim within the 40-day time period, it can have additional 30-day increments to continue its investigation, or if the determination cannot be made until some event, process, or third party determination is made, then Merchants Bonding Company shall comply with this requirement by advising you of the situation and provide an estimate as to when the determination can be made.

### THE NOTARY PUBLIC BOND

A     COVERAGES AND BENEFITS UNDER THE BOND

The penal sum of the notary bond is $15,000.00. The Bond language, the law of suretyship, set forth in California Civil Code section 2787 through 2856, the law of notaries public, set forth in California Government Code sections 8200 through 8230, the law of bonds and undertakings set forth in California Code of Civil Procedure section 995.010 through 996.560, and with the judicial decisions interpreting them, define the coverage and benefits under the Bond. Under California law, and under the Bond's terms, Merchants Bonding Company cannot be held liable beyond the express terms of its obligations. Therefore, Merchants' liability for breaches of the condition of the bond cannot exceed $15,000.00.

*2100 Fleur Drive*
*Des Moines, IA  50321*

Summary
Page two


Please be advised that certain actions may exonerate Merchants Bonding Company's obligations. California Civil Code section 2819 provides:

> A surety is exonerated, except so far as he or she may be indemnified by the Principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.


B.    APPLICABLE STATUTE OF LIMTIATIONS

California Code of Civil Procedure section 338 is the statute of limitations applicable to claims on California Notary Public Bonds.


C.    REVIEW BY CALIFORNIA DEPARTMENT OF INSURANCE

In accordance with Section 2695.10(B) of the CA Code of Regulations, claimants are entitled to have claim matters reviewed by the California Department of Insurance, Claims Services Bureau. Their address is 300 S. Spring Street, 11th Floor, Los Angeles CA 90013; telephone #1-800-927-4357


*******************************************************************************************

All prior or subsequent communications are not, nor should you construe them as, a waiver of Merchants Bonding Company's rights and/or defenses with respect to the claim asserted. Furthermore, this communication and all prior or subsequent communications are not, nor should you construe them as an admission of liability by Merchants Bonding Company. The foregoing is merely Merchants Bonding Company's attempt to inform you of the benefits, coverage, time limits and other provisions of the Bond and the pertinent statutes and regulations that Merchants may rely upon to process the claim asserted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 11



**MERCHANTS BONDING COMPANY.**

2100 FLEUR DRIVE
DES MOINES, IA 50321-1158
(515) 243-8171
FAX (515) 243-3854

## PROOF OF CLAIM - NON-CONSTRUCTION

The filing of this form does not constitute acceptance of the claim or waiver of any defenses by Merchants Bonding Company (Mutual).

State of _California_

County of _ORANGE_

The undersigned, being duly sworn, deposes and says: I _BILLIE POWERS_ (print name) hold the position shown below, and in such position I am familiar with the books and business of the claimant and am authorized to make this affidavit. The facts set out below are true.

**ALL ITEMS BELOW MUST BE LEGIBLY COMPLETED, IF NONE, OR NOT APPLICABLE, SO STATE.**

| Name and Address of Claimant (include phone & fax) | Name and Address of Surety's Principal on Bond |
|---|---|
| BILLIE POWERS<br>40 701 Ortega Hwy.<br>San Juan Capistrano Ca. 92675<br>949·648·3655  mail LAKE Elsinore, Ca 92530 | Jon Secrist<br>unknown |

| Legal Status of Claimant | Surety's Bond Number |
|---|---|
| ☐ Corporation  ☐ Partnership  ☑ Individual | CAI 138847 |

**Description of Claim**

Jon Secrist NOTARIZED a forgery of a corporate assignment of DEED of TRUST- with a Robo Signer Signature. that was a Second Such document filed during a foreclosure period. THE DOCUMENT was Recorded illegally creating damages to me

**Computation of Claim**

Signer were many Company we are trying to SII notices to FBI and authorities too.

| Previous Notice Given | | |
|---|---|---|
| To | Date | How |
| Surety | | |
| Principal | | • |

| Has this claim been assigned by claimant? | If Yes, To Whom (including address & phone) |
|---|---|
| ☐ YES  ☐ NO | |

| Liens or Encumbrances on claim filed by claimant? | If Yes, Date Filed |
|---|---|
| ☐ YES  ☐ NO | |

**Other relevant information.**

I know that The U.S. VS Bank of America Lawsuit Records this very issue as Criminal and in SUSSEX County Ma. The Recorders office has been willing an illegally filed documents like this. Documents included already sent for proof also emails.

