1    RICHARD W. SNYDER, ESQ.
     California State Bar # 183570
2    131 N. Tustin Ave., Ste. 200
     Tustin, CA 92780
3    Tel. (714)730-0288
     Fax (714)505-7588
4
     Attorney for Plaintiff
5    Billie Rene Francis Lillian Powers

6
                    UNITED STATE DISTRICT COURT
7
                 CENTRAL DISTRICT OF CALIFORNIA
8
                        SOUTHERN DIVISION
9

10   Billie Rene' Francis Lillian Powers,        ) Cause No.: SACV17-01386-DOC-KES
                                                  )
11                         Plaintiff,             ) PLAINTIFF'S SECOND AMENDED
                                                  ) COMPLAINT
12                                                )
                                                  )
13   vs.                                          )
                                                  )
14                                                )
     BANK OF AMERICA, N.A.; THE BANK OF           )
15   NEW YORK MELLON F/K/A THE BANK               )
     OF NEW YORK, AS TRUSTEE, FOR THE             )
16   CERTIFICATE HOLDERS CWALT, INC.              )
     ALTERNATIVE LOAN TRUST 2007-HY9              )
17   MORTGAGE PASS-THROUGH                        )
     CERTIFICATES, SERIES 2007-HY9; and           )
18   ROGER LEE DELONG,                            )
                                                  )
19                                                )
                          Defendants.             )
20                                                )
                                                  )
21                                                )
                                                  )
22                                                )
                                                  )
23                                                )
                                                  )
24   ─────────────────────────────────

25

26

27                                                             .

28

                                    -1-

## PARTIES AND SERVICE

1.       Plaintiff is a natural person and was and is the owner of the of the real property located in San Juan Capistrano unincorporated, County of Orange, State of California, bearing assessor parcel number 125-120-27 (the "Property") and formerly known as 40701 Ortega Highway, San Juan Capistrano, CA 92530.  Plaintiff is a resident of the County of Orange, State of California.

2.       Roger Lee Delong ("Delong") is a natural person and was the former owner of the Property who sold the Property to Plaintiff.  Delong is a resident of Nevada County, State of California.

3.       Countrywide Bank, FSB ("Countrywide") was a Federal Savings Bank established on August 30, 1990.  Countrywide merged with or was acquired by Bank of America, National Association ("BOA") on or about April 27, 2009.

4.       BOA is a National Association with its headquarters located at 100 North Tyron St., Charlotte, NC 28202.

5.       The Bank of New Your Mellon fka The Bank of New York ("BONY") is a New York corporation registered to business in the State of California and is a member of the Federal Reserve System.

6.       Alternative Loan trust 2007-HY9 (the "REMIC Trust") is a common law trust formed under the laws of the State of New York.  The REMIC Trust is a Real Estate Mortgage Investment Conduit which is an entity that holds a fixed pool of mortgages and issues ownership certificates to investors.  The Trust is regulated by the Securities and Exchange Commission.  BONY is the Trustee of the Trust.  Countrywide Home Loans Servicing, LP ("CHLS") was the Master Servicer of the REMIC Trust and was a wholly owned subsidiary of Countrywide.  Subsequent to the merger with or acquisition of Countrywide by BOA, CHLS changed its name to BAC Home Loans Servicing, LP ("BAC").  Some time after the merger, BOA merged with BAC rendering BOA the Master Servicer of the REMIC Trust.

## JURISDICTION AND VENUE

7.     The United States District Court for the Central District of California (Southern Division) (this "Court") has original subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 due to the diversity of citizenship respecting causes of action where Plaintiff is the plaintiff and BOA and/or BONY are the defendant(s).  The matter in controversy is greater than $75,000.00

8.     This Court has Original Jurisdiction over this lawsuit because this action, is based upon federal questions and violations.

9.     The Plaintiff further avers that this Court possesses Supplemental Jurisdiction over pendant State of California claims in accordance and pursuant to Article III of the United States Constitution, which is further reinforced and supported by the enactment 19 U.S.C. § 1331.

