## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On March 5, 2018, the Court issued an Order (the "March 5th Order") dismissing Plaintiff's Second Amended Complaint ("SAC") causes of action asserted against BANA for "cancellation of instruments" and "wrongful foreclosure." (See, ECF No. 67.) The Court warned Plaintiff it would "give Plaintiff one last chance" to amend these two causes of action, and that failure to do so **will result in dismissal of Plaintiff's claims <u>with prejudice</u>**." (*emphasis in original*) (ECF No. 67, at p. 2.) claims. Rather than utilizing this opportunity, the Third Amended Complaint ("TAC") asserts sixteen new causes of action, *none* of which were pled in her SAC. Plaintiff neither obtained BANA's written consent, nor leave from the Court, to add these claims. As a result, Plaintiff's addition of these claims directly violates Federal Rule of Civil Procedure 15(a)(2), and renders them subject to dismissal on this basis alone.

Each of Plaintiff's improperly added causes of action are subject to dismissal on other grounds as well. Because the TAC explicitly admits BANA has not been involved with either the subject loan or deed of trust since April 2012, all of Plaintiff's claims against it are barred by the applicable statutes of limitations. Her actions are additionally based upon legal theories she lacks standing to assert, and/or which lack any valid legal basis. And, even accepting Plaintiff's various conclusory assertions as true for purposes of this motion, she is legally unable to establish her claimed injuries arose from the alleged improprieties surrounding the assignment of the subject deed of trust, since these "assignment[s] merely substituted one creditor for another, without changing [Plaintiff's] obligations under the note." *Kalnoki v. First Am. Trustee Serv. Solutions, LLC*, 8 Cal.App.5th 23, 48 (2017).

In light of Plaintiff's repeated failure to cure the fatal defects plaguing her causes of action against BANA—despite the Court's explicit warnings this would be her "last chance" to do so—each of Plaintiff's improperly added claims asserted against it should be once again dismissed; this time *with* prejudice.

## II.  STATEMENT OF THE RELEVANT FACTS

**A.    BANA's Involvement With The Loan & Deed Of Trust (2007-2012)**

Plaintiff purchased the real property located at 40701 Ortega Highway, San Juan Capistrano, CA 92530 (the "Property") from Defendant Roger Lee Delong ("Delong") for $1,700,000 in 2007. (TAC, ¶16.) To purchase the Property, Plaintiff obtained a $1,190,000 loan ("Loan") from Countrywide Bank, FSB ("Countrywide"), secured by a Deed of Trust ("DOT") recorded against the Property on July 2, 2007. (TAC, ¶21, Ex. B.) The beneficiary listed in the DOT was Mortgage Electronic Registration Systems, Inc. ("MERS"), and the trustee was ReconTrust Company, N.A. ("ReconTrust"). (TAC, Ex. B.) Because Plaintiff did not independently qualify for this Loan, Louis J. Hanson and Jacqueline M. Hanson (collectively, "Co-Borrowers") co-signed on her behalf. (TAC, ¶¶20, 21.)

Plaintiff asserts that after the Loan funds were provided to her to purchase the Property, the Grant Deed conveying her property interest was "altered" by an unspecified party, who she claims added Co-Borrowers' names. (TAC, ¶24.) On July 2, 2007, a Grant Deed was recorded, reflecting that Delong had transferred the Property to Plaintiff and Co-Borrowers, as "joint tenants." (TAC, Ex. D.) On July 2, 2007, a Grant Deed was recorded, reflecting that Plaintiff and Co-Borrowers transferred their interest in the Property to Rancho Sonata, LLC. (TAC, Ex. E.) According to the TAC, a Grant Deed was recorded on November 18, 2014, transferring title from Rancho Sonata, LLC back to Plaintiff. (TAC, Ex. M.)

Plaintiff admittedly defaulted on the Loan around January of 2008. (TAC, ¶29.) The TAC admits that Plaintiff was then granted two separate loan modifications by BANA. (TAC, ¶31.) Plaintiff's SAC admitted she ceased making any required Loan payments on January 1, 2010, and has refused to make any payments since. (SAC, ¶25.) Plaintiff defaulted on her modified loan, and alleges BANA sent her a notice of acceleration of her Loan on May 4, 2010. (TAC, ¶34.)

On May 19, 2010, MERS recorded an assignment of the DOT ("ADOT"),

reflecting the assignment of the beneficial interest in the DOT to The Bank of New York Mellon, fka Bank of New York as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2007-HY9 Mortgage Pass-Through Certificates, Series 2007-HY9 ("BONY"). (Request for Judicial Notice ("RJN"), Ex. 1; TAC, ¶27, Ex. F.) In April 2012, servicing of the Loan was transferred to Select Portfolio Servicing, Inc. ("SPS"). (TAC, ¶40.)

## B.  Actions Subsequent To BANA's Involvement With The Loan & DOT

On February 28, 2014, a Substitution of Trustee was recorded, reflecting Quality Loan Service Corporation ("QLS") was the new DOT trustee of record. (TAC, ¶48, Ex. K.) On September 25, 2014, QLS recorded a Notice of Default on behalf of BONY and SPS (the "Foreclosing Defendants"), reflecting that the Loan was approximately $356,429.14 in arrears. (TAC, ¶52, Ex. J, at p. 101-103.) On September 30, 2015, QLS caused a Notice of Trustee's Sale to be recorded against the Property, reflecting an unpaid balance of approximately $1,719,511.24. (RJN, Ex. 2; TAC, ¶57.) On August 8, 2016, the Property was sold at a trustee's sale, wherein it reverted to BONY. (RJN, Ex. 3; TAC, ¶63, Ex. O.) BONY recorded a Trustee's Deed Upon Sale reflecting these results on August 16, 2016. (RJN, Ex. 3; SAC, ¶34.)

