Angela Swan, #213793
THE LAW OFFICES OF ANGELA SWAN, APC
21151 South Western Avenue, Suite 177
Torrance, CA 90501
Office Telephone: (310)755-2515
Email:        aswan@angelaswanlaw.com
Attorney for Plaintiff Billie Rene` Frances Lillian Powers

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| Billie Rene` Frances Lillian Powers | Case No. 8:17-cv-01386-DOC-KES |
| | District Judge: Hon. David O. Carter |
| Plaintiff, | Courtroom:    9D |
| vs. | **NOTICE OF MOTION AND PLAINTIFF'S** |
| | **MOTION FOR JOINDER OF BANKING** |
| BANK OF AMERICA, N.A.; THE | **FRAUD VIOLATIONS OF 18** |
| BANK OF NEW YORK MELLON | **U.S. CODE §1005, BANK ENTRIES,** |
| F/K/A THE BANK OF NEW YORK, | **REPORTS AND TRANSACTIONS; 18 U.S.** |
| AS TRUSTEE, ON BEHALF OF | **CODE §1006, FEDERAL CREDIT** |
| THE HOLDERS OF THE | **INSTITUTION ENTRIES, REPORTS AND** |
| ALTERNATIVE LOAN TRUST | **TRANSACTIONS; 18 U.S. CODE § 1341,** |
| 2007-HY9, MORTGAGE PASS- | **FRAUDS AND SWINDLES; 18 U.S. CODE §** |
| THROUGH CERTIFICATES | **880, RECEIVING THE PROCEEDS OF** |
| SERIES 2007-HY9; SELECT | **EXTORTION; 18 U.S. CODE § 1957,** |
| PORTFOLIO SERVICING, INC.; | **ENGAGING IN MONETARY** |
| QUALITY LOAN SERVICE | **TRANSACTIONS IN PROPERTY** |
| CORPORATION; MORTGAGE | **DERIVED FROM SPECIFIED UNLAWFUL** |
| ELECTRONIC REGISTRATION | **ACTIVITY, RICO; MEMORANDUM OF** |
| SYSTEMS, INC.; | **POINTS AND AUTHORITIES;** |
| COMMONWEALTH LAND TITLE | **DECLARATION OF Billie Rene` Frances** |
| COMPANY; JON SECRIST; | **Lillian Powers; [PROPOSED ORDER] IN** |
| NICHOLE CLAVADETSCHER; and | **SUPPORT THEREOF** |
| DOES 1 to 10, inclusive, | |
| | Third Amended Complaint Filed: 3/19/2018 |
| Defendants. | Hearing Date: July 30, 2018 |
| | Hearing Time: 8:30 a.m. |

MOTION FOR JOINDER OF CLAIMS

1

**TO ALL PARTIES AND THEIR ATTORNEY(S) OF RECORD:**

**PLEASE TAKE NOTICE** that on July 16, 2018 at 8:30am or as soon

thereafter as the matter may be heard in Courtroom 9D, of the above-entitled court,

located at 411 West 4th Street, Santa Ana, California 92701, Plaintiff Billie Rene`

Frances Lillian Powers, will and hereby does move this Court for Joinder of

Banking Fraud Violations of 18 U.S. Code §1005, Bank Entries, Reports and

Transactions; 18 U.S. Code §1006, Federal Credit Institution Entries, Reports and

Transactions; 18 U.S. Code § 1341, Frauds and Swindles; 18 U.S. Code § 880,

Receiving The Proceeds of Extortion; 18 U.S. Code § 1957, Engaging In Monetary

Transactions In Property Derived From Specified Unlawful Activity, RICO

("Motion for Joinder of Banking Fraud Violations") to Plaintiff's Third Amended

Complaint.

Said Motion will be made on the grounds of Federal Rules of Civil

Procedure, rule 18, Joinder of Claims, based on the claims resulting from the same

dispute and involving the same parties. The joining of the claims will make the

process more efficient because everything can be handled at once.

Also, said Motion will be made on the grounds of 12 U.S. Code §§ 503 and

631.

Said Motion is made following the conference of opposing counsel pursuant to Local Rule 7-3, which took place on June 19, 2018.

This Motion for Joinder of Banking Fraud Violations will be based on this Notice of Motion and Plaintiff's Motion for Joinder of Banking Fraud Violations, Memorandum of Points and Authorities, the records on file herein, and on such documentary evidence and oral argument as may be presented at the hearing.