A copy of each document which you feel is relevant to the claim is attached and made a part of this affidavit.
A copy of each written notice alleged to have been given is attached and made a part of this affidavit.
THIS AFFIDAVIT IS MADE TO INDUCE MERCHANTS BONDING COMPANY (MUTUAL) AS SURETY, ON THE ABOVE BOND, TO SETTLE THE CLAIM HEREIN SET FORTH.

_(Signature of Person making affidavit)_

Self- Homeowner
_(Title or Position)_

Signed and sworn to before me on _12/6_ ,20 _12_ , said subscriber being known to me and known by me to be the person described in the above instrument.

_Notary Public_

SUP 0116 (1/12)

VICKIE HUNT
Commission # 1944232
Notary Public - California
Orange County

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 12

MERCHANTS BONDING COMPANY (MUTUAL)
2100 FLEUR DRIVE
DES MOINES, IA 50321

Red Wing, MN
75-46/919

February 27, 2013

PAY TO THE
ORDER OF  Billie Powers

$ 15,000.00

Fifteen Thousand Dollars And No Cents _____ DOLLARS

VOID AFTER 120 DAYS

IN PAYMENT OF  Settlement
MEMO  D595          Jon Secrist              0        50001       AUTHORIZED SIGNATURE

⑈030841⑈  ⑆091900465⑆:0120144712⑈

MERCHANTS BONDING COMPANY (MUTUAL)

030841

Billie Powers                                        15,000.00        2/27/2013

D595          Jon Secrist              0        50001
IN PAYMENT OF  Settlement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 13

Branch :O23,User :JARB    Order: 1736274    Title Officer: 16    Comment:    Station Id :RXLZ

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

12.00

* S R 0 0 0 6 5 3 6 7 ' 9 $ *

2014000078632 2:17 pm 02/28/14
276 402 S15 F13  2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording requested by:

When recorded mail to:

Quality Loan Service Corporation
2141 5th Avenue
San Diego, CA 92101
619-645-7711

TS No.: CA-13-548432-VF                                    Space above this line for recorders use
Order No.: 130074861-CA-VAI
APN. No.: 125-120-27
MERS MIN No.: 1001337-0002241128-7 MERS Telephone No. 1-888-679-6377

## Substitution of Trustee

WHEREAS, BILLIE RENE POWERS , AN UNMARRIED WOMAN, AND LOUIS J HANSON , AND JACQUELINE M HANSON , HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, RECONTRUST COMPANY, N.A. was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB. was the original Beneficiary under that certain Deed of Trust dated 6/27/2007 and recorded on 7/2/2007 as Instrument No. 2007000417171,    of Official Records of ORANGE County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust.

NOW THEREFORE, the undersigned hereby substitutes **QUALITY LOAN SERVICE CORPORATION** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

TS No.: **CA-13-548432-VF**
Page 2

Dated this ____12____ day of __Feb__ , __2014__

The Bank of New York Mellon, f/k/a The Bank of New York, as
trustee, on behalf of the holders of the Alternative Loan Trust
2007-HY9, Mortgage Pass-Through Certificates Series 2007-
HY9, by Select Portfolio Servicing, Inc. as Attorney in Fact

By: ____Jaime Gilson____   ~~Document Control Officer~~

Document Control Officer

State of: **Utah**)

County of: **Salt Lake**)

On this ____12____ day of __February__ , 20 __14__ , before me personally
appeared ____Jaime Gilson____ , proved on the basis of satisfactory evidence to be the
person whose name is subscribed to this instrument, and acknowledged that he executed the same.

Witness my hand and official seal.

Angela Melanie Atene
*Notary Public State of Utah*
My Commission Expires on:
August 23, 2017
Comm. Number: 669303

ORANGE,CA
Document: ST 2014.78632

Page 2 of 2

Printed on 2/12/2016 4:07:45 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 14

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 18.00
* $ R 0 0 0 6 9 9 ˜ 5 8 9 $ *
2014000390481 4:10 pm 09/25/14
105 409 N15 F13  4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

TS No.: CA-14-615928-HL
Order No.: 140052960-CA-API
APN No.: 125-120-27

Space above this line for Recorder's use

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code § 2923.3)

注：本文件包含 一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing
by paying all of your past due payments plus permitted costs and expenses within the time
permitted by law for reinstatement of your account, which is normally five business days prior to
the date set for the sale of your property. No sale date may be set until approximately 90 days
from the date this Notice of Default may be recorded (which date of recordation appears on this
notice). This amount is $356,429.14 as of 9/23/2014 and will increase until your account
becomes current.