10.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) and/or (b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

## FACTUAL ALLEGATIONS

11.     On or before April 13, 2007, Plaintiff began the process of purchasing the Property from Delong for the purchase price of $1,700,000.00.

12.     On or about April 13, 2007, the parties to the transaction opened an escrow with West Coast Escrow.

13.     In order to complete the purchase transaction, Plaintiff sought loans from Countrywide.

14.     On or about April 13, 2007, Plaintiff executed a Residential Purchase Agreement and Joint Escrow Instructions respecting her intended purchase of the Property from Delong.

15.     At the time she executed the Residential Purchase Agreement and Joint Escrow Instructions, Plaintiff was the only purchaser.

16.     On or about April 17, 2007, a document titled "Additional Escrow Instructions" was executed.  The instructions indicated that title was to be vested in Plaintiff solely.

17.     On April 26, 2007, Delong executed a Grant Deed naming Plaintiff as the sole grantee and deposited the Grant Deed into escrow.

18.     On or about May 15, 2007, an addendum to the Residential Purchase Agreement was prepared reconfirming the fact that Plaintiff was the sole buyer.

19.     On May 29, 2007, the Plaintiff received 2 documents each titled "Escrow Modification". Each of said documents identified the Plaintiff as the sole buyer.

20.     Sometime between June 1, 2007 and June 15, 2007, the Plaintiff was advised by Countrywide that she no longer qualified for the prospective loans and that she needed to have a co-signor.  At that time, over 1 month after the Grant Deed was executed and notarized, the Plaintiff's sister and brother-in-law Louis J. Hanson and Jacqueline M. Hanson agreed to co-sign.

21.     Sometime after Delong executed it but before July 2, 2007, someone materially altered the Grant Deed by removing Plaintiff's name and typing onto the document the names Billie Rene Powers, Louise J. Hanson and Jacqueline M. Hanson (Louise is a mis-spelling of Louis).

22.     On or about June 27, 2007, Plaintiff, Louis J. Hanson and Jacqueline M. Hanson each executed a promissory note (the "Note") in the sum of $1,190,000.00 and each executed a Deed of Trust (the "DOT") purporting to secure the Note with the Property.  Louis J. Hanson's and Jacqueline M. Hanson's signatures were executed by Plaintiff pursuant to 2 powers of attorney. Countrywide was the lender on the Note and was defined as the lender on the deed of trust.

23.     On or about July 2, 2007, the escrow was closed and the materially altered Grant Deed and the Deed of Trust were each recorded[1] with the County Recorder for the County of Orange, State of California.

24.     On or about July 2, 2007, Plaintiff took possession of the Property.   At all times between July 2, 2007 and September 20, 2017, Plaintiff occupied the Property as her principal residence.

25.     Subsequent to January 1, 2010, the Plaintiff has made no payments on the Note to anyone and has not provided any written acknowledged of any debt on the Note to BOA or to BONY.

---

[1] All references to a document being "recorded" refer to being recorded in the office of the County Recorder for the County of Orange, State of California unless expressed or implied otherwise.

PLAINTIFF'S SECOND AMENDED COMPLAINT

26.    On or about May 4, 2010, BAC sent the Plaintiff a letter demanding what it determined to be the balance due on the Note.  On May 6, 2010, BAC recorded a Notice of Default wherein it declared the acceleration of the balance due on the Note.  The acceleration of the balance due commenced the six year statute of limitations prescribed by Cal. Comm. Code § 3118(a).

27.    On or about October 26, 2010, a document titled "Corporate Assignment of Deed of Trust" ("Assignment of DOT") was recorded purporting to assign the DOT to BONY, as Trustee, for the certificate holders of the REMIC Trust.  The REMIC Trust is governed by a Pooling and Servicing agreement which provides that if the a borrower fails to make a monthly payment, the Master Servicer is obligated to make months payments to the REMIC Trust.  The Assignment of DOT was purportedly signed by Nichole Clavadetscher in her capacity as a Certifying Officer of Mers.