Thereafter, BONY obtained an unlawful detainer judgment and writ of execution against Plaintiff. (TAC, ¶¶69-77.) The TAC alleges Plaintiff was evicted from the Property on or about September 21, 2017. (TAC, ¶76.)

## III.  SINCE EACH OF PLAINTIFF'S TAC CLAIMS WERE IMPROPERLY ADDED IN VIOLATION OF FED. R. C. P. 15(a) AND THE COURT'S MARCH 5TH ORDER, THEY ARE SUBJECT TO DISMISSAL

Federal Rule of Civil Procedure 15(a)(2) provides that subsequent to an initial amendment of a complaint: "a party may amend its pleading only with the opposing party's written consent or the court's leave." Thus, when a "Plaintiff [does] not receive the Court's leave to add a new cause of action" and a "Defendant has not given its written consent for Plaintiff to amend [their] complaint to add new claims," any added cause of action "must be dismissed pursuant to both Rules 12(b)(6) and 15(a)(2) of

the Federal Rules of Civil Procedure." *Schauf v. Airlines*, 2016 WL 3407661, at *8 (E.D.Cal. 2016); see also, *Hoover v. Blue Cross & Blue Shield of Al.*, 855 F.2d 1538, 1544 (11th Cir.1988) (holding courts need not consider additional claims in an amended complaint when leave to amend has not been granted for those claims; without leave to amend, an amendment is without legal effect); *Ketab Corp. v. Mesriani Law Group*, 2015 WL 2085523, at *3 (C.D.Cal. 2015) (same); *Brown v. U.S. Bancorp*, 2012 WL 665900, *7 (C.D.Cal. 2012) (same).

Plaintiff's SAC asserted the following three causes of action: (1) adverse possession (against Robert DeLong); (2) cancellation of written instruments (against BANA and BONY); and (3) wrongful foreclosure (against BANA and BONY). (ECF No. 32.)  The Court's March 5th Order dismissed these claims with leave to amend. (ECF No. 67.)  It did not, however, permit Plaintiff to assert any additional causes of action. (See, ECF No. 67.)  At no point prior to filing the TAC did Plaintiff obtain written agreement from BANA's counsel, or leave from the Court, to add any causes of action to her TAC. (See, ECF Nos. 67-71.)  Nonetheless, the TAC now asserts *seventeen* entirely new causes of action. In light of Plaintiff's violation of the Court's March 5th Order, these claims "must be dismissed pursuant to both Rules 12(b)(6) and 15(a)(2) of the Federal Rules of Civil Procedure." *Schauf*, 2016 WL 3407661, *8.

## IV.  PLAINTIFF'S UNDERLYING LEGAL THEORIES EACH FAIL

### A.    Plaintiff's Robo-Signing Allegations Cannot Support Her Claims

Nearly all of Plaintiff's claims are based on her contentions that the ADOT includes a "robo signature," and is therefore void. (See, e.g., TAC, ¶¶36-61.) Courts have rejected allegations of "robo signing" by defaulting borrowers who attack the validity of the foreclosure by attacking the authority of the persons who sign documents on behalf of MERS. See, e.g., *Chua v. IB Prop. Holdings, LLC*, 2011 WL 3322884, at *2 (C.D.Cal. 2011). Moreover, "[e]ven if true, 'robo-signing' does not have any bearing on the validity of the foreclosure process here." *Kalnoki*, 8 Cal.App.5th at 46, quoting *Sandri v. Capitol One, N.A.*, 501 B.R. 369, 373–374

(N.D.Cal. 2013). This is because Plaintiff is neither the victim of, nor has she been damaged by, the allegedly improper actions of the signors. *Id.*, see also, *Pratap v. Wells Fargo Bank, N.A.*, 63 F.Supp.3d 1101, 1109 (N.D.Cal. 2014); *Mann v. Bank of Am., N.A.*, 2014 WL 495617, at *6 (C.D.Cal. 2014); *Trepany v. Deutsche Bank Nat. Trust Co.*, 2015 WL 4506901, at *5 (C.D.Cal. 2015). If the signors were not authorized to sign on MERS' or BANA's behalf, "the injured party would have been [MERS/BANA], not [Plaintiff]." *Id.* at 54. "And, to the extent the default declaration was in fact robosigned, 'it would be voidable, not void, at the injured party's [i.e. MERS or BANA's] option'." *Id.*, quoting *Maynard v. Wells Fargo Bank, N.A.*, 2013 WL 4883202, at *8–9 (S.D.Cal. 2013). As a result, Plaintiff lacks standing to challenge the ADOT on those grounds. *Id.* at 43; *Mendoza v. JPMorgan Chase Bank, N.A.*, 6 Cal.App.5th 802, 820 (2016).