DATED:  June 21, 2018                     Respectfully submitted,

                                          **THE LAW OFFICES OF ANGELA SWAN, APC**


BY:  _____
     Angela Swan,
     Attorney for
     Billie Rene` Frances Lillian Powers

MOTION FOR JOINDER OF CLAIMS

3

## MEMORANDUM OF POINTS AND AUTHORITIES INTRODUCTION

### I.    INTRODUCTION

On Thursday, April 22, 2010, President of the United States Barack Obama delivered an address on Economic Reform at The Cooper Union's Great Hall. In his address, he stated: "One of the most significant contributors to this recession was a financial crisis as dire as any we've known in generations. As you know, part of what led to this crisis was firms like American International Group, Inc. and others making huge and risky bets - using derivatives and other complicated financial instruments.  That's what led Warren Buffett to describe derivatives that were bought and sold with little oversight as "financial weapons of mass destruction."

On July 2, 2007 a purported Deed of Trust ("DOT") was recorded against what Plaintiff was led to believe was land and home upon her land, known here in this case, and  incorrectly referred to in the purported DOT as 40701Ortega Hwy. San Juan Capistrano, California 92530. The listed "lender" is COUNTRYWIDE BANK, FSB a Federal Savings Bank.  COUNTRYWIDE BANK, FSB, in violation of Congressional Mandate, has no standing and from the moment the ink was wet on the Plaintiff's autograph the theft of her equity had already occurred and more theft was already in motion.

Plaintiff was led to believe the transaction was a DOT on her home, but it was actually turned into a derivative, which Warren Buffet stated was a "financial weapon of mass destruction."

## II.    FACTUAL BACKROUND

December 23, 1913 the FEDERAL RESERVE ACT was passed. Senator Nelson W. Aldrich introduced the bill. What the bill did is add another chapter to the National Bank Act, Chapter 6-Foreign Banking. In this chapter banking is codified in its entirety to Title 12 USC.

On December 24, 1919 The EDGE ACT, codified in Title 12 USC 601, creating the Edge Act Corporation, International Banking.

On June 13, 1933 The Homeowners Loan Act ("HOLA") was passed.  The Homeowners' Loan Corporation (formerly known as The Reconstruction Finance Corporation), created Federal Savings Banks that are nonmember banks, which are restricted to loans and advance from depository institutions listed in Title 12 U.S.C. 461(b), by definition an International Banking Facility, not accessible to an American citizen.

*Repeal of direct loans to Homeowner: In addition to providing for the establishment of federal savings and loan associations, the HOLA, by its § 3, 48*

*Stat. 129, repealed § 4(d) of the HOLA, 47 Stat. 727, which had authorized federal home loan banks to make loans directly to homeowners. The HOLA, by its § 4, 48 Stat. 129, instructed the Board to create the Homeowners' Loan Corporation.* **Affirmed see** *Fidelity Fed. S. & L. v. De la Cuesta,* 458 U.S. 141 (1982).

On June 16, 1933 The EMERGENCY BANKING ACT was passed. It is codified in Title 12 USC section 375a, "loans to executive officers of a bank". Under this Act it amended the restriction of transactions with member banks.

On July 21, 2010 The Dodd Frank Wall Street Reform Bill amended Title 12, Section 25b of Subsection J under the Title Enforcement Actions and it says, "The ability of the Comptroller of the Currency to bring an enforcement action under Title 12 does not preclude any private party from enforcing rights granted under Federal or State laws in the courts."

## III. LEGAL ARGUMENT

### A. Legal Standard for Joinder of Claims

Federal Rules of Civil Procedure, rule 18 states: "(a) In General. A party asserting a claim, counterclaim, cross claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

### B. Derivative Transactions

12 C.F.R.§ 223.33. What rules apply to derivative transactions?

(a)Market terms requirement. Derivative transactions between a member bank and its affiliates (other than depository institutions) are subject to the market terms requirement of § 223.51.

(b)Policies and procedures…The policies and procedures must at a minimum provide for:

(1) Monitoring and controlling the credit exposure arising at any one time from the member bank's derivative transactions with each affiliate and all affiliates in the aggregate (through, among other things, imposing appropriate credit limits, mark-to-market requirements, and collateral requirements); and

(2) Ensuring that the member bank's derivative transactions with affiliates comply with the market terms requirement of § 223.51. The term "financial instrument" does not include mortgages.

12 C.F.R.§ 32.2  Definitions.

k)  Derivative transaction includes any transaction that is a contract, agreement, swap, warrant, note, or option that is based, in whole or in part, on the value of, any interest in, or any quantitative measure or the occurrence of any event relating

to, one or more commodities, securities, currencies, interest or other rates, indices, or other assets.