While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make
future payments on the loan, pay taxes on the property, provide insurance on the property, or pay
other obligations as required in the note and deed of trust or mortgage, the beneficiary or
mortgagee may insist that you do so in order to reinstate your account in good standing. In
addition, the beneficiary or mortgagee may require as a condition of reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard
insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization
of the entire amount you must pay. You may not have to pay the entire unpaid portion of your
account, even though full payment was demanded, but you must pay all amounts in default at the

TS No.: **CA-14-615928-HL**

time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three-months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**The Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of the Alternative Loan Trust 2007-HY9, Mortgage Pass-Through Certificates Series 2007-HY9**
**C/O Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**
**619-645-7711**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

#1

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **6/27/2007**, executed by **BILLIE RENE POWERS , AN UNMARRIED WOMAN, AND LOUIS J HANSON , AND JACQUELINE M HANSON , HUSBAND AND WIFE AS JOINT TENANTS,** as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB.,** as beneficiary, recorded 7/2/2007, as Instrument No. **2007000417171,** of Official Records in the Office of the Recorder of **ORANGE** County, **California** describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of **$1,190,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The installments of principal and interest which became due on 11/1/2009, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security,**

TS No.: **CA-14-615928-HL**

**all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Pursuant to the attached Declaration, the mortgage servicer declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.55 or § 2923.5, or is otherwise exempt from the requirements of § 2923.55 and §2923.5.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated:    9/23/14

**Quality Loan Service Corp., Trustee**

By: Ellene Barnett, Assistant Secretary

## CALIFORNIA DECLARATION OF COMPLIANCE
### (CAL.CIV.CODE § 2923.55(c))

Loan Number: 0013002803

Borrower Name: BILLIE POWERS

Address: 40701 ORTEGA, LAKE ELSINORE, CA 92530

Beneficiary: The Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of the Alternative Loan Trust 2007-HY9, Mortgage Pass-Through Certificates Series 2007-HY9

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury that:

1) ☐ On _____ contact was made with the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2)

2) ☐ On _____ the due diligence efforts were satisfied. No contact was made with the borrower despite the due diligence of beneficiary or their authorized agent pursuant to California Civil Code § 2923.55(f).

3) ☐ The borrower has surrendered the secured property as evidenced by a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, their authorized agent or the trustee pursuant to California Civil Code §2920.5(c).

4) ☐ The beneficiary or their authorized agent has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case pursuant to California Civil Code §2920.5(c).

5) ☒ The provisions of California Civil Code §2923.55 do not apply because the property is not owner occupied as defined by California Civil Code §2924.15.

The undersigned instructs the trustee to proceed with non-judicial foreclosure proceedings and expressly authorizes the trustee or their authorized agent to sign the notice of default; containing the declaration re: contact required pursuant to California Civil Code §2923.5.

Dated: **APR 0 3 2013**

By: _____ Denise Weston, Document Control Officer

Select Portfolio Servicing, Inc. as authorized agent of Beneficiary

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 15

Branch :C23,User :9XRR          Order: 159527 Title Officer: 16  Comment:          Station Id :KALZ

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

|| || || 12.00

* $ R C 1 0 7 5 6 5 6 4 7 $ *

2015000499008 10:22 am 09/30/15

37 422 N34 F13   2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording requested by:
Quality Loan Service Corp.