28.    On October 13, 2013, a Notice of Default, claiming to be a Notice of Default on the DOT was recorded.   The Notice of Default was recorded by Quality who at that time was not the successor trustee of the DOT and as such had no authority to record such a document. Additionally Quality had no authority to record such a document because the DOT was void. The notice falsely claimed that the sum necessary to reinstate the loan was $296,356.74 as of October 30, 2013.

29.    On December 6, 2013, a Notice of Default, claiming to be a Notice of Default on the DOT was recorded.   The Notice of Default was recorded by Quality who at that time was not the successor trustee of the DOT and as such had no authority to record such a document. Additionally Quality had no authority to record such a document because the DOT was void. The notice falsely claimed that the sum necessary to reinstate the loan was $304,305.74 as of October 30, 2013.

30.    On February 28, 2014, a Substitution of Trustee, purporting to substitute Quality Loan Service Corporation ("Quality") as a successor trustee to the DOT Trustee was recorded.

31.    On September 25, 2014, a Notice of Default, claiming to be a Notice of Default on the DOT was recorded.   The Notice of Default was recorded by Quality who had no authority to record such a document. The notice falsely claimed that the sum necessary to reinstate the loan

was $356,429.14 as of September 23, 2014.  In addition, the Notice of Default, falsely states under penalty of perjury that "the provisions of California Civil Code §2923.55 do not apply because the property is not owner occupied as defined by California Civil Code §2924.15."

32.     On September 30, 2015, a Notice of Trustee's Sale, claiming to be a sale under the power of sale contained in the DOT, was recorded.

33.     On August 8, 2016, more than six years after the acceleration of the debt, a trustee sale was conducted.

34.     On August 15, 2016, Quality executed a Trustee's Deed Upon Sale and on August 16, 2016 the Trustee's Deed Upon Sale was recorded.  Therein, the document falsely states that the foreclosing beneficiary was the highest bidder at the foreclosure sale.  The document purports to convey the Property to BONY, as Trustee, for the certificate holders of the REMIC Trust.

35.     Subsequent to the August 15, 2016 purported foreclosure sale, BONY, as Trustee, for the certificate holders of the REMIC Trust conducted an unlawful detainer lawsuit against Plaintiff.  BONY was able to obtain an unlawful detainer judgment against Plaintiff and a writ of execution.  BONY then employed the writ of execution to cause the eviction of Plaintiff from the Property.

## FIRST CAUSE OF ACTION
## ADVERSE POSSESSION
### (against Delong)

36.     Plaintiff incorporates by reference as though set forth in full herein each and every allegation in paragraphs 1 through 35, inclusive.

37.     During the period of July 2, 2007 through September 20, 2017, Plaintiff's actually possessed the Property which she maintained as her sole residence.  Plaintiff's occupation of the Property was hostile to any claim of Delong.  Plaintiff's possession of the Property was open and notorious as well as exclusive and continuous.

## SECOND CAUSE OF ACTION

## CANCELLATION OF INSTRUMENTS

(against BOA and BONY)

38.     Plaintiff hereby repeats, reiterates and re-alleges all that is set forth in the foregoing paragraphs 1 through 37, inclusive as though each such paragraph were herein set forth and reiterated, in full, by this reference.

39.     On April 26, 2007 Seller executed the Grant Deed granting a fee simple interest in the Property to Plaintiff and delivered the Grant Deed to West Coast Escrow.  Sometime between April 26, 2007 and July 2, 2007, the Grant Deed was materially altered by the removal of Plaintiff as the sole grantee and the insertion of the Plaintiff's name and the names of Louise J. Hanson and Jacqueline M. Hanson.  The insertion of the names of Louise J. Hanson and Jacqueline M. Hanson as grantees, constitutes a material alteration of the Grant Deed.  The post notarization material alteration of the Grant Deed rendered the Grant Deed a forgery and as such it was and is now void.  The Fraud Grant Deed could not and did not convey anything to the Plaintiff and cannot and did not provide the foundation of a good title to the Plaintiff.