Even assuming a defect exists with respect to the Assignments of Deed of Trust, it does not invalidate the beneficiary's ownership interest. This is because the transfer of a promissory note is perfected against third parties on the execution and delivery of an assignment of the note (not an assignment of the deed of trust) to the transferee. See, 10 Miller & Starr, *California Real Estate*, Deeds of Trust (3rd Ed. 2010) § 10:38, p. 128 (*citations omitted*). "Because the lien of the trust deed is merely an incident of the debt, the assignment by endorsement and delivery of the promissory note accomplishes the transfer of the security without the necessity of a formal assignment of the trust deed itself." *Id.*

**B.     Plaintiff's 'Holder of the Note' Theory Fails**

Plaintiff's claims are also based on allegations that the Foreclosing Defendants cannot demonstrate a complete chain of title and assignments of the beneficial interest in the DOT because they do not have the so-called "wet ink signed" original documents, and/or are not "holders in due course" of the Loan. (See, e.g., TAC, ¶¶60, 61, 81.) But, under California law, possession of the original note is not a prerequisite to foreclosure. *Kalnoki*, 8 Cal.App.5th at 42; *Shuster v. BAC Home Loans Serv., LP*,

211 Cal.App.4th 505, 511 (2012); *Debrunner v. Deutsche Bank Nat. Trust Co.*, 204 Cal.App.4th 433, 441 (2012). This theory thus cannot support Plaintiff's claims.

To the extent that Plaintiff claims the Foreclosing Defendants were not holders of the note because MERS lacked authority to transfer the beneficial interest in the DOT (see, TAC, ¶¶99-107), such allegations directly contradict the explicit terms of the DOT she executed authorizing MERS to act as DOT beneficiary. (See, TAC, Ex. B, pp. 54, 55, 64 at § 20.) "[I]t is well established that as the designated beneficiary and nominee for the lender under the Deed of Trust, MERS has the authority to both assign the beneficial interest in that Deed of Trust to another entity and to substitute a new trustee for an existing trustee." *Russell v. Aurora Bank, FSB*, 2013 WL 12143924, at *4 (C.D.Cal. 2013); see also, *Gomes v. Countrywide Home Loans, Inc.*, 92 Cal.App.4th 1149, 1157 (2011); *Lane v. Vitek Real Estate Ind. Group*, 713 F.Supp.2d 1092, 1099 (E.D.Cal 2010); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1189-90 (N.D.Cal. 2009); *Walton v. MERS*, 507 F.App'x. 720, 721 (9th Cir. 2013). Plaintiff is thus precluded from asserting this meritless argument.

## C.   Plaintiff Lacks Standing To Assert Challenges To The Assignment of The Deed of Trust Based On Her Post-PSA Closing Date Theory

Plaintiff's claims are also almost entirely based upon assertions that the DOT was improperly assigned into a REMIC, in violation of the REMIC's pooling and servicing agreements ("PSAs"). (See, TAC, ¶¶85-98, 102-107.) Plaintiff contends that the assignment of the DOT to BONY is thus "void," and the Foreclosing Defendants lacked standing to foreclose on the Property on this basis. (TAC, ¶104-107.)

Plaintiff is incorrect. The Second and Ninth Circuits, along with state appellate courts, hold that untimely assignments into a trust, in violation of its PSAs are merely *voidable* at the true beneficiary's behalf, not *void*.  See, *In re Turner*, 859 F.3d 1145, 1149 (9th Cir. 2017); *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 88–89 (2d Cir. 2014); *Yhudai v. Impac Funding Corp.*, 1 Cal.App.5th 1252, 1256 (2016); *Saterbak v. JPMorgan Chase Bank, N.A.*, 245 Cal.App.4th 808, 815 (2016); *Morgan*

*v. Aurora Loan Serv., LLC*, 646 Fed.Appx. 546, 550 (9th Cir. 2016). Moreover, a borrower only has standing to challenge the assignments of a deed of trust when the defects in the assignments render the assignment *void*, rather than *voidable*. *Saterbak*, 245 Cal.App.4th at 815, citing *Yvanova v. New Century Mortg. Corp.*, 62 Cal.4th 919, 942-43 (2016). Plaintiff thus lacks standing to assert her challenges to the ADOT on this basis as a matter of law. *Id.*; *Turner*, 859 F.3d at 1149.

## V.  THE INDIVIDUAL CLAIMS FAIL FOR ADDITIONAL REASONS

Beyond being improperly added without obtaining leave from the Court and based upon repeatedly rejected legal theories, each of Plaintiff's individual causes of action fail for a number of other reasons as well.

### A.    Plaintiff's Conspiracy Claim Is Incurably Defective

Plaintiff first asserts a cause of action for alleged conspiracy, based entirely upon the aforementioned failed legal theories. (TAC, ¶¶108-110.)

As an initial matter, this claim is entirely based upon alleged fraudulent actions which Plaintiff claims occurred either: (a) during origination of the Loan in 2007; and/or (b) when the DOT was assigned to BONY in 2010. (TAC, ¶¶21, 36, 108-110.) The TAC also patently admits Plaintiff discovered any such fraudulent conspiracy no later than 2012. (See, TAC, ¶38.) As a result, Plaintiff's conspiracy claim is barred by the applicable three year statute of limitations for claims based on allegations of fraud. CAL. CIV. CODE § 338(d); *Maheu v. CBS, Inc.*, 201 Cal.App.3d 662, 673 (1988) (holding the applicable statute of limitations for civil conspiracy is determined by the nature of the action in which the conspiracy is alleged).

Additionally, it is "well established" that "civil conspiracy is not an independent tort." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995); see also, *Unruh v. Truck Ins. Exch.*, 7 Cal.3d 616, 631 (1972). "Accordingly, Plaintiffs may not premise civil liability on the alleged violation of federal criminal statutes which do not provide, as a general matter, private causes of action." *Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1197 (C.D.Cal. 2001), citing *Chrysler Corp.*

1   *v. Brown*, 441 U.S. 281, 316-17 (1979). Plaintiff's conspiracy claim here is based

2   upon her various failed legal theories she lacks standing to assert. (TAC, ¶¶108-110;

3   see, *supra*, Section IV.) Plaintiff is unable to plead a viable conspiracy claim on this

4   basis.