(p)  Financial instrument means stocks, notes, bonds, and debentures traded on a national securities exchange, Over-The-Counter ("OTC") margin stocks as defined in Regulation U, 12 C.F.R. part 221, commercial paper, negotiable certificates of deposit, bankers' acceptances, and shares in money market and mutual funds of the type that issue shares in which national banks or savings association may perfect a security interest. Financial instruments may be denominated in foreign currencies that are freely converted to U.S. dollars. The term "financial instrument" does not include mortgages.

12 C.F.R.§ 32.3  Lending limits (secured by a segregated deposit account in the lending national bank or savings association)

(6)  Loans secured by segregated deposit accounts. Loans or extensions of credit, including portions thereof, to the extent secured by a segregated deposit account in the lending national bank or savings association, provided a security interest in the deposit has been perfected under applicable law.

### C. Federal Savings and Loan Associations Provisions

Federal Savings and Loan Associations and Federal Credit Unions are not organized under the National Bank Act or under the laws of any State or of the

District of Columbia, and therefore are excepted on that ground irrespective of whether they are "banks" or "banking associations" within the meaning of the statute.

Federal Savings and Loan Associations and Federal Credit Unions, Federal Savings Banks, however denominated, as "banks" or "banking associations", were regulated by the "Office of Thrift Supervision," a division of the "Bank for International Settlement," (Federal Home Loan Bank), created by the "Bank for International Settlement," Federal savings association.  Transactions limited to International Banking.  The following regulations apply:

**12 C.F.R. § 141.11** Federal savings association. The term Federal savings association means a Federal savings association or Federal savings bank chartered under section 5 of the Act.

**12 C.F.R. § 560** Lending and investment.  Borrower is a financial institution or member bank CHAPTER V—OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF THE TREASURY. Authority:12 U.S.C. §1462, §1462a, §1463, §1464, §1467a, §1701j-3, §1828, §3803, §3806, §5412(b)(2)(B); 42 U.S.C. § 4106.

**12 C.F.R. § 560.10**  A Federal Savings Association may make home loans subject to the provisions of §§ 560.33, 560.34, and 560.35.

**12 C.F.R. § 560.11** Loans secured by savings accounts and other time deposits may be made without limitation, provided the Federal savings bank obtains a lien on, or a pledge of, such accounts. Such loans may not exceed the withdraw able amount of the account.

Loans secured by savings accounts and other time deposits, are restricted to insiders, the collateral deposit is restricted to an International Banking Facility ("IBF").

**12 C.F.R. § 204** Regulation D IBF. Individual Insiders Aggregate loans and extensions of credit to each executive officer, director, or principal shareholder and his or her related interests are limited to the single borrower.

**12 USC § 84.**  The loan or advance is secured by a perfected security interest in a segregated deposit account with the lending bank.

**12 C.F.R. § 501.12** A Federal savings association may only invest in these loans if they are secured by obligations of, or by obligations fully guaranteed as to principal and interest by, the United States or any of its agencies or instrumentalities, the borrower is a financial institution insured by the Federal Deposit Insurance Corporation or is a broker or dealer registered with the

Securities and Exchange Commission, and the market value of the securities for each loan at least equals the amount of the loan at the time it is made.

**12 C.F.R. § 501.13** Affirming the Federal Reserve Act, restricted to Chattel Mortgages (non-real property).

### D. Basel Accord III Limited To International Banking

**Publication ID: Fall 2014- BANKING PROVISIONS.** The Office of Comptroller Currency ("OCC") issued conforming amendments to its regulations governing national banks and FSAs to make those regulations consistent with the Basel III Capital Framework. Though The Basel on Bank Supervision ("BCBS") has no legal authority and their mandates are created by membership input. As part of these technical amendments the OCC revised and clarified its regulations governing subordinated debt applicable to national banks and FSAs. Documents issued by the BCBS are available through the Bank for International Settlements Website at http://www.bis.org/

Regulations in reference to the aforementioned quote is inclusive of all of **Title 12 C.F.R.**

## 1. Publication ID: Fall 2014-LENDING LIMITS

12 C.F.R. 159 to 161, Lending and Loan Limit, 12 C.F.R. § 34 Real

Estate Loans for National Banking Associations, and the Home Owner Loan

Act, 12 USC 1442, 12 USC 1462a, 12 USC 1463,12 USC 1463(a)(2), 12

USC 1464, 12 USC 1464(u), 12 USC 1465, 12 USC 1467a, are regulated by

the Basel Accord for International Banking.