When recorded mail to:
Quality Loan Service Corporation
411 Ivy Street
San Diego, CA 92101

TS No.  CA-14-615928-HL
Order No.: 140052960-CA-VOI

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 6/27/2007.  UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this
state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or
implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by
the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the
Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on
the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):      **BILLIE RENE  POWERS , AN UNMARRIED WOMAN, AND LOUIS J  HANSON ,
                 AND JACQUELINE M HANSON , HUSBAND AND WIFE AS JOINT TENANTS**
Recorded:        7/2/2007 as Instrument No. 2007000417171           of Official Records in the office of the
                 Recorder of ORANGE County, California;

Date of Sale:    **10/23/2015 at 1:30PM**
Place of Sale:   **At the North front entrance to the County Courthouse located at 700 Civic Center Drive
                 West, Santa Ana, CA 92701**
Amount of unpaid balance and other charges: **$1,719,511.24**
The purported property address is:       **40701 ORTEGA HIGHWAY, SAN JUAN CAPISTRANO, CA 92530**
Assessor's Parcel No.: **125-120-27**

TS No.: **CA-14-615928-HL**

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 916.939.0772 for information regarding the trustee's sale or visit this Internet Web site **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-14-615928-HL**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Date: 04/18/2015

**Quality Loan Service Corporation**
**411 Ivy Street**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 916.939.0772**
**Or Login to: http://www.qualityloan.com**
**Reinstatement Line: (866) 645-7711 Ext 5318**

Quality Loan Service Corp. by: Daisy Rios, as Authorized Agent

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 16

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

15.00

* S R 0 0 0 8 6 0 9 8 5 0 $ *

2016000386939 3:31 pm 08/16/16
47 NC-5 T09 F13  3
0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Recording requested by:

And when recorded mail to:

Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr.
Salt Lake City, UT 84119

Forward tax statements to the address given above

TS No.: CA-14-615928-HL
Order No.: 140052960-CA-VOI

Space above this line for recorders use

# Trustee's Deed Upon Sale

A.P.N.: 125-120-27

**Exempt pursuant to Cal Rev and Tax Code §11926**

This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title"

THE UNDERSIGNED GRANTOR DECLARES:

The Grantee Herein IS the Foreclosing Beneficiary

| | |
|---|---|
| The amount of the unpaid debt together with costs was: | $1,785,001.79 |
| The amount paid by the grantee at the trustee sale was: | $1,784,069.68 |
| The documentary transfer tax is: | NONE |

Said property is in the City of: **SAN JUAN CAPISTRANO**, County of **ORANGE**

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**The Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of the Alternative Loan Trust 2007-HY9, Mortgage Pass-Through Certificates Series 2007-HY9**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **ORANGE**, State of California, described as follows:

**BEGINNING AT THE INTERSECTION OF THE WEST LINE OF THE EAST ONE-HALF OF SECTION 17, TOWNSHIP 6 SOUTH, RANGE 5 WEST, SAN BERNARDINO BASE AND MERIDIAN, AND THE RIVERSIDE AND ORANGE COUNTY BOUNDARY LINE, AS PER F.B. 113, PAGE 114, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, THENCE NORTH 33 22' EAST, ALONG SAID BOUNDARY LINE, A DISTANCE OF 1533.47 FEET, MORE OR LESS, TO TRUE POINT OF BEGINNING, BEING AT THE SOUTHEASTERLY CORNER OF LAND CONVEYED TO MARCEL AND MALVINA CRISTIN BY DEED ON FILE IN BOOK 2089 PAGE 99 OF OFFICIAL RECORDS; THENCE NORTH 0 03' 19" WEST,**

TO A POINT ON THE NORTH LINE OF SAID EAST ONE-HALF OF SAID SECTION 17, BEING AT THE NORTHEAST CORNER OF SAID LAND CONVEYED TO SAID PARCEL AND MALVINA CRISTIN; THENCE SOUTH 88 50' EAST, ALONG THE NORTH LINE OF SAID EAST ONE-HALF OF SAID SECTION 17, A DISTANCE OF 487.03 FEET; THENCE SOUTH 0 03' 09" EAST, TO THE INTERSECTION WITH THE SAID RIVERSIDE AND ORANGE COUNTY BOUNDARY LINE; THENCE SOUTH 33 22' WEST, ALONG SAID BOUNDARY LINE, A DISTANCE OF 884.03 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **BILLIE RENE POWERS , AN UNMARRIED WOMAN, AND LOUIS J HANSON , AND JACQUELINE M HANSON , HUSBAND AND WIFE AS JOINT TENANTS**, as trustor, dated 6/27/2007, and recorded on **7/2/2007** as instrument number **2007000417171**      of Official Records in the office of the Recorder of **ORANGE**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on **9/25/2014**, instrument no **2014000390481**, Book xx, Page xx, of Official records. The Trustee of record at the relevant time having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **8/8/2016** at the place named in the Notice of Sale, in the County of **ORANGE,** California, in which the property is situated. The foreclosing beneficiary, being the higgest at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$1,784,069.68** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust and instructed said trustee to vest this Trustee's Deed Upon Sale to said Grantee.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.: CA-14-615928-HL