40.     On June 27, 2007, the Plaintiff executed the DOT on her own behalf and on behalf of Louis J. Hanson and Jacqueline M. Hanson pursuant to 2 powers of attorney.  When Plaintiff executed the DOT and purported to convey the Property to the DOT Trustee for the benefit of Mers as nominee for Lender, Plaintiff had no interest in the Property to convey, thus rendering the purported conveyance void.

41.     Because the DOT was void, the Assignment of DOT transferred no interest in the DOT to BONY, as Trustee, for the certificate holders of the REMIC Trust and as such the Assignment of DOT is void.  Additionally, as a result of the Assignment of DOT bearing the forged signature of Nichole Clavadetscher, the Assignment of DOT is void.

42.     Because the DOT and the Assignment of DOT are each void, the Substitution of Trustee recorded February 28, 2014, purporting to substitute Quality as a successor trustee of the DOT was void.

43.      Because the DOT, the Assignment of DOT, and the Substitution of Trustee are each void, the Notice of Default recorded by Quality on September 25, 2014 is void.

44.      Because the DOT, the Assignment of DOT, the Substitution of Trustee, and the Notice of Default recorded by Quality on September 25, 2014 are each void, the Notice of Trustee's Sale recorded by Quality is void.

45.      Because the DOT, the Assignment of DOT, the Substitution of Trustee, the Notice of Default recorded by Quality on September 25, 2014, and the Notice of Trustee's Sale recorded by Quality are each void, Quality lacked the authority to issue the Trustee's Deed Upon Sale rendering it void.

46.      As a result the DOT, the Assignment of DOT, the Substitution of Trustee, the Notice of Default recorded by Quality on September 25, 2014, the Notice of Trustee's Sale recorded by Quality and the Trustee's Deed Upon Sale are void.

47.      Plaintiff is entitled to relief by a judgment pursuant to California Civil Code §§ 3412, et seq., declaring that the DOT, the Assignment of DOT, the Substitution of Trustee, the Notice of Default recorded by Quality on September 25, 2014, the Notice of Trustee's Sale recorded by Quality and the Trustee's Deed Upon are all void and commanding the County Recorder of Orange County, California, to expunge the said documents and each of them, in the Official Records of the Office of the County Recorder of the County of Orange, State of California.

### THIRD CAUSE OF ACTION
### WRONGFUL FORECLOSURE
(against BOA and BONY)

48.      Plaintiff hereby repeats, reiterates and re-alleges all that is set forth in the foregoing paragraphs 1 through 47 as though each such paragraph were herein set forth and reiterated, in full, by this reference.

49.      As a result of the DOT, the Assignment of DOT, the Substitution of Trustee, the Notice of Default recorded by Quality on September 25, 2014, and the Notice of Trustee's Sale

recorded by Quality being void, the foreclosure sale was void and as such the foreclosure sale was wrongful.

50.     BOA and BONY, and each of them, knew the Grant Deed was forged at the time Quality conducted the void non-judicial foreclosure sale.  Having knowledge that the Grant Deed was forged and that therefore the DOT was likewise void, and proceeding to enforce the void instruments knowing they had no legally enforceable debt or security interest in the Property constitutes the tort of wrongful foreclosure.

51.     Notwithstanding the foregoing, the Trustee's sale was wrongful because it was performed after the expiration of the applicable statute of limitations.  Both BOA and BONY had knowledge that the applicable statute of limitations had expired and that enforcement of the Note was time barred.  Both BOA and BONY knew that their actions in conducting a foreclosure of the Note and DOT at a time when the Note was unenforceable constitutes the tort of wrongful foreclosure.

52.     Notwithstanding the foregoing, pursuant to the Prospectus Supplement to the Prospectus dated July 27, 2007 governing the REMIC Trust, the Master Servicer (BOA after 04/27/2009) was obligated to advance to BONY, as Trustee, for the certificate holders of the REMIC Trust, from its own funds "an amount equal to: the aggregate of payments of principal and interest on the Mortgage Loans (net of Master Servicing Fee) that were due on the related Due Date and that were delinquent on the related Determination Date, and an amount equivalent to interest (net of the Master Servicing Fee) on each Mortgage Loans as to which the related mortgaged Property has been acquired by the issuing entity through foreclosure or deed-in-lieu of foreclosure (net of any income on the property."