5   **B.      Plaintiff Cannot Pursue A Claim For Violations Of HUD Regulations**

6         Plaintiff next asserts a cause of action alleging Defendants violated a variety of

7   HUD regulations. (TAC, ¶¶112-125.) Courts have consistently held that borrowers

8   lack standing to assert claims based on alleged violations of HUD regulations. See,

9   e.g., *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal.App.4th 1250, 1269 (2012);

10  *Fed. Nat. Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir.1989);  *Roberts v.*

11  *Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977); *Mondragon v. Bank of Am.,*

12  *N.A.*, 2017 WL 4653021, at *2 (C.D.Cal. 2017).

13        Moreover, in light of the fact that BANA was not involved with the servicing

14  of the Loan at any point subsequent to April 2012, the actions Plaintiff claims

15  constituted violations of these regulations—immediately prior to the trustee's sale—

16  were committed by the Foreclosing Defendants, *not* BANA. (TAC, ¶¶40, 112-125.)

17  **C.      Plaintiff's HBOR Cause Of Action Fails Against BANA**

18        Plaintiff next asserts a cause of action for alleged violations of the following

19  California Homeowner Bill of Rights ("HBOR") statutes: Cal. Civil Code sections

20  2923.55, 2923.7, 2924.17, and 2924.18. (TAC, ¶¶127-136.) This claim fails against

21  BANA for a number of reasons.

22        First, these cited statutes were all enacted on January 1, 2013, and were not

23  retroactive. See, CAL. CIV. CODE §§ 2923.55, 2923.7, 2924.17, 2924.18; *Rockridge*

24  *Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110, 1152 (N.D.Cal. 2013). Since

25  Plaintiff patently admits BANA has not been the Loan servicer and/or DOT

26  beneficiary since April 2012, it could not have violated any of these statutes as a

27  matter of law. (*Id.*; TAC, ¶¶36, 40, Ex. F.)

28        Second, since BANA has not been involved with the DOT and/or Loan since

April 2012, any HBOR claim against it would be time-barred by the three year statute of limitations for bringing such a claim. CAL. CODE CIV. PROC. § 338(a); *Benefield v. Bryco Funding, Inc.*, 2014 WL 2604363, at *3 (N.D.Cal.2014); *Ambers v. Wells Fargo Bank, N.A.*, 2014 WL 883752 at *10 (N.D. Cal. 2014).

Third, HBOR claims are only actionable if the alleged violations were "material." See, CAL. CIV. CODE § 2924.12(b). A material violation occurs when "the alleged violation affected a plaintiff's loan obligations or the modification process." *Cornejo v. Ocwen Loan Serv., LLC*, 151 F.Supp.3d 1102, 1113 (E.D.Cal. 2015). As Plaintiff here admits she was actually provided with two separate modifications of the Loan by BANA, it is entirely unclear how she claims any failure to send her documents related to loss mitigation options (per Section 2923.55), and/or provide her with a designated single point of contact (per Section 2923.7) materially affected her loan modification process with BANA. (TAC, ¶31.) And, Plaintiff's claims that the Foreclosing Defendants recorded a "notice of Trustee Sale" and conducted "the nonjudicial foreclosure sale" while "Plaintiff's First Lien Loan Modification Application was complete and submitted" (in violation of Section 2924.18) are not asserted against BANA, since it was admittedly no longer involved with the Loan and/or DOT when these actions occurred. (TAC, ¶¶36, 40, 57, Exs. F, O.)

As a result, Plaintiff's HBOR claim fails against BANA and is entirely incapable of being cured through further amendment.

**D.    Plaintiff's TILA Claim Is Long Time-Barred**

Plaintiff's fourth cause of action alleges "Defendants" violated the Truth in Lending Act ("TILA") by failing to send her a disclosure when the DOT was assigned to BONY in 2010. (TAC, ¶¶36, 138-141.) The statute of limitations to bring a TILA claim is one year for damages, and three years for rescission. See, 15 U.S.C. § 1640(e). A Section 1641(g) claim normally accrues, and the year-long limitations period begins to run when the violation occurs–that is, on the 31st day after the plaintiff's loan is sold or otherwise transferred or assigned to a third party. See,

1   *Vargas v. JP Morgan Chase Bank, N.A.*, 30 F.Supp.3d 945, 949 (C.D.Cal. 2014).

2   Plaintiff's claim is time-barred by over four years under a rescission theory,

3   and six years under a damages theory. (See, ECF No. 1.) Plaintiff also is unable to toll

4   these statutes of limitations, in light of her explicit admissions that she discovered the

5   transfers of the DOT no later than 2012. (TAC, ¶38.) And, since Plaintiff's TILA

6   claim is long time-barred, it should be dismissed *with* prejudice.

7   **E.   Plaintiff's Assertions Regarding The "Statute Of Limitations To Foreclose" Are Entirely Without Legal Merit**

8   Plaintiff next argues that the trustee's sale of the Property is "void," based on

9   her theory that California Commercial Code § 3118 requires "an action to enforce the

10   obligation of a party to pay a note" to be "commenced with six years after the due

11   date or dates stated in the note." Plaintiff argues that since the trustee's sale occurred

12   on August 8, 2016 (more than six years after the last acceleration notice was sent to

13   her on May 4, 2010), the trustee's sale is void. (TAC, ¶143-145.) Plaintiff's theory

14   overlooks the fact that Commercial Code § 3118 does not apply because the trustee's

15   sale of the Property occurred was a *nonjudicial foreclosure*; not a judicial action.