Participation of the United States in the Basel Accord Capital

Framework for United States banks, including the Consumer Financial

Protection Bureau Organization for European Community Development, is

through agreements of OECD countries, not applicable in the several states,

limited to insular territory, source; United States signatory agreement.

## 2. Basel Accord III Jurisdiction:

Declarations by certain Member Countries relating to the Convention

of the OECD, Communications by the United States concerning the

Convention on the OECD applies to Puerto Rico to the US Virgin Islands

and to all other territories under US authority and jurisdiction. The OECD

has no legal authority.  Proceedings and all banking provisions, utilizing any

"international agreement", under the color of law, in the several states, is

usurpation of legitimate authority, despotism, and treason against the American people.

### E. The Federal Reserve Act Section 25 "Bank" Restriction

Organizations or corporations operating under section 25 or 25(a) of the Federal Reserve Act, are not banks, cannot receive deposits, and do not do business within the United States, pursuant to Public Law 89-485, July 1, 1966:

> **An Act to Amend the Bank Holding Company Act of 1956, Section 3(c), which states: "Subsection (c) of section 2 of the Bank Holding Company Act of 1956 (12 U.S.C. 1811(c)) is amended to read as follows: "(c) 'Bank' means any institution that accepts deposits that the depositor has a legal right to withdraw on demand, but shall not include any organization operating under section 25 or section 25(a) of the Federal Reserve Act, or any organization that does not do business within the United States."**

*The Federal Reserve Board stated, "The Board has never had to rule on the limited nature of the Federal Reserve Act, being all loans and credit are restricted to "bank affiliates," the issue has never been raised."*

### F. Bank Holding Company

**12 U.S. Code § 1843**, (F) (III) The Term "Bank Holding Company" shall include a bank which (I) is organized solely to do business with other banks and their officers, directors, or employees; (II) is owned primarily by the banks with which it does business; and (III) does not do business with the general public.

"If any doubt remains as to the meaning of the statute, that doubt is removed by the legislative history". *Bank-America Corp. v. United States,* 462 U.S. 122 (1983).

### G. Supervision of U.S. Operations of Foreign Banks and Other International Banking Entities

**Foreign Banking Organizations;** "Many foreign banks have operations in the U.S. These institutions are known in the U.S. bank regulatory community as Foreign Banking Organizations (FBOs). The banking offices of FBOs can generally be divided into bank subsidiaries, branches, agencies, Edge and Agreement Corporations, commercial lending companies, and representative office. Jurisdiction for Foreign Banking Organizations remains in the domicile of origin.

**12 C.F.R. § 250.143,** Member bank purchase of stock of foreign operations subsidiaries.

(d) as part of the original Federal Reserve Act, national banks were, with the

Board's permission, given the power to establish foreign branches. In 1916,

Congress amended the Federal Reserve Act to permit national banks to Invest in

international or foreign banking corporations known as "Agreement" Corporations,

because such corporations were required to enter into an agreement or

understanding with the Board to restrict their operations. Subject to such

limitations or restrictions as the Board may prescribe, such Agreement

corporations may principally engage in International or foreign banking, or

banking in a dependency or insular possession of the United States...

## H. Edge Act Corporations/Foreign Banking Entities

**12 U.S. Code §601**  Authorization; (conditions and regulations) is section 25

of the Federal Reserve Act. Section 25A, added Dec. 24, 1919, ch. 18, 41 Stat.

378, created the Edge Corporations.

### 1. Examples of Edge Act Corporations or Foreign Banking Entities

a. COUNTRYWIDE BANK, FSB, is the purported lender on

Plaintiffs Deed of Trust.

b. RECONTRUST COMPANY, N.A., a Banking Organization, restricted to "foreign" banking, was listed as the Trustee inclusive of all recorded, collateral deposit account.

c. In 2008, BANK OF AMERICA, N.A. ("BOA"), an Edge Act Corporation, not permitted to conduct "banking" in the several states, purchased the failing COUNTRYWIDE Federal Savings Bank, inclusive of all recorded, collateral deposit accounts.

d. THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-HY9, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY9B ("BONYM") as Trustee for August 8, 2016 Credit Bid sale, a Bank Holding Company, is not permitted to conduct "banking" in the several states.