Date: 8|15|2016

**QUALITY LOAN SERVICE CORPORATION**

By: Nicole Fuentes, Assistant Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: **California)**

County of: **San Diego)**

On ___ AUG 1 5 2016 ___ before me, **Brenda A. Gonzalez** _____ a notary public, personally appeared, _Nicole Fuentes_____ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          **(Seal)**

Signature          **Brenda A. Gonzalez**

BRENDA A. GONZALEZ
Commission No. 2116627
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
Commission Expires June 21, 2019

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 17



01 100055173

TS No. 10-0055173

**Property Address:**
40701 ORTEGA HIGHWAY
SAN JUAN CAPISTRANO, CA 92530

May 04, 2010

## Debt Validation Notice

**RECONTRUST COMPANY, N.A., acting in its capacity as agent for the beneficiary, is required by law to advise you of the following:**

**RECONTRUST COMPANY, N.A. may be a debt collector attempting to collect a debt and any information it obtains will be used for that purpose.**

### PURSUANT TO 15 USC 1692(G):

(a.) As of the date of this letter, you owe $1,366,003.88. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (800) 281-8219.

(b.) The name of the Creditor to whom the debt is owed:  BAC Home Loans Servicing, LP

(c.) Unless you, within (30) days after the receipt of this letter, dispute the validity of the debt or any portion of the debt, RECONTRUST COMPANY, N.A. will assume the amount to be valid.

(d.) If you notify RECONTRUST COMPANY, N.A. in writing, to the address provided below within the thirty (30) day period, that you dispute the debt, or any portion of the debt, RECONTRUST COMPANY,  N.A. will obtain verification of the debt or a copy of a judgment against you and mail a copy of such verification or judgment to you.

(e.) If you so request in writing to RECONTRUST COMPANY, N.A.'s address provided below within the thirty (30) day period, RECONTRUST COMPANY, N.A. will provide you with the name and address of the original creditor, if it is different from the current creditor:

**RECONTRUST COMPANY**
**Attn: Debt Validation**
**2380 Performance Dr., TX2-985-07-03**
**Richardson, TX 75082**

*Form capayoffam.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 18

LANDSAFE TITLE

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||||||||||| **18.00**

**2010000213610 08:00am 05/06/10**

66 406 N15 4

0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: T. Sevillano
TS No. 10-0055173
Title Order No. 10-8-223463

Recording Requested By: DPS
On Behalf Of "LS-SV,

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $42,112.31, as of 05/04/2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

TS No. 10-0055173

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE, FOR THE CERTIFICATEHOLDERS CWALT, INC., ALTERNATIVE LOAN TRUST 2007-HY9 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-HY9
C/O BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 06/27/2007, executed by BILLIE RENE POWERS, AN UNMARRIED WOMAN, AND LOUIS J HANSON, AND JACQUELINE M HANSON, HUSBAND AND WIFE AS JOINT TENANTS as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 07/02/2007, as Instrument No. 2007000417171 (or Book , Page ) of Official Records in the Office of the County Recorder of Orange County, California.

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 1,190,000.00. That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 11/01/2009 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES. IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON 07/01/2037 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 10-0055173

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: May 04, 2010

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

By _____

BETTY JO LIVINGSTON

*Form dotnodfax (12/09)*



**Bank of America**
**Home Loans**

**Notice Date:** April 15, 2010

TS# 10-0055173

Billie Rene Powers & Louis J Hanson
40701 Ortega Hwy
Lake Elsinore, CA 92530

**Property Address:**
40701 Ortega Highway
San Juan Capistrano, CA 92530

## CALIFORNIA DECLARATION

I, ANNETTE SIMMONS , MLO-Loan Svcs Specialist of BAC Home Loans Servicing, LP, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America Home Loans

☒ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☐ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because

4/15/10            Fort Worth, TX
Date and Place

T.A. Simmons .
Name of Signor

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

CA-DECLARATIONS 8638/9508 08/27/2008