53.     As a result of the Master Servicer's performance of its payment obligations under the Prospectus Supplement, the balance due BONY under the Note remained substantially current. Both BOA and BONY knew that the monthly payments were being made by the Master Servicer pursuant to the Prospectus Supplement.  Such remittances made by the Master Service were unsolicited by Plaintiff who had no knowledge of the payments and made no promise to repay the advances.

54.     In order to conceal the payments from Plaintiff, BONY effectively kept two sets of books.  The first accounting reflected the balance due on the Note without acknowledgment of the said secret payments made by the Master Servicer.  This accounting was communicated to Plaintiff via the Notice of Default and the Notice of Trustee's Sale in order to deceive Plaintiff into believing that there was a substantial arrearage and to keep up the pretense that the Note was in foreclosure when in fact it was not.  The deception also allowed the Master Servicer to recover its contracted for losses in the event Plaintiff refinanced the property and paid more than the sum otherwise due on the Note.  The second accounting reflected the balance due on the Note with the secret payments applied.  This allowed BONY to provide the certificate holders with a fixed rate of return while passing the risk of loss to the servicing entity who offset the loss with its substantial servicing fee.

55.     As a direct and proximate result of the actions constituting wrongful foreclosure, Plaintiff has suffered actual compensatory damages in the sum according to proof but not less than $2,000,000.00 for the loss of the Property and the personal property the contents thereof, as well as reasonably foreseeable consequential damages in a sum according to proof such as the costs associated with the diminished credit rating resulting from foreclosure and the costs of relocating.  In addition, Plaintiff has suffered severe emotional distress in a sum according to proof but not less that $5,000,000.00 arising from the stress, strains, distress and feelings of hopelessness of having her $2,000,000.00 home non-judicially foreclosed by an entity that had no ownership interest in the home but who wanted to effectively steal her home by being a substantially better financed adversary, as well as  the damages associated with being forcibly evicted from her home with no where to go and no ability to transport and store her valuables, keepsakes, and family heirlooms, resulting in her having to abandon those possessions she could not carry.  Lastly, Plaintiff has suffered the costs of litigation in defending herself from this litigation as well as the unlawful retainer litigation in a sum according to proof.  In addition, Plaintiff asks the court to award her punitive damages in the sum of 9 times the amount of compensatory damages as allowed by the United States Supreme Court in the case of State Farm Mutual Automobile Ins. Co. v. Campbell, 123 S. Ct. 1513 (2003).

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

**On the Plaintiff's first cause of action for Adverse Possession**

1.  For judgment that plaintiff is the fee simple owner of all right, title, and interest in and to the described real property;

2.  For judgment that defendants do not have any right, title, estate, or interest in or lien on the described real property;

3.  For such further relief as the court may deem proper.

**On the Plaintiff's Second Cause of Action for Cancellation of Instruments**

1.  For an order canceling the DOT, the Assignment of DOT, the Substitution of Trustee, the Notice of Default recorded by Quality on September 25, 2014, the Notice of Trustee's Sale recorded by Quality and the Trustee's Deed Upon Sale, and expunging the said documents form the records of the County Recorder for the County of Los Angeles, State of California

2.  For costs of suit.

3.  For such additional and further relief as the Court may deem to be just, reasonable, and proper in the circumstances.

**On the Plaintiff's Third Cause of Action for Wrongful Foreclosure**

1.  For a judgment for Actual damages in a sum according to proof but not less than $7,000,000.00.

2.  For punitive damages in the sum of $63,000,000.00.

3.  For costs of suit.

4.  For reasonable attorney's fees.

5.  For such additional and further relief as the Court may deem to be just, reasonable, and proper in the circumstances.

Dated:  December 14, 2017          By _____
                                        Richard W. Snyder, Esq.
                                        Attorney for the Plaintiff
                                        Billie Rene' Francis Lillian Powers

-11-

PLAINTIFF'S SECOND AMENDED COMPLAINT