16   The statute of limitations pertaining to nonjudicial foreclosure under power of

17   sale clauses contained in deeds of trust are governed by California Civil Code §§

18   2911 and 882.020; not Commercial Code § 3118(a). See, *Ung v. Koehler*, 135

19   Cal.App.4th 186, 190 (2005). Civil Code § 2911 provides that a lien is extinguished

20   by the lapse of time within which, under the Code of Civil Procedure, an action can

21   be brought upon the principal obligation. However, the running of the statute of

22   limitations does not extinguish a power of sale conferred on a trustee by a deed of

23   trust. *Kaichen's Metal Mart, Inc. v. Ferro Cast Co.*, 33 Cal.App.4th 8, 13 (1995);

24   *Flack v. Boland*, 11 Cal.2d, 103, 106 (1938). Civil Code section 882.020 was enacted

25   in 1982, and provides that non-judicial foreclosure of a deed of trust may proceed

26   until *ten years after the maturity date of the obligation* as specified in the recorded

27   deed of trust. *Ung*, 135 Cal.App.4th at 193; *Miller v. Provost*, 26 Cal.App.4th 1703,

28

1   1708–09 (1995); see also, CAL. CIV. CODE § 882.020.

2        Here, Plaintiff's TAC exhibit admits the Loan's maturity date was July 1, 2037.

3   (See, TAC, Ex. B, at p. 64.) The Foreclosing Defendants thus had until July 1, 2047 to

4   exercise their power of sale granted to them in the DOT. *Ung*, 135 Cal.App.4th at

5   193; *Miller*, 26 Cal.App.4th at 1708–09; CAL. CIV. CODE § 882.020. Plaintiff's

6   meritless fifth cause of action should therefore be dismissed *with* prejudice.

7   **F.      Plaintiff Fails To Plead A Promissory Estoppel Claim**

8        Plaintiff next asserts a cause of action for promissory estoppel, based on "the

9   [unspecified] promise that was made to her when she purchased her home" in 2007.

10  (TAC, ¶149.)

11       As an initial matter, any promissory estoppel claim based on a promise made to

12  Plaintiff in 2007 would be long time-barred by the two year statute of limitations

13  governing such claims. *Newport Harbor Ventures, LLC v. Morris Cerullo World*

14  *Evangelism*, 6 Cal.App.5th 1207, 1224 (2016).

15       Moreover, to plead a viable promissory estoppel claim, Plaintiff must allege:

16  (1) a clear promise; (2) reliance; (3) substantial detriment; and (4) damages measured

17  by the extent of the obligation assumed and not performed. See, *Garcia v. World Sav.*,

18  *FSB*, 183 Cal.App.4th 1031, 1044-1045 (2010). Plaintiff's alleged "promise" here is

19  anything but "clear." In fact, it is entirely unclear who Plaintiff claims made the

20  promise, what the terms of the alleged promise were, or even what the promise related

21  to. (TAC, ¶¶149-151.) Second, Plaintiff makes no effort to plead any actions she took

22  in "detrimental reliance" of a promise made by Defendants, other than her perplexing

23  conclusion that "the reliance is enforceable." (TAC, ¶149.) Third, it is entirely unclear

24  how Plaintiff contends her alleged injuries ("a fragmented state of mine (*sic*), unable

25  to stay focus (*sic*), due to the on-going high level (*sic*) of stress in her life") were

26  actually "inflicted by Defendants." (*Id*.)  If anything, Plaintiff's injuries resulted from

27  her own refusal to make a Loan payment for over six years prior to the trustee's sale

28  of the Property, rather than Defendants' alleged actions. (SAC, ¶25; TAC, Ex. O.)

Plaintiff's promissory estoppel claim is thus legally defective, and entirely incapable of being cured through further amendment.

## G.   Plaintiff Cannot Establish Any Of The Elements Of Wrongful Foreclosure Against BANA

Plaintiff next asserts a cause of action alleging that "Defendants" wrongfully foreclosed on the Property, based upon her previously discussed failed legal theories. (TAC, ¶¶153-156.) The elements of a wrongful foreclosure claim are: (1) the trustee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Lona v. Citibank, N.A*., 202 Cal.App.4th 89, 104 (2011).

As an initial matter, Plaintiff cannot establish the first element of this claim against BANA, in light of her admissions it was not involved with the Loan and/or DOT for nearly four years before the trustee's sale of the Property. (See, TAC, ¶¶36, 40, 57, Exs. F, O.) Plaintiff also cannot establish the sale was "illegal, fraudulent, or willfully oppressive," since her claim is based entirely upon her failed legal theories previously discussed. (See, *supra*, Section IV.)

Plaintiff is additionally unable to establish any resulting prejudice from the alleged defects in the assignment of the DOT to BONY, since it "merely substituted one creditor for another, without changing [her] obligations under the note." *Kalnoki*, 8 Cal.App.5th at 48.

Finally, Plaintiff cannot establish the element of tender, in light the trustee's sale of the Property. (See, TAC, Ex. O.) Her wrongful foreclosure claim should thus be dismissed *with* prejudice.

## H.   Plaintiff's Wrongful Eviction Claim Necessarily Fails Against BANA

Plaintiff next asserts a wrongful eviction claim, but fails to specify which defendants this claim is asserted against. (TAC, ¶¶158-169.) To the extent this claim

1   is asserted against BANA, it would fail since the TAC explicitly admits BONY—not

2   BANA—evicted Plaintiff from the Property. (See, ¶¶TAC, 64-69.) Plaintiff thus

3   cannot establish any of the elements of this claim against BANA. See, *Ginsberg v.*

4   *Gamson*, 205 Cal.App.4th 873, 899 (2012) (providing elements of wrongful eviction).