   1) Duetshe Bank, AG The New York Branch is the named "Swap counter Party and Put Counterparty" on the ALT 2007-HY9 prospectus. Deutsche Bank, AG is a "Foreign Banking Organization", not permitted to conduct "banking" in the several states.

**12 C.F.R. § 211.6** Permissible activities of Edge and Agreement Corporations in the United States. (a) Activities incidental to international or foreign business. An Edge or agreement corporation may engage, directly or indirectly, in activities in the United States that are permitted by section 25A(6) of the FRA (12 U.S.C. 615) and are incidental to international or foreign business, and in such other activities as the Board determines are incidental to international or foreign business. The following activities will ordinarily be considered incidental to an Edge or agreement corporation's international or foreign business: (D) Consist of the proceeds of extensions of credit by the Edge or agreement corporation (3) Credit activities. An Edge or agreement corporation may: (i) Finance the following: (A) Contracts, projects, or activities performed substantially abroad; (v) Provide credit and other banking services for domestic and foreign purposes to foreign governments and their agencies and instrumentalities, foreign persons, and organizations of the type described in paragraph (a)(1)(ii)(G) of this section. (4) Payments and collections. An Edge or agreement corporation may receive checks, bills, drafts, acceptances, notes, bonds, coupons, and other instruments for collection abroad, and collect such instruments in the United States for a customer abroad; and may transmit and receive wire transfers of funds and securities for depositors. (v) Act as investment or financial

adviser by providing portfolio investment advice and portfolio management with
respect to securities, other financial instruments, real-property interests, and other
investment assets,(3) and by providing advice on mergers and acquisitions,
provided such services for U.S. persons are with respect to foreign assets only.
(3)For purposes of this section, management of an investment portfolio does not
include operational management of real property, or industrial or commercial
assets.

 **12 C.F.R** Banking Services For Employees.  Provide banking services,
including deposit services, to the officers and employees of the Edge or agreement
corporation and its affiliates; however, extensions of credit to such persons shall be
subject to the restrictions of Regulation O (12 CFR part 215).

 **12 C.F.R. § 211.7** Limited Operations In The United States.  (c) Receipt of
deposits(vi) represents proceeds of collections abroad which are to be used to pay
for goods exported or Imported or for other direct costs of export or import, or
periodically transferred to the depositor's account at another financial institution, or
(iv) represents proceeds of extensions of credit by the Corporation. Such deposits
shall be subject to Parts 204 (Reg. D) and 217 (Reg. Q).

 **12 C.F.R. § 211.105** Acting in the United State as trustee, conversion agent,
and paying agent of securities issued to finance foreign activities and distributed

only outside the United States.  (a) Section 211.5(b)(2) of Regulation K provides

that a corporation organized under section 25(a) of the Federal Reserve Act (an

"Edge corporation") may not "act in the United States as trustee, registrar, or in any

similar capacity, with respect to securities distributed in the United States."(c)

Nothing in section 25(a) specifically authorizes an Edge corporation to act as

fiduciary. In fact, a grant of certain fiduciary powers so far as "necessary" in an

Edge corporation's International Business was deleted from the Edge Act prior to

its enactment as being unnecessary in relation to the purposes for which Edge

corporations were to be organized. It therefore seems clear that an **Edge**

**corporation does not have power generally to act as  fiduciary in the United**

**States.**

(d) On the other hand, a primary Congressional objective in authorizing the

organization of Edge corporations was to facilitate the development of

international and foreign commerce.  It would not therefore seem inappropriate for

Edge corporations to perform in the United States the limited functions connected

with acting as trustee, registrar, and in similar capacities with respect to securities

sold abroad to finance such commerce.  Nor would it seem improper for Edge

corporations, as an incident of their power to receive deposits, to act as paying

agent for such securities, even if the issuer happens to be organized and therefore legally qualified to do business in the United States.

**12 C.F.R. §211.10**   Permissible activities abroad.  (a) Activities usual in connection with banking. The Board has determined that the following activities are usual in connection with the transaction of banking or other financial operations abroad:  (1) Commercial and other banking activities; (2) Financing, including commercial financing, consumer financing, mortgage banking...

## I.  Liability of Directors and Officers of Member Banks

**12 U.S. Code § 503** The private right of action to bring all the crimes states: "If the directors or officers of any member bank shall knowingly violate or permit any of the agents, officers, or directors of any member bank to violate any of the provisions of sections 375, 375a, 375b, and 376 of this title or regulations of the board made under authority thereof, or any of the provisions of sections 217, 218, 219, 220,[1] 655, 1005, 1014, 1906, or 1909 of title 18, every director and officer participating in or assenting to such violation shall be held liable in his personal and individual capacity for all damages which the member bank, its shareholders, or any other persons shall have sustained in consequence of such violation.