5   **I.      Plaintiff's Breach Of Contract Claim Must Be Dismissed**

6           Plaintiff next asserts a breach of contact claim against Defendants, based upon

7   her allegations that the assignment of the DOT from MERS to BONY, and the

8   subsequent trustee's sale of the Property, somehow breached the terms of the DOT.

9   (TAC, ¶¶171-178.) This claim fails against BANA for a number of reasons.

10          First, any alleged breach of the DOT committed by BANA would be time-

11  barred by the four-year statute of limitations for this claims, since BANA has not been

12  involved with either the Loan or DOT since 2012. CAL. CODE CIV. PROC., § 337(1).

13  Also, the alleged actions Plaintiff claims constituted a breach of the DOT (foreclosing

14  on the Property) were committed by the Foreclosing Defendants—*not* BANA. (See,

15  TAC, ¶¶36, 40, 57, Exs. F, O.)

16          Plaintiff's argument that the use of MERS to assign the DOT to BONY

17  somehow breached the DOT directly contradicts its explicit language providing: (a)

18  "**MERS Is the beneficiary under this Security Instrument**" (*emphasis in original*)

19  (TAC, Ex. B, at p. 54); (b) MERS (as nominee for the Lender and Lender's

20  successors and assigns) has the right: to exercise any or all of those interests,

21  including, but not limited to, the rights to foreclose and sell the Property…" (*id*. at p.

22  55-56); and (c) "The Note or a partial interest in the Note (together with this Security

23  Instrument) can be sold one or more times without prior notice to Borrower." (*Id.* at p.

24  64, §20.) Because the DOT specifically provided MERS with the authority to assign

25  the beneficial interest to BONY, and for BONY to foreclose on the DOT as the

26  Lender's successor in interest, the Foreclosing Defendants' exercise of their rights to

27  foreclose on the Property (after Plaintiff failed to make Loan payments for six years)

28  simply did not breach its terms. (*Id*.) Addressing similar allegations as Plaintiff's:

"California courts have held that a trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interests of the lender, including the right to foreclose, is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights."

*Siliga v. MERS*, 219 Cal.App.4th 75, 83 (2013), disappv'd of on other grounds by *Yvanova*, 62 Cal.4th 919, citing *Gomes*, 192 Cal.App.4th at 1157; *Herrera v. Fed. Nat. Mortg. Assn.*, 205 Cal.App.4th 1495, 1505 (2012).

Finally, to establish her breach of contract claim Plaintiff must show the necessary causal relationship between BANA's alleged breach and her claimed damages. CAL. CIV. CODE § 3300; *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal.App.4th 1088, 1102-1103 (2015). Plaintiff here fails to plead any injury resulting from the Foreclosing Defendants' exercise of their rights provided to them under the explicit terms of the DOT. (See, TAC, ¶¶170-178.) Nor can she.

Plaintiff's breach of contact claim should thus be dismissed *with* prejudice.

## J.   Plaintiff's Fraud/Deceit Claim Is Incurably Defective

Plaintiff next asserts a cause of action for "fraud and deceit," related to the alleged securitization of the DOT during its assignment to BONY in 2010. (TAC, ¶¶180-189.) Plaintiff's improperly added fraud claim fails for myriad reasons.

First, this claim is based on alleged misrepresentations made in 2010, and is thus time-barred. CAL. CIV. CODE § 338(d). And, Plaintiff cannot toll the statute of limitations, since she admittedly discovered the claimed "fraud" in 2012. (TAC, ¶38.)

Second, there are no facts pled in relation to any alleged misrepresentation made by BANA, as required to sufficiently plead a fraud claim under the standards required by Federal Rule 9(b). *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Third, this claim is not actionable since it appears the misrepresentations were not actually made to Plaintiff, but rather in publicly recorded documents. See, *Sec. Officers Serv., Inc. v. State Comp. Ins. Fund*, 17 Cal.App.4th 897, 899 (1993).

Fourth, Plaintiff fails to plead any actions she took in actual and/or detrimental

14

1  reliance on the alleged misrepresentations, as required. See, *Nat'l Union Fire Ins. Co.*

2  *v. Cambridge Integrated Serv. Group, Inc.*, 171 Cal.App.4th 35, 50 (2009). In fact, if

3  anything, Plaintiff claims to have taken numerous actions disputing the alleged

4  misrepresentations in the ADOT for a period of at least four years. (TAC, ¶¶38-76.)

5  Fifth, Plaintiff fails to plead any resulting damages, as required. See, *Nagy v.*

6  *Nagy*, 210 Cal.App.3d 1262, 1268 (1989). If anything, Plaintiff apparently benefitted

7  from the alleged proceeds she claims to have obtained from "Merchant Bonding

8  Company" related to the claimed "robo signature" contained in the ADOT (TAC,

9  ¶42), despite the fact that it had no effect on her outstanding Loan obligation. *Kalnoki*,

10  8 Cal.App.5th at 48. Plaintiff's claim should thus be dismissed *with* prejudice.

11  **K.  Plaintiff's Declaratory Relief Claim Against BANA Is Moot**

12  Plaintiff next asserts a cause of action against Defendants for "declaratory

13  relief," requesting the Court issue an order the trustee's sale of the Property in 2016

14  by the Foreclosing Defendants was unlawful. (TAC, ¶¶192-198.)