**Preemption** [N]either the statute nor the regulations are complete without the other, and only together do they have any force. In effect, therefore, the construction of one necessarily involves the construction of the other." *United States v. Mersky*, 361 US 431, 437, 438 (1959) Emphasis added.

### J.  False Representations as to Liability of United States for Acts of Corporation; Punishment

**12 U.S. Code § 631**, states: *"Whoever being connected in any capacity with any corporation organized under this subchapter, represents in any way that the United States is liable for the payment of any bond or other obligation, or the interest thereon, issued or incurred by any corporation organized under this subchapter, or that the United States incurs any liability in respect of any act or omission of the corporation, shall be punished by a fine or [1] not more than $10,000 and by imprisonment for not more than five years."*

### K. Good Cause Exists for Joinder of Banking Fraud Violation Claims

#### 1.  Violation of 18 U.S. Code § 1005, Bank Entries, Reports and Transactions

"Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) [1] of the Federal

Reserve Act, without authority from the directors of such bank, branch, agency, or organization or company, issues or puts in circulation any notes of such bank, branch, agency, or organization or company; or whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or whoever makes any false entry in any book, report, or statement of such bank, company, branch, agency, or organization with intent to injure or defraud such bank, company, branch, agency, or organization, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, company, branch, agency, or organization, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, company, branch, agency, or organization, or the Board of Governors of the Federal Reserve System; or whoever with intent to defraud the United States or any agency thereof, or any financial institution referred to in this section, participates or shares in or receives (directly or indirectly) any money, profit, property, or benefits through any transaction, loan, commission, contract, or

any other act of any such financial institution—**Shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both**.

### 2. Violation of 18 U.S. Code § 1006, Federal Credit Institution Entries, Reports and Transactions

"Whoever, being an officer, agent or employee of or connected in any capacity with the Federal Deposit Insurance Corporation, National Credit Union Administration, any Federal home loan bank, the Federal Housing Finance Agency… with intent to defraud the United States or any agency thereof… shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

### 3. Violation of 18 U.S. Code § 1341, Frauds and Swindles

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or… affects a financial institution."

### 4. Violation of 18 U.S. Code § 880, Receiving the Proceeds of Extortion

"A person who receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter that is punishable by imprisonment for more than 1 year, knowing the same to have been unlawfully obtained, shall be imprisoned not more than 3 years, fined under this title, or both."

### 5. Violation of 18 U.S. Code § 1957, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, RICO

"(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b). (b)(1) Except as provided in paragraph (2), the punishment for an offense under this section is a fine under title 18, United States Code, or imprisonment for not more than ten years or both…"

## IV. PRAYER FOR RELIEF

Plaintiff prays remedy and relief for the return of possession of her property and damages paid in treble, or more as the jury sees fit to award. The accounting of the case is treble damages based on the amount of $30,400,000.00 escrowed at the

time of credit bid. Treble award prayed for is $91, 200,00.00, Ninety One Million Two Hundred Thousand Dollars usd.

## V.  CONCLUSION

Based on the above legislative and Congressional intent, Plaintiff requests that her Motion for Joinder of Banking Fraud Violations of 18 U.S. Code §1005, Bank Entries, Reports and Transactions; 18 U.S. Code §1006, Federal Credit Institution Entries, Reports and Transactions; 18 U.S. Code § 1341, Frauds and Swindles; 18 U.S. Code § 880, Receiving the Proceeds of Extortion; 18 U.S. Code § 1957, Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity, RICO is granted.

DATED:  June 21, 2018                    Respectfully Submitted,

THE LAW OFFICES OF ANGELA
SWAN, APC

By:

Angela Swan,
Attorney for Plaintiff
Billie Rene` Frances Lillian Powers

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark Joseph Kenney:   mjk@severson.com, mcl@severson.com

Rebecca L Wilson:
rebecca.wilson@kutakrock.com, kathy.powell@kutakrock.com

Robert James Gandy:   rjg@severson.com, rjb@severson.com

Stephen Douglas Britt:   sxb@severson.com, tph@severson.com

Steven M Dailey:
steven.dailey@kutakrock.com, cheri.marten@kutakrock.com, jeffrey.gerardo@kutakrock.com, michelle.west@kutakrock.com, rebecca.wilson@kutakrock.com, wendy.bonsall@kutakrock.com