15  In instances in which a trustee's sale of a property has already occurred, a

16  request for declaratory relief regarding the right to foreclose is rendered moot. See,

17  *McLaughlin v. Wells Fargo Bank, N.A.*, 2012 WL 5994924, at *7 (C.D.Cal. 2012);

18  see also, *Hillblom v. United States*, 896 F.3d 426, 430 (9th Cir. 1990) ("A

19  'controversy' in this sense must be one that is appropriate for judicial determination,"

20  and cannot be "of a hypothetical or abstract character [or] one that is academic or

21  moot…") Moreover, since no actual controversy has existed between Plaintiff and

22  BANA since 2012 (TAC, ¶¶36, 40, 57, Exs. F, O), Plaintiff's request for "a

23  determination of whether [the Foreclosing Defendants] had authority to foreclose on

24  the Property" is long mooted with respect to BANA. (TAC, ¶195.)

25  Additionally, declaratory relief is not an independent claim, but is instead a

26  form of relief. *Lane*, 713 F.Supp.2d at 1104. Since Plaintiff's declaratory relief claim

27  is based upon the previously discussed failed legal theories (see, *supra*, Section IV), it

28  fails for the same reasons as her underlying claims.

**L.      Plaintiff Cannot Quiet Title In Her Favor As A Matter Of Law**

Plaintiff next requests the Court quiet title in the Property in her favor, without requiring her to repay a dime of the nearly $1.8 million owing at the time of the trustee's sale. (TAC, ¶¶200-207, Ex. O, at p. 1.) Plaintiff is unable to do so for a number of reasons.

As an initial matter, Plaintiff has not articulated any valid basis to quiet title in her favor. Instead, she simply repeats her challenges to the ADOT that she lacks standing to assert. (See, *supra*, Section IV.) Since Plaintiff articulates no valid basis for establishing title superior to that of BONY, her claim is subject to dismissal. See, *Jensen v. Quality Loan Serv. Corp.*, 702 F.Supp.2d 1183, 1198 (E.D. Cal. 2010) (quiet title claim subject to dismissal when a plaintiff fails to state valid basis establishing superior title); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1168 (S.D. Cal. 2009) (same). Plaintiff's claim particularly fails with respect to BANA, as it does not claim any interest in the Property—only BONY does. See, CAL. CIV. PROC. CODE § 760.020; *Newman v. Cornelius*, 3 Cal.App.3d 279, 284 (1970).

Plaintiff also is unable to quiet title in her favor, since she did not tender prior to the trustee's sale. See, *Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101, 1109 (1996); *FPCI RE-HAB 01 v. E & G Inv., Ltd.*, 207 Cal.App.3d 1018, 1021-1022 (1989); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477 (1974). Her claim is subject to dismissal with prejudice on this basis alone. *Id.*

**M.      Plaintiff's Defamation Claim Should Be Dismissed With Prejudice**

Plaintiff next oddly asserts a cause of action for "defamation of character," related to the alleged negative credit reporting to various credit reporting agencies. (See, TAC, ¶¶209-214.) This claim is subject to dismissal for several reasons.

First, BANA has not been the servicer of the Loan since 2012. (TAC, ¶40.) Any statements made by BANA to credit reporting agencies between 2007 and 2012 would be therefore be long barred by the one year statute of limitations for defamation claims. CAL. CODE CIV. PROC. § 340(c).

1    More importantly, Plaintiff admittedly defaulted on the Loan on January 1,

2    2010, and didn't make a single Loan payment since then. (See, SAC, ¶25; TAC, ¶29,

3    Ex. J.) As a result, Plaintiff is entirely unable to establish any negative credit reporting

4    was defamatory, as "[a] credit report, even one that causes harm, is not defamatory if

5    it is true." *Francis v. Dun & Bradstreet, Inc.*, 3 Cal.App.4th 535, 540 (1992), citing

6    *Lyon Furniture Mercantile Agency v. Carrier*, 259 F.2d 106, 110-12 (9th Cir. 1958).

7    **N.    Plaintiff's Emotional Distress Claims Are Incurably Defective**

8    Plaintiff's next asserts two related causes of action for intentional infliction of

9    emotional distress ("IIED") and negligent infliction of emotional distress ("NIED")

10   (collectively, the "Emotional Distress Claims"). (TAC, ¶¶216-233.)

11   **1.    *Plaintiff Does Not Plead Any 'Outrageous' Actions Taken By BANA***

12   Because both of these claims are based upon the trustee's sale of the Property

13   conducted by the Foreclosing Defendants—not BANA—Plaintiff pleads no actions

14   taken by BANA which caused her emotional distress. (*Id.*)

15   Moreover, since these claims are entirely based on Plaintiff's previously

16   discussed failed theories of law (see, *supra*, Section IV), Plaintiff does not plead any

17   "outrageous" actions taken by any defendant—let alone BANA—as required to

18   support these claims. *KOVR-TV, Inc. v. Sup. Ct.*, 31 Cal.App.4th 1023, 1028 (1995).

19   In fact, foreclosing on a property cannot be considered "extreme and outrageous

20   conduct" when "there is no suggestion that Plaintiff was threatened with physical

21   injury." *Mehta v. Wells Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1204 (S.D.Cal. 2010).

22   **2.    *Plaintiff Cannot Establish A NIED Claim For Additional Reasons***

23   With respect to Plaintiff's NIED claim, courts recognize two limited situations

24   where defendants owe a duty of care to not negligently cause emotional distress: (i)

25   where the plaintiff is a "direct victim"; or (ii) where plaintiff is a "bystander." See,

26   *Fortman v. Forvaltningsbolaget Insulan AB*, 212 Cal.App.4th 830, 834 (2013).

27   NIED claims under the "direct victim" have only been allowed in three narrow

28   types of cases: (1) negligent mishandling of corpses (*Christensen v. Sup. Ct.*, 54

Cal.3d 868, 879 (1991)); (2) negligent misdiagnosis of a disease that could potentially harm another (*Molien v. Kaiser Foundation Hosp.*, 27 Cal.3d 916, 923 (1980)); and (3) negligent breach of a duty arising out of a pre-existing relationship. *Burgess v. Sup. Ct.*, 2 Cal.4th 1064, 1076 (1992). Plaintiff's claim obviously does not fit into any of these three limited scenarios. (See, TAC, generally.)

Nor does this claim fall meet the "bystander" situation, which requires Plaintiff establish: "(1) she is closely related to the injury victim; (2) she was present at the scene of the injury-producing event at the time it occurred and was then aware that it was causing injury to the victim; and (3) suffered emotional distress beyond that which would be anticipated in a disinterested witness." *Thing v. La Chusa*, 48 Cal.3d 644, 647 (1989). Simply put, Plaintiff cannot fit her "square peg" allegations into the "round hole" that is an NIED claim.

## O.    Plaintiff's Unfair Competition Law Claim Is Incurably Defective

Plaintiff's final cause of action alleges violations of California's Unfair Competition Law ("UCL"), based upon her previously discussed failed legal theories. (TAC, ¶¶235-241.) This claim fails against BANA for a variety of reasons.

First, this claim against BANA is barred by the UCL's four year statute of limitations (CAL. BUS. & PROF. CODE § 17208), as BANA has not been involved with the loan or deed of trust since 2012. (TAC, ¶¶36, 40, 57, Exs. F, O.)

Second, Plaintiff lacks standing to assert this claim, since her claimed injury (the trustee's sale of the Property) was not caused by BANA's actions. To state a viable UCL claim, a plaintiff must plead they have lost money or property as a result of the defendant's unfair competition. See, CAL. BUS. & PROF. CODE § 17204; *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322, 326 (2011). Plaintiff's TAC here readily admits she defaulted on her Loan and refused to make payments for six years, which actually caused her alleged injury arising from the trustee's sale of the Property. (SAC, ¶25; TAC, ¶¶107, 240-41, Ex. O.) Because Plaintiff's "home was subject to nonjudicial foreclosure because of her default on her loan, which occurred

before Defendants' alleged wrongful acts, [Plaintiff] cannot assert the […] foreclosure of her home (i.e., her alleged economic injury) was caused by [BANA's] wrongful actions." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 523 (2013), disappv'd of on other grounds by *Yvanova*, 62 Cal.4th 919; see also, *Cornejo v. Ocwen Loan Serv., LLC*,  151 F.Supp.3d 1102, 1118 (E.D. Cal. 2015); *Graham v. Bank of Am., N.A.*, 226 Cal.App.4th 594, 614 (2014); *Morgan v. Aurora Loan Serv., LLC*, 646 Fed.Appx. 546, 551 (9th Cir. 2016). Plaintiff is thus unable to establish the element of causation, as required to have standing to assert this claim. *Id.*

Third, Courts have made clear that the UCL cannot be used as an end-run around the requirements of other statutes. See, *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (dismissing UCL claim where underlying negligence and fraud claims were insufficient as a matter of law); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *Krantz v. BT Visual Images, LLC*, 89 Cal.App.4th 164, 178 (2001) (the viability of a UCL claim stands or falls with the antecedent substantive causes of action). Since Plaintiff's UCL claim is entirely based on her failed antecedent claims, it fails for the same reasons. *Id.*

Fourth, Plaintiff is without any UCL remedies against BANA, as "[t]he UCL limits the remedies available for UCL violations to restitution and injunctive relief." *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 452 (2005). Since BANA has not been involved with the Loan or DOT since 2012, injunctive relief against BANA is clearly unavailable. *Id.* at 464. Moreover, while the UCL provides for "restitution," this remedy is limited to the return of "money or property in which [Plaintiff] has a vested interest." *Id.* at 453; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003). Plaintiff here fails to plead any "money or property" being held by BANA which Plaintiff "has a vested interest." (See, TAC, generally.) Indeed, Plaintiff's TAC appears to solely claim BONY retains property to which she claims a vested. (TAC, ¶¶78, 235-241, Ex. O.) Plaintiff is therefore without *any* UCL remedies against BANA.

19

Thus, because: (i) Plaintiff's UCL claim against BANA is time-barred; (ii) she lacks standing to assert this claim; (iii) it is entirely based on her failed antecedent causes of action; and (iv) Plaintiff is without any UCL remedies against BANA, the Court should dismiss Plaintiff's final cause of action for alleged violations of the UCL *with* prejudice.

## VI.  CONCLUSION

Rather than utilizing her "one last chance" (ECF No. 67, at p. 2) to amend her two prior causes of action against BANA, Plaintiff squandered her opportunity by improperly adding seventeen legally defective claims which are incapable of being cured through yet further amendment. Thus, for the foregoing reasons, BANA respectfully requests the Court adhere to its prior "**warn**[ing]" by issuing an order of "**dismissal of Plaintiff's claims <u>with prejudice</u>**." (*emphasis in orig.*) (*Id.*)

DATED:  April 3, 2018       SEVERSON & WERSON
                            A Professional Corporation

By:     */s/ Stephen D. Britt*
                         Stephen D. Britt

Attorneys for Defendant BANK OF AMERICA, N.A., successor by April 27, 2009 de jure merger with Countrywide Bank, FSB (erroneously sued as Countrywide Bank, FSB)