1  Billie Rene' Frances Lillian Powers
   P.O. Box 1501
2  Newport Beach, California 92659
   949-374-4052
3  Plaintiff Pro Per

4

5

# UNITED STATES DISTRICT COURT
6
# CENTRAL DISTRICT OF CALIFORNIA
7
# SOUTHERN DIVISION – SANTA ANA

8

| | |
|---|---|
| 9  Billie Rene' Frances Lillian Powers | Case No. 8:17-cv-01386-DOC-KES |
|       Plaintiff, | |
| 10      vs. | Assigned to |
| 11 | District Judge: Hon. David O. Carter |
|    THE BANK OF NEW YORK | Courtroom: 9D |
| 12 MELLON F/K/A THE BANK OF | |
|    NEW YORK, AS TRUSTEE, ON | Assigned Discovery |
| 13 BEHALF OF THE HOLDERS OF | Magistrate Judge: Hon. Karen E. Scott |
| 14 THE ALTERNATIVE LOAN | |
|    TRUST 2007-HY9, MORTGAGE | **VERIFIED FOURTH AMENDED** |
| 15 PASS-THROUGH CERTIFICATES | **COMPLAINT** |
| 16 SERIES 2007-HY9; SELECT | CONSPIRACY; VIOLATIONS OF |
|    PORTFOLIO SERVICING, INC.; | HOMEOWNERS BILL OF RIGHTS; |
| 17 BANK OF AMERICA, N.A.; | PROMISSORY ESTOPPEL; BREACH OF |
| 18 MORTGAGE ELECTRONIC | CONTRACT; UNFAIR COMPETITION LAWS |
|    REGISTRATION SYSTEMS, INC.; | |
| 19 COMMONWEALTH LAND TITLE | |
| 20 COMPANY; JON SECRIST; | |
|    NICHOLE CLAVADETSCHER; | |
| 21 THOMAS PEPPERS; and DOES 1 to | |
| 22 10, inclusive, | **DEMAND FOR JURY TRIAL** |
| 23       Defendants. | |

24

25

26

27

28

"Plaintiff apologies to the court for the length of this brief, but she believes she has no choice given her disadvantage in the court system as a pro per. Plaintiff had to show the merits, she may lack procedure but she does not lack evidence supporting her claims and prays this will get us to the jury where it belongs for damages. Plaintiff is perplexed as to why she is having to repeat the evidence when the Defendants themselves claim zero knowledge of the origination of the contract in question, but stand in the courtroom claiming a right to file documents attaching them to it and use said contract uttering false claims to take property. They distance themselves from the liability, but still want to unjustly benefit regardless of the merits of this case proving they have no authority or standing to do so. This is not a frivolous claim, there is nothing frivolous about being made homeless and sustaining severe injuries as Plaintiff has. Please see the merits and overlook procedural mistakes as Plaintiff has done her diggity dog best."

## JURISDICTION

1.     The United States District Courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs…  pursuant to 28 U.S.C. § 1332 (a).  This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v, 19 U.S.C. § 1331, and 28 U.S.C. § 1331.

2.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 22 of the Securities Act, 15 U.S.C. §§ 77k and 77o, and 771(a)(2), 19 U.S.C. § 1331.

## VENUE

3.     Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c).  Many of the acts and conduct complained herein, occurred in substantial part in this District, including the dissemination

and recording of Documents, which contained material misstatements and omissions, claimed of herein.  In addition, Defendants conduct business in this District.

## DEMAND FOR JURY TRIAL

4.     Right to Jury Trial; From 50 F.3d 966, 30 U.S.P.Q.2d 1292, 33 U.S.P.Q.2d 1406,33 U.S.P.Q.2d 1907 In re Lawrence B. LOCKWOOD, Petitioner. Misc. No. 394. United States Court of Appeals, Federal Circuit. Jan. 11, 1995.Order Declining Suggestion for Rehearing In Banc Jan. 11, 1995.Opinion Dissenting from Denial of In Banc Rehearing filed by Circuit Judge Nies Feb. 7, 1995...To determine whether a particular action resolves legal or equitable rights, we examine both the nature of the issues involved and the nature of the remedy sought. Specifically, the test for statutory actions involves two steps:

5.     "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature."

6.     "Chauffeurs, 494 U.S. at 565, 110 S.Ct. at 1345 (quoting Tull, 481 U.S. at 417-18, 107 S.Ct. at 1835-36); see Ross v. Bernhard, 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970). [5] Thus, if a particular action

entails either the adjudication of legal rights, Tull, 481 U.S. at 425, 107 S.Ct. at

1839, or, alternatively, the implementation of legal remedies, Curtis, 415 U.S.

at 195, 94 S.Ct. at 1008-09, the district court must honor a jury demand to the

extent that disputed issues of fact concerning those rights and remedies require

a trial." [6] ...

7.      "Granfinanciera, 492 U.S. at 41-42, 109 S.Ct. at 2790. "The second stage of this analysis [i.e., remedy] is more important than the first." Id. Additionally, both steps must be satisfied. Teamsters, 494 U.S. at 565, 110 S.Ct. at 1345 ("we examine both the nature of the issues involved and the remedy sought"); Tull, 481 U.S. at 417, 107 S.Ct. at 1835 ("the Court must examine both the nature of the action and of the remedy sought"); Curtis, 415 U.S. at 195, 94 S.Ct. at 1009 ("a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law")"...

## **PARTIES**

8.      Billie Rene' Frances Lillian Powers, in *propia persona,* Plaintiff as Real

Party of

Interest and Holder in Due Course, has been injured by the acts and omissions

of the named Defendants, in concert with others yet to be named and

identified,

seeks damages and relief, from the damages caused by Defendants;

9.      THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-HY9, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY9; SELECT PORTFOLIO SERVICING, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;

BANK OF AMERICA, N.A.; COMMONWEALTH LAND TITLE INSURANCE COMPANY; JON SECRIST; NICHOLE CLAVADETSCHER; THOMAS PEPPERS and DOES 1 to 10, inclusive,

10.    Defendant THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-HY9, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY9 ("BONY"), at times relevant to this complaint is an alleged New York corporation, doing business in the County of Orange, State of California.

11.    Defendant SELECT PORTFOLIO SERVICING, INC., at times relevant to this complaint is conducting business in the County of Orange, State of California and is the alleged Mortgage Servicer of the purported contract.

12.    Although previously removed by Court Order of September 19, 2018,QUALITY LOAN SERVICE CORPORATION is at times relevant to this complaint, and is doing business in the County of Orange, State of California, as Trustee.

13.Defendant BOA, N.A., at times relevant to this complaint is in name a National Association bank doing business in the County of Orange, State of California.

14.    Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., at times relevant to this complaint is not registered with the California

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

5

Secretary of State, nor at the time of the alleged CONTRACT, BUT, the entity is doing business in the County of Orange, State of California.

15.     Defendant COMMONWEALTH LAND TITLE INSURANCE COMPANY, at times relevant to this complaint is doing business in the County of Orange, State of California.

16.     Defendant JON SECRIST, an individual, at times relevant to this complaint was doing business in Orange County California as a corporate notary for Bank of America.

17.     Defendant NICHOLE CLAVADETSCHER, and individual, at times relevant to this complaint, is doing business in the County of Orange, State of California, as a Certifying Officer of MERS, a known robo signer.  The National Mortgage Settlement Case with whistle blower Lyn Szysmoniak listed CLAVEDETSCHER as a verified robo signer.

18.     Defendant Thomas Peppers.  Plaintiff is not aware of Peppers whereabouts. Plaintiff adds Thomas Peppers as a defendant at the demand of the Court in the September 19, 2018 order. If he is not included Plaintiff fears the complaint will be rejected, but due to a court order that settled matters with Peppers and Plaintiff in February 2012, Plaintiff agreed to release him with prejudice from any claims arising from his fraudulent taking of her title in October 2009. He returned her title and they settled as agreed. Respectfully, Plaintiff believes

forcing Plaintiff to add him was an error, which violates Plaintiff's first amendment right of contract between two private parties, without third party interloping. During the March 2018 court hearing Steven Dailey, alleged lawyer for The Bank of New York Mellon as Trustee, told Judge Carter that Thomas Peppers had bought Plaintiffs home, after being forced by Judge Carter to verify that as a fact Dailey returned to say that Peppers was not in fact on title. Peppers has not been on title since 2012 and Plaintiff has no need known to add him as a Defendant. (See Exhibit "R")

## STATEMENTS OF FACTS

19. On or about April 13, 2007, Plaintiff executed a document known as a Residential Purchase Agreement and Joint Escrow Instructions respecting my intended purchase of the Subject Property, known at the time as 40701 Ortega Highway, San Juan Capistrano unincorporated, California 92675. Plaintiff maintained sole possession and lived upon the land and home subsequent to the purchase through the filing of the Federal Case in this matter. (now Plaintiff is aware that the actual purchase agreement is for Private Residential Real Property)

20. West Coast Escrow handled the escrow.

21. In the process of the purchase, on or about April 17, 2007, Plaintiff received a document titled "Additional Escrow Instructions" from West Coast Escrow.

The instructions indicated that title was to be vested in BILLIE RENE POWERS solely. (see Exhibit "E")

22. On April 26, 2007, the Seller executed the Original Grant Deed naming Plaintiff as the sole grantee. Thereafter, it was delivered to West Coast Escrow.

23. On May 15, 2007, an Addendum to the Residential Purchase Agreement was prepared indicating Plaintiff as the sole buyer.

24. On May 29, 2007, Plaintiff received 2 documents from West Coast Escrow both of which were titled "Escrow Modification". neither of these documents had any names other than BILLIE RENE POWERS as buyer.

25. Sometime between June 1, 2007 and June 15, 2007, Plaintiff was advised by Countrywide/purported Lender that i no longer qualified for the prospective loans and that a co-signor was necessary. At that time, OVER A MONTH AFTER the Grant Deed was executed and notarized by DeLong through notary Gaznon, my brother-in-law and my sister, Louis J. Hanson and Jacqueline M. Hanson agreed to co-sign.

26. At closing, on July 2, 2007, the Grant Deed was recorded which is a materially altered version of the Original Grant Deed. The Fraud Grant Deed was altered to remove the Plaintiff's name and then insert, the names "Billie Rene Powers", "*Louise* J. Hanson", and "Jacqueline M. Hanson". (See Exhibits "B" and "G")

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

27. The Hanson's asked to be taken off title  right after escrow closed. On July 10, 2007 a new title was recorded excluding them and putting into Plaintiffs LLC, Rancho Sonata LLC , created just to hold property.

28. Prior to August of 2014, Plaintiff attempted to contact Nancy F. Ganzon, the notary who notarized the Original Grant Deed and whose signature and notary stamp appear on the Fraud Grant Deed. At that time she was a stranger to Plaintiff.

29. Sometime in August of 2014, Plaintiff was contacted by the notary, Nancy F. Ganzon, through Facebook message returned. On or about August 27, 2014, Nancy F. Ganzon executed an affidavit wherein she testified that the grant deed was a Fraud Grant Deed, bearing her signature and notary stamp, is not the document that she notarized, but instead is an altered version of the one she notarized. (See Exhibits "B" and "G")

30. On June 27, 2007,  Plaintiff autographed the purported 1st DOT on what she believed to be her own behalf and on behalf of Louis J. Hanson and Jacqueline M. Hanson via 2 powers of attorney. (See Exhibit "A"). The Fraud Grant Deed and the 1st DOT were recorded sequentially on July 2, 2007 as document numbers 2007000417170 and 2007000417171. ( Plaintiff was not aware that she was also attorney in fact for BILLIE RENE POWERS and did not find out until years later that the autograph as done was not legal, Plaintiff should have

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

autographed all as Billie Rene' Frances Lillian Powers as attorney in fact for

BILLIE RENE POWERS. Steven Dailey agreed in his documents to the court

that Plaintiff is not BILLIE RENE POWERS, and does not identify as such but

she does claim to be DBA BILLIE RENE POWERS.

31. In November 2007 Plaintiff paid off the Countrywide Heloc of $170,000.00,

which accounted for 10% of the initial down payment. A reconveyance of

deed of trust was recorded, but no original documents were returned to Plaintiff

as required.

32. On or about January 2008 Plaintiff made contact with Countrywide to seek

assistance following identity theft and theft of bank account, the representative

gave her instructions that Countrywide would only discuss assistance if she

was 3 months delinquent and to stop making payments to discuss options.

33. On or about June 5, 2008 Countrywide caused to be filed the first Notice of

Default. Multiple notices of default and trustee sales were recorded and

rescinded between 2008 and 2010 prior to the assignment caused to be

recorded in October 2010 that Plaintiff was given award of the notary bond for

my fraud claims. (See Exhibit "H"-"K")

34. On or about the end of October 2008 Plaintiffs roommate in the guesthouse

contacted her saying he let a man in the house who said he was the new owner.

He told Plaintiff the man's name was Tom. Plaintiff was shocked a man was let

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

10

into the home while she was gone without her permission and the roommate said he was intimidated as the man had paperwork showing him on title. Plaintiff found that on or about October 2008 an illegal Trustee sale was conducted through Val-Chris Investment stating it was on behalf of Thomas Peppers, the Second Trust Deed Holder. Thomas Peppers had contacted Plaintiff, he said he was aware she must not have known of the foreclosure as he noticed all her things were in the house and nothing was moved, it was obvious her family was still living there. Though she was not late or had no notice of this event a sale was conducted. Plaintiff gave proof of the illegal conduct and Val-Chris Investments reversed the sale and gave title back to Plaintiff.

35. On or about October 2009 another illegal foreclosure, illegal foreclosure sale #2, was held by Thomas Peppers, second trust deed holder, through Val-Chris Investments. Plaintiff did not find out about this event until 2010, she subsequently filed a lawsuit upon an unlawful eviction/foreclosure sale for the fraud upon the court and prevailed in February 2012. Thomas Peppers reconveyed title back to Plaintiff. The second trust deed held by Peppers was settled as agreed and a reconveyance of deed of trust was filed from Thomas Peppers to me. Countrywide told Plaintiff that Peppers attempted and requested to take over the purported first trust deed she purportedly had but they would

not allow a takeover when possible fraud or misrepresentations were present. i have many emails showing these exchanges. (See Exhibit "R")

36. From 2008-2010 2 modifications were done to the purported DOT, though Plaintiff was not on title from October 2009 to February 2012, or the month of October 2008, and was forced to autograph documents while not on title. Plaintiff used her Power of Attorney for Louis Hansen, but without Jacqueline Hanson included or lose her home. Plaintiff told the representatives/agents of BofA/Countrywide that modification was not legal as she had no ability to do it until she got her title back from Peppers. One cannot be in default to an entity or someone they do not owe. Plaintiff was forced to autograph or be kicked out of our home.

37. On October 26, 2010, the Assignment of DOT was recorded purporting to assign the 1st DOT to BONY as Trustee. The Assignment of DOT was purportedly signed by Nichole Clavadetscher in her capacity as a Certifying Officer of Mers. The Assignment of DOT was purported to have been notarized by Secrist, whose notary commission number is 1893949. This was done following several Notice of Defaults and Foreclosure Sale dates prior to this "creation" of an alleged assignment. (See Exhibits "H"-"K")

38. On or about February 2010 Plaintiff called the BofA bank customer service following the cancellation of a bk filed in 2010. She was worried about

foreclosure and was told due to Bankruptcy and discharge of debt from my bk in 2009 they could not ever foreclose though the foreclosure department wanted to. The reports to credit agencies by BofA show this to be the case and showed "settled as agreed" January 2009. Plaintiff was also told that BofA was aware of the Countrywide Hustle, lack of legal standing to proceed due to misconduct and other material issues/defects in the documents that create a lack of standing or worthiness of creditor standing to foreclose.

39. On or about November 16, 2012, Plaintiff initiated a claim with the Notary Bond Company, who provided a notary bond for Secrist. Through her claim, she alleged that the signature for Nichole Clavadetscher on the Corporate Assignment of DOT was not genuine, she was a known robosigner, and therefore, Secrist's representation on the notary acknowledgement, made under penalty of perjury, that Nichole Clavadetscher personally appeared before him, was false, among other material facts to my claim. Plaintiff also claimed that as a BofA bank employee Secrist could not be the notary if in fact he had stocks or shares in the company because he would have a financial interest in the taking back of any perceived asset to the company ledger. In the letter she received from the Bond Co asked her for more information to substantiate the claim, which she provided. Therein, Bond Co stated that it only paid actual

damages with proof of claim and that policy limit was $15,000.00. (See Exhibits "H"-"K")

40. On or about December 6, 2012, Plaintiff submitted a written "Proof of Claim" to Bond Co respecting my claim. On or about February 27, 2013 (after nearly 3 month time to investigate its liability) Bond Co paid Plaintiff the full policy limit of $15,000.00 in settlement of my claim. (See Exhibit "K")

41. On or about  2012 Plaintiff began Title insurer claims with Commonwealth Land Title Insurance Company to assist me to stop the theft of title. She was denied numerous times but in 2014 FNF as attorneys for Commonwealth agreed to hire an attorney for easement issues. The attorneys would not help with the Forged Grant Deed or Landlocked title policy as they said it would mean suing themselves, she would need separate counsel. Although her policy proves the Title insurer had to help with the material alterations of documents, at or prior to the escrow closing title, or due to the  lack of easement she had the door for such slammed in her face by Commonwealth. She did not get what she paid for in title insurance.  Plaintiff attempted to seek separate counsel but she did not have the funds to do it and as it was going against a very large Title Company the attorneys wanted a big retainer, though she was told that she must try at least 3 times to get them to follow the policy as it was standard in the industry that all claims are to be denied 3 times. (See Exhibit "T")

42. On or about April 2012 Select Portfolio Servicing Inc. purportedly became the servicer of record. Plaintiff was not aware of what that meant at the time, but was still in belief that Bank of America held responsibility to the purported account. The purported loan number was changed to an "account" number at that time and Plaintiff started inquiring about the validity of the debt collection activities against me by SPS et al. She never received answers that were accurate or held full disclosure of items needed to validate their claims, in fact, what they sent were the documents of fraud i proved, for instance the Corporate Assignment of DOT that she won notary bond claim on and the Forgery/materially altered Grant Deed.

43. During the year of 2012 to present numerous notices of the forgeries, identity theft, counterfeit securities, misrepresentations of facts and questions of validity of debt to the entities of BofA, BONYM, Countrywide, their affiliates, representatives and associations were made. The agencies and departments of law enforcement and governing departments of finance, CFPB, OCC, FDIC, Treasury, banking, servicing. All attempts to give remedy to the underlying factors of potential fraud in the contract.  Plaintiff gave what amounts to pleadings and begging of assistance to stop the trespass and theft against her family home and remedy the matter outside of forcing her into court. Claims were sent to Commonwealth Land and Title for title insurance to assist. The

public servants have breached their duties to her for not investigating, for

knowing of these crimes and allowing them to continue, for not protecting my

property, life, estate or Private Residential Real Property. Public Servants

knowingly let crimes continue. Over the years evidence has emerged that the

agencies willfully allowed illegal foreclosures as the settlements for fraud and

financial crimes were paid out to the United States for the very essence of the

claims held by homeowners who have been victims of these crimes but not

protected.

44. On or about October 12, 2012 Plaintiff made contact with the Orange County

field office of the FBI.  The lead agent for the FBI mortgage fraud task force,

Thomas Reitz, said he would take any evidence of fraud recorded into the land

records from me, she gave him the evidence of recording fraud. In 2014

Plaintiff was attacked by OC Sheriffs in the OC County Recorder's office at

which time Reitz found she had given a declaration to a private investigator.

Reitz demanded to speak to investigator Jack Suttie at which time Suttie found

Reitz had not done any investigation and literally laughed off her claims. Suttie

told Plaintiff he was shocked at the lack of investigation and the unprofessional

treatment she received.

45. On or about March 2013 the Attorney General Kamala Harris of California's

office agreed to investigate 18 cases of contract fraud gathered and presented

by CJ Holmes of "Home Owners For Justice". The purported deed of trust and
other recorded documents attached to her estate, home and property were
included.

46. In the month of February 2014 Plaintiff spoke directly with Los Angeles
Deputy Attorney General David Peyman regarding the lack of investigation of
the 18 cases full of robosigners, now called "The California 18". He advised
her that it only took one piece of fraud to make the contract void, per contract
law. (Law of Voids) He advised that no more proof would be needed and to
take the first evidence of the contract breach and not continue going down
rabbit holes for further breaches. At this time it was found no investigation was
done as promised by the AG Kamala Harris's office. Peyman said he would
forward Plaintiffs claims to the OCDA but could not promise any assistance
from them.

47. On or about February 2014 Plaintiff participated in the live television
interviews of "The California 18", conducted by "Second Thought
Productions" in Santa Maria California by William Wagener. Evidence was
presented of void contracts of California homeowners with false claims by debt
collectors, robo signing, forgeries and documents fraudulently recorded into the
county recorders offices. This California 18 video link is Candace, member of
the California 18, 38 year retired banker giving evidence of proof. Her

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
17

testimony is heard here: https://www.youtube.com/watch?v=1DCwvVsKskE

The rest of the California 18 interviews are linked here.

https://www.youtube.com/watch?v=Cm80aVPYtIc

48. On February 28, 2014, a Substitution of Trustee, purporting to substitute Quality Loan Service Corporation ("Quality") as a successor trustee to the DOT Trustee was recorded.  Recording was done in Riverside County. This document held a 2013 statement that Plaintiffs home was not owner occupied. Plaintiff had lived on her home since closing July 2, 2007 up to the excessive force lock out on Sept 21, 2017.

49. In March 2014 Plaintiff did an audit and reconciliation of records as the Custodian of Records.  (See Exhibit "X") This document was notarized and lawfully served/sent to BONYM et al and numerous governmental agencies and law enforcement. Plaintiff was attacked in the land records office attempting to file these documents and the identity theft paperwork from the IRS. Plaintiff was refused filing, laughed at and attacked. See this link for the story online: https://scannedretina.com/2014/03/25/orange-county-ca-recorders-office-incident-report/  (the audio deposition of the incident may be available upon request)

50. On September 25, 2014, a Notice of Default on the 1st DOT recorded July 2, 2007, was recorded against Plaintiffs property. This is one of many filed over

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

the years and as the Defendants, their representatives and assigns had in their possession the proof of invalid claims against her this NOD was intentional and malicious to steal my title and possession of my home, private property, land and life.

51. On or about November 2014 Plaintiff filed a document #2014-000511460 into the Orange County Land Records. This document rescinded all previous documents, held a UCC-1 statement and was notarized and Defendants all were legally noticed of the filing. The Orange County Counsel previewed the document and gave permission for the document to be filed. No rebuttals were given by Defendants, no lawsuit filed to rebut the documentation.

52. In April 2015 Plaintiff ran a legal publication in the newspaper regarding proof of the forged grant deed and other legal issues affecting her home, previous filings and affidavits unrebutted by Defendants, her DBA of record her estate and heirs from the false claims of BONYM et al. (See Exhibit "C")

53. In July 2015 Plaintiff recorded a Notice of Default, Document #2015000362976 filed in the orange county land records, against the Bank of New York Mellon et al for failure to cure the fraud and settle the void contract through rescission demands i made and proof of my evidence given in affidavit form and multiple legal notices. The Legal Publication herein was included. A writ of Tort was included for 15.3 million dollars by treble damages of the 1.7

million dollar purchase price of 3 issues, 1. forged grant deed, 2. landlocked

property, 3. void assignment per notary bond won. Although there were many

more documents uttering fraud that could be added she chose those 3 as the

foundation of damages for the breach of contract and cause for rescission. All

parties were noticed by registered mail and leading up to the day of credit bid

through registered mail, fax, email and phone. There was never a rebuttal of the

NOD or facts i presented, they did not file a lawsuit, Defendants proceeded non

judicially with fraud upon the land records they recorded. (See Exhibit "D")

54. On September 30, 2015, a Notice of Trustee's Sale was recorded. The NOTS

purports to avoid requirements to foreclosure based on the property not being

owner occupied, that is nonsense and Plaintiff had maintained possession of the

property and lived on it since closing July 2, 2007 and through the excessive

force swat team lock out of Sept. 21, 2017. Under CAL CIVIL CODE 2953

any contract purporting Non Judicial Foreclosure is void. Plaintiff gave many

notices of cancellation and void. The NOTS is not valid, there was and is no

lawful beneficiary of "Lender" as Holder in due course.

55. On or about October 1, 2015 Plaintiff made contact with Judge Goethals of the

Orange County superior court. She called his clerk asking for assistance fearing

the OC sheriff department. Judge Goethals had been taking the Sheriff and DA

to task for not being honest in a murder case and Plaintiff hoped for help. His clerk took my number.

56. In 2015 it came to Plaintiffs attention that the contract uttered by the cell tower company leasing on her property was a forgery. The company damaged a drainage pipe in about 2013 on our property through passage and she gave a cease and desist until they corrected their actions. An attorney for their company sent her a contract she had never seen and it was an obvious forgery due to notary dates being done before the contract date. Plaintiff would not allow passage until a real contract was negotiated and filed, but they sued and were given an easement without a contract or her present in court.

57. On October 7, 2015 Plaintiffs land was attacked at gun point by the Orange County Swat/helicopter without any warrant, done under the guise of keeping the peace, to escort a cell tower employee onto my land. Although she has never threatened any LEO and has had an Officer Pena agree to do a citizen's arrest for her if there was any further trespass by the cell tower company. Officer Pena was aware Plaintiffs ranch hands carried a weapon but was also aware they were not a threat, only used as protection from predators. But, when another deputy got involved, Deputy Theis, the sheriffs were no longer helping stop the trespass. The sheriff claimed the property was foreclosed upon and the bank owned her home and we were noted as tenants in wrongful possession.

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

21

(Sheriff Hutchens was notified by me in emails and calls to her office of the terror and fear Plaintiff has for the OC department she leads, with claims of gang stalking as they had begun riding in cell tower vehicles helping the cell tower employees trespass.) The Sheriffs forced Plaintiff to allow entry through a road she do not have easement upon, Los Robles. Plaintiffs Electric lines were cut and we were without water or utilities due to the fraud upon our land that day. (Plaintiff had many problems with excessive billing by  SCE to the tune of  $$$$THOUSANDS in excess that took years to settle)

58. On October 7, 2015, as OC Sheriffs warrantless swat team action continued, Plaintiff called Orange County Judge Goethals office again and was directed by his clerk to send him a letter, as he could not speak on the phone to her, regarding the threats and problems she was facing with the OC Sheriffs, illegal foreclosure, forced illegal easement and fraud upon the court. Judge Goethals later read this document in a closed/Dark court with no Plaintiff, Defendant or her present.

59. On October 15, 2015 Plaintiff was called by Orange County Detective Catalano and they spoke of the warrantless attack on her property October 7, 2015 and the illegal foreclosure actions and accountability of law enforcement to stop crimes and be accountable for damages in the event crimes were ignored.

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

22

60. On or about November 17, 2015 at a public Board of Supervisors meeting, Orange County Supervisor Todd Spitzer directed county counsel to reach out to the District Attorney's office. Spitzer promised that he would have the DA Real Estate Fraud division look into Plaintiffs claims through DA Investigator Megan Wagner, specifically named, and a man named just Peter by Spitzer. The DA did not respond as promised. Plaintiff accepted all Board members oaths and bonds as their contract to assist against the fraud stealing homes. Audio of this is available.

61. On or about February 29, 2016 Plaintiff had a third party authorized agent, Keith Pillich, hold a scheduled meeting in Utah with Select Portfolio Servicing Inc. This was the second in house meeting where original documents were to be produced, though they were not. The meeting was to inspect what they said was the original wet ink signature documents. After 2 hours of back and forth in the office, with Plaintiff on the phone and texting with Keith, Scott Hansen attorney for SPS and other reps of the company failed as no original documents could be produced as promised and Scott Hansen told Keith Pillich to have Plaintiff make contact for settlement negotiations. The only documents are digital/alleged copies and stored on their computers.

62. On or about March 2016 Plaintiff opened an escrow with Shamrock Escrow in order to negotiate the settlement as said to do by Scott Hansen of SPS. The

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

23

NOD she filed and further billing rightfully billed by Plaintiff were included and a third party representative, Christine Fitzpatrick, handled the emails between SPS and what was to be the escrow company. SPS responded in receipt but ignored negotiations. Plaintiff believes SPS acted in bad faith never intending to settle, but just to steal our home and land. (See Exhibits "CC"-"HH")

63. On August 8, 2016, a Trustee's Sale was conducted by Quality Loan Servicing Corporation (QLS) and purported Nationwide Posting and Publication, Inc.. Plaintiff had made every attempt through multiple cease and desist orders, phone calls, faxes and emails leading up to the very moment of the credit bid, at which time she was on the phone up to the time of the alleged "sale" with QLS, after speaking with Nationwide Posting and Publication, Inc. Heather and Select Portfolio Servicing, Inc to stop the action. Plaintiff had sent numerous cease and desists from October 2015 and past the Credit Bid. (See Exhibit "AA")

64. on or about October 2016 Plaintiff received the property tax bill created the end of September 2016, over a month past the purported Credit Bid on August 8, 2016, as the property was still in her name, Powers, Billie Rene' Frances Lillian.

65. On or about November 2016 Plaintiff found that QLS claimed that on August 16, 2016 they recorded a Trustee's Deed Upon Sale. The name on the Title is not one on any assignment and VP Gavin Tsang strongly states to me that BONYM does not own the property or any loan on it. The document was filed as an Accommodation Only with no insurance of truth or affect on title. (See Exhibit "Q" and "JJ"

66. On November 11. 2016 Plaintiff sent a letter to OC District Attorney Tony Rackauckas seeking assistance to return her stolen title, asking him to look at the fact she was issued the tax bill received in October and that she knew any recordation of a transfer of deed would possibly entail backdating. He was given the evidence that the purported Trust on the Title did not exist.  Plaintiff also numerous times refreshed his memory on the other notices and affidavits he had received over the years.

67. In January 2017 Plaintiff found a note on a gate from a realtor from Top Producers Realty of Riverside offering her cash for keys. Plaintiff sent the company a demand for proof of representation in a cease and desist letter with a writ of tort for possible damages in the event any action was taken without standing proven. She told them she had no contract with anyone and that she was battling false claims. In the letter the correct mailing address and phone number for contacting her was provided as she made it clear to them no mail

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

25

came to the property and the mailbox was no longer used due to vandalism and removal from the Federal Zip Code program.

68. On June 8, 2017 Plaintiff found eviction paperwork taped to a gate claiming to have served a 3/90 notice for eviction in February 2017, a notice she never saw or received. Plaintiff responded to the information from the Wolf Law Offices and demanded proof of representation and gave information relating to the void Contract. She gave the correct address and her phone number for contact, though none was returned. She cc'd the court on the demand for validation and included the D.A et al.

69. On July 31, 2017 Plaintiff received a call from Sheriff Deputy Theis, he was letting her know she had an eviction on August 6 scheduled and he had taped the writ to the gate. He claimed he called as she most likely did not know of the posting, claiming Plaintiff did not live in her home. Plaintiff told Deputy Theis he was wrong, she never abandoned her home and did live there but did not have any eviction notice. She also told him he was in Riverside attempting to do Orange County service on a road she did not have an easement on, through an Emergency access gate.  She was verbally abused when she told Deputy Theis she knew him to be the one who assisted in the Cell Tower employee trespass and he told to shut my mouth.

70. In June of 2017 Plaintiff was introduced to an attorney, who told her she would file a federal lawsuit to potentially keep me in my home. She called herself Plaintiffs counsel and asked her to attend meetings where she cultivated more potential clients. As the weeks went by Plaintiff kept questioning when the suit would be filed for the void contract, it never was drafted by the attorneys office or filed. The attorney filed a BK 13 to stop Plaintiff from being removed from her home after it was found there had been a writ of possession issued the end of July. Judge Bauer refused to grant a stay and said that BK was not a way to save a home. Judge Bauer said she would allow the Bank to take the house, no matter.

71. On or about August 2017. After the woman calling herself Plaintiffs attorney failed to file a suit, Plaintiff filed a Federal  lawsuit pro per for Breach of Contract not knowing what else to do, case #8:17-cv-)1386-DOC-KES. She filed what was a horribly drafted case, but one that held the truth and proof of the Breach of Contract and injuries Plaintiff sustained.

72. On August 28, 2017 Plaintiff suffered a TIA, mini-stroke and was hospitalized.

73. In August and September 2017, even with the extreme health issues,  Plaintiff filed exparte motions into the Superior court to stop the writ of possession issued without her knowing of any court dates or being present. The woman realtor/representative for Top Producers Realty and process server admitted to

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

27

knowing a false address was used for service and also it was admitted that the ranch hand, Chris Martin, was offered cash for keys and worked with them without Plaintiffs knowledge. He was said not to have given them access to Plaintiffs home though as all the family property was inside, also admitted to on the stand.  The judge ruled for the law firm although Plaintiff brought up he had no subject matter jurisdiction and that no 3/90 notice was ever given to her, that the entity name used for the BONYM trust did not exist and was false, and that no plaintiff appeared in court. He also was told she had NEVER had any NOD or NOS sent to me as required. Plaintiff was the only one with firsthand knowledge present. All The judge cared about were that documents were filed and it was not his place to determine the validity of the contract

74. Plaintiff filed an appeal in the OC Superior court to the UD action on or about September 19, 2017, it was denied due to procedure, not merit.

75. On September 21 2017, at or about 8:50 am, while Plaintiff was on the way to meet a new potential attorney, Richard Snyder, her roommate called hysterical and crying as our home was hit by over a dozen plus sheriffs in sheriffs cars and plain clothed officers in rental cars, accompanied by a helicopter and pointing assault weapons with demands to come out with hands up to execute a lock out. This roommate was denied possession as required by HBOR in a UD hearing in September 2017. Plaintiff does not own guns and the only one who

did is the ranch hand, Chris Martin, who worked with the Attorneys of the Wolf Law Firm and Top Producers Realty of Riverside without Plaintiffs knowledge and he had left in June 2017, though he had not been staying at the home full time for 2 years prior to his final leave. The Sheriffs were aware Martin was not in the home and they assisted in the locking of the doors with heavy chains too. The front security gate was broken as the sheriffs rammed it to enter the property. Plaintiff is not a threat, and never has been, to Law Enforcement and the excessive force she believes was for intimidation and retaliation, to create fear.

76. In October 2017 Plaintiffs then attorney of record, Snyder, made calls for her to access the family property for belongings, but there was no request granted and Plaintiff lost all her family belongings, treasures. At this time she has no idea what condition our home or belongings are in.

77. November 2017 Plaintiff reached out to the investor division of the BONYM for a copy of the IRS 8594, the asset acquisition statement, and it was the VP of BONYM Gavin Tsang who emailed me back telling her that BONYM did not own my property or loan and that BofA, NA was the servicer. (See Exhibits "JJ" and "II")

78. on October 5, 2017 Plaintiff sent Brian Moynihan of BofA an email, followed by a registered mail letter for the information regarding IRS 8594, and the

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

illegal foreclosure held against my property. It is required to answer to and BofA did not respond. (See Exhibit "II")

79. Since the lock out on September 21, 2017 research has found investor documents obtained directly from BONYM which contradict a default and offer a very different foundation of fraud upon the court for BONYM et al misrepresentation and false claims against Plaintiffs property. She has no contract with any of the Defendants.

80. At the TRO hearing in Federal Court on or about November 2017, Judge Carter said he would be the Sledgehammer coming down on any document fraud and that this matter should be settled outside of court, him calling this case "Compensable". Plaintiff does not believe the Defendants care about honest settlements or compensable liability. After court her attorney, Richard Snyder and the defense attorney, Steven Dailey met for discussions of possibly settling as Judge Carter said. But Dailey said his clients were prepared to offer $5,000.00 dollars to settle. Steven Dailey later stated that he has no negotiating authority to settle this case.

81. Attorney Snyder ordered a preliminary F.A.C.T. report on the property for the TRO hearing, but he neglected to use this valuable document. This document would have given the court proof of the need for the TRO needed. Plaintiff

asked him to include it, he said it was not necessary and advised to exclude it. (See Exhibit "Z" F.A.C.T. REPORT)

82. December 21, 2017 Presidential Executive Order Blocking property of persons involved in serious human rights abuse and corruption. https://www.whitehouse.gov/presidential-actions/executive-order-blocking-property-persons-involved-serious-human-rights-abuse-corruption/

83. On or about January 2018 Plaintiff requested a "pay off statement" of account from Select Portfolio Servicing, Inc. They send her a statement as "customer: BILLIE RENE POWERS" with an open account accumulating escrows, insurance, interest. This document proves there was no foreclosure or credit bid. This document is enough to dismiss this case in her favor and award damages for breach of contract. (See Exhibit "GG")

84. In March 2018 there was a hearing with Judge Carter for motions to dismiss, Plaintiff was pro per due. Judge Carter directed her to seek counsel and she told him she would do her best, but finding honorable and competent counsel that will fight the banks is hard. Judge Carter caught Steven Dailey in a lie where by Dailey lied to the court and stated that Plaintiffs home had been sold to a third party, he later had to admit it had not. The name Dailey used in his lie was none other than Thomas Peppers.

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

85. April 2018.  Plaintiff and Valerie Lopez become the owners of the business
    name Nationwide Posting and Publication, Inc. This company had dissolved in
    December 2013, though FATCO continued to utter the name assisting in
    foreclosures, claiming it was a sub corporation of their company as a legal
    publication and auction participant company. The men/women involved using
    this company name during Plaintiffs contested  Trustee Sale action were given
    cease and desist notices and told they were acting in fraud.  Valerie and Plaintif
    were able to secure the company name with assistance from the California
    Secretary of State and prove that the foreclosures this company named
    participated in since dissolution and to date are not lawful as the name was not
    a legally registered name with California. Recontrust Company, N.A. and
    Recontrust Company are also a void on the property as they too were not
    registered with the secretary of state of California other than through Pat
    Briggs, he states he has had nothing to do with any DOT on Plaintiffs property.
    MERS is also a company not registered as required. so 3, three, companies that
    Plaintiff knows of to date, there may be more, are not lawfully registered to
    operate in California but the names uttered by claims of Defendants have
    assisted in stealing the land, home and life through fraud upon the court and
    unclean hands. *CA Rev. And Tax Code Section 23304.1; and CA Corporate
    Code Sect. 2203 and 2105....if the business is not registered in California and
    did not pay FTB Franchise Tax Board it cannot conduct business.(See
    Exhibits "AA,"BB")* 72.

86. July31, 2018 Judge Carter denies Plaintiffs Motion for Civil Joinder of
    Criminal Actions

    based on not seeing how she could bring the case as a private party.

87.    On July 30, 2018 all Defendants distanced themselves from the "origination"

    of the contract, in this case how can any firsthand knowledge to the contract

    existence other than by the Plaintiff? One cannot distance themselves from the

    fact no "lender" is involved and no Defendant is a holder in due course of the

Note or Contract and none have firsthand knowledge of any of the Plaintiffs

documents.

88.     Plaintiff has given enough evidence that any reasonable juror, man or

woman, would see  there is misconduct and/or false claims by Defendants'.

Plaintiff's evidence also provides reasonable reasons for Lawyers who purport

to represent the Defendants to address the false claims and breach of contract

without ignoring the evidence. In addition to this rule, lawyers remain bound by

Business and Professions Code sections 6068, subdivision (d) and 6106.The

California Hearsay Rule of Evidence Code 1200 EC has 30 exceptions and an

attorney speaking for his purported client is not one of them. Plaintiff cannot

cross examine Defendants properly until in front of a Jury of peers to hear the

facts. Jurors will be given sufficient evidence that there is no harmed party

coming forth and also due to hearsay rules of evidence. The Plaintiff is moving

this court to find for the Plaintiff through Plaintiff's firsthand knowledge and

facts.  .

## AFFIDAVITS FILED WITHOUT PERSONAL KNOWLEDGE
## (ROBOSIGNING)

https://www.gpo.gov/fdsys/pkg/CHRG-111shrg65258/pdf/CHRG-
111shrg65258.pdf all 509 page-13...

89. A. Affidavits filed without personal knowledge (robosigning) Affidavits need to be based on personal knowledge to have any evidentiary effect; absent personal knowledge an affidavit is hearsay and therefore generally inadmissible as evidence. Accordingly, affidavits attest to personal knowledge of the facts alleged therein. The most common type of affidavit is an attestation about the existence and status of the loan, namely the homeowner owes a debt, how much is currently owed, and that the homeowner has defaulted on the loan. (Other types of affidavits are discussed in sections II.B. and II.C., infra). Such an affidavit is typically sworn out by an employee of a servicer (or sometimes by a law firm working for a servicer). Personal knowledge for such an affidavit would involve, at the very least, examining the payment history for a loan in the servicer's computer system and checking it against the facts alleged in a complaint. The problem with affidavits filed in many foreclosure cases is that the affiant lacks any personal knowledge of the facts alleged whatsoever. Many servicers, including Bank of America, Citibank, JPMorgan Chase, Wells Fargo, and GMAC, employ professional affiants, some of whom appear to have no other duties than to sign affidavits. These employees cannot possibly have personal knowledge of the facts in their affidavits. One GMAC employee, Jeffrey Stephan, stated in a deposition that he signed perhaps 10,000 affidavits in a month, or approximately 1 a minute for a 40-hour work week.For a servicer's employee to ascertain payment histories in a high volume of individual cases is simply impossible. When a servicer files an affidavit that claims to be based on personal knowledge, but is not in fact based on personal knowledge, the servicer is committing a fraud on the court, and quite possibly perjury.

90.     The 49 State National Mortgage Settlement was to resolve servicing

violations. To review the settlement documents for each servicer, please go to

www.NationalMortgageSettlement.com....."Although the settlement resolves

some violations, the federal government and state attorneys general did not

release all the potential claims against these five servicers. The federal

government and states can still pursue criminal prosecutions for criminal

offenses and violations of the fair lending laws based on discriminatory

conduct. Securitization claims based on the offer, sale or purchase of mortgage securities are not released by the settlement. The states also did not release any potential claims against Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc. or any tax claims relating to real estate transfer taxes. Mortgage borrowers can still file claims on an individual or class action basis."

*McGinnis v. American Home Mortgage Servicing, Inc.*, No. 14-13404 (11th Cir. 2018) Plaintiff does not want more time to pass to get the remedy Plaintiff deserves.  In This case, McGinnis had been awarded her jury win in 2014 and it took 4 years for the appeals court to rule in McGinnis's favor, again. Appeal ruling forced the Defendants in her case to perform and settle the case as she was awarded.  On 2-page 12 paragraph 3 "...Concerns about securitization chain of title also go to the standing question. If the mortgages were not properly transferred in the securitization process, then the party bringing the foreclosure does not, in fact, own the mortgage and therefore lacks standing to foreclose."

91.     Plaintiff has raised triable issues which exposes Defendants' willful and reckless disregards for others which portrays callus and unethical practices contrived through fraudulent Instruments in Court records, without remorse. "While an attorney should represent his client with singular loyalty,

such loyalty does not demand that he act dishonestly or fraudulently; on

contrary, attorney's loyalty to court, as officer thereof, *demands integrity and*

*honesty* in dealing with the court, and *when he departs rom such standard* in

conduct of case, *he perpetrates fraud upon the court." Kupferman v*

*Consolidated Research & Mfg._Corp. (1972, CA2 NY) 459 F2d 1072, 16 FR*

*Serv 2d 160, 19 ALR Fed_747.*

92.    "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals

to "embrace that species of fraud which does, or attempts to, defile the court

itself, or is a fraud perpetrated by officers of the court so that the judicial

machinery cannot perform in the usual manner its impartial task of adjudging

cases that are presented for adjudication." *Kenner v. C.I.R., 387 F.3d 689*

*(1968); 7 Moore's Federal_Practice, 2d ed., p. 512, ¶ 60.23.*

93. Fraud or mistake is extrinsic when it deprives the unsuccessful party of an

opportunity to present his case to the court. [Citations.]  If an unsuccessful party

to an action has been kept in ignorance thereof [citations] or has been prevented

from fully participating therein [citation], there has been no true adversary

proceeding, and the judgment is open to attack at any time. *Bottom v. Bottom*

[Civ. No. 19985. First Dist., Div. Two. Dec. 14, 1962.]

94.    At all times relevant to this complaint, Plaintiff has sought answers from

Defendants to the demands for debt validations and transparency regarding the

documents of the contract as Deed of Trust, Plaintiff autographed on June 27, 2007. The contract was autographed in belief that Plaintiff was entering into a purchase of Plaintiff's  home and Plaintiff entered into the purchase with a $510,000.00 equity down payment. Plaintiff believes based on acquired evidence and based on contract, lending and financial laws that the contract is void ab initio as it never existed in law (anything done in fraud is void ab initio of no legal ) and that Plaintiff's property was paid and settled at closing through credits and an equitable exchange of the note. Plaintiff now knows that there is nothing lent to her, but that the banks actually acted as brokers at the Fed Window taking Plaintiffs own credits.

95. The First National Bank of Montgomery v. Jerome Daly known as "The Credit River Decision from 1968". A Minnesota Trial Court's decision holding the Federal Reserve Act unconstitutional and VOID; holding the National Banking Act unconstitutional and VOID; declaring a mortgage acquired by the First National Bank of Montgomery, Minnesota in the regular course of its business, along with the foreclosure and the sheriff's sale, to be VOID. Full report: http://worldnewsstand.net/money/mahoney-introduction.htm.  Plaintiff will demonstrate to the jury that not only have the Defendants breached the contract, but it never existed in law and that through conspiracy the Defendants orchestrated the unlawful taking of Plaintiffs land, home, title, equity and

family belongings through unclean and malicious intent to harm Plaintiff and unjustly enrich themselves.

**CONVERSION**

96.     Conversion is an intentional tort consisting of "taking with the intent of exercising over the chattel an ownership inconsistent with the real owner's right of possession.  In the United Kingdom this is known as "strict liability" it's equivalent's in criminal law; include Larceny, Theft & Criminal Conversion (lesser than theft & larceny) traditionally, a conversion occurs when chattel (property) is lost, then found by (assigned by) another who appropriates it for its own use; without legal authority to do so. This is misused or misappropriated unjust enrichment; theft is also conversion.

97.     For a conversion, there must be an element of voluntary dealing with another's property, inconsistently with their rights.  Elements of conversion; 1) Intent to convert the tangible or intangible property of another's to one's own possession and use 2) The property in question is subsequently converted; was alleged a mortgage loan for a home; was converted or originated as a security for a MBS/REMIC.

98.     The CONTRACT was alleged to be packaged into a security and identified in the ALT 2007-HY9. Plaintiff has proof there was no assignment of Plaintiffs property into this purported trust. (See Exhibit "H"-"K", "M") Without consent

from or knowledge by the Plaintiff, the alleged borrower was converted from a borrower to a security issuer and the investors/depositors were converted from part owners in a VALID REMIC POOL TRUST to a buyer of a security.  As the real purpose of the alleged loan for the Mortgage Transaction Agreement MTA, was in fact a security investment scheme, wherein the intermediaries took everything; the tender/credit, the property, gains from the credit default swaps, insurance (from default insurance that every single-family home under HUD has under the Guaranteed Home Loan Program under President Ronald Reagan) and government bailouts. Leaving the Plaintiff and Investors with holding empty bags of nothing but debt and taxes that were originated by Countrywide, who had no skin in the game to begin with.

99.    Conversion to Securitization is the act of producing an investment vehicle (SPV Special Purpose Vehicle) of MBS using the borrower's Mortgage Note as the underlying corpus, as collateral.  Kremen v Cohen 325 f. 3d 1035 (9th Cir 2003) Both tangible and intangible property can be the subject of a claim for conversion, under United States laws. 1704 Baldwin v Cole; "The very denial of goods to him that has a right to demand them is an actual conversion and not only evidence of it"; but all of the personal family belongings and furnishings right down to Plaintiff's panties that were stolen (converted).  Under *dentinue,* conversion allows for damages and the return of property.

100.    Plaintiff brings proof that she has no contract as the Congressional Regulation are clear and that the Banks have no authority to lend credit or to do business within the several States.  Plaintiff brought a motion for Civil Joinder of Criminal Actions that states these Laws, Regulations, Codes, Statutes and facts in law with merit. See her CIVIL JOINDER OF CRIMINAL ACTION for Congressional intent and regulations. The contract was VOID when the conversion took place, which was a Breach of Contract.

101.    For the last 100 years Congressional Regulations have stood, they are clear that the intent of Congress is to protect the people from foreign invasion and unlawful banking, not to allow foreign usurpation on American soil. In 1932 Congressman McFadden gave a speech that has gone down in history and is included in the Joinder documents recorded herein this case.

102.    Plaintiff has, at all times, maintained Plaintiff cannot be in default or owe someone with false claims attempting to collect a debt Plaintiff does not owe. the party "seeking to enforce the note must be the holder of the note and not merely the assignee of the right to bill and collect the debt, section 559.715 is inapplicable." Bank of N.Y. Mellon v. Welker, 41 Fla. L. Weekly D1478 (Fla. 2d DCA June 24, 2016); see also Hagstrom, 41 Fla. L. Weekly D1671 (Fla. 2d DCA July 20, 2016).  Select Portfolio Servicing, Inc. is merely the "servicer" and at no time was the genuine contract able to be produced, only digital

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
40

computerized documents exist, hence the escrow opened to negotiate in good

faith, which SPS failed to do. (see Exhibits "CC"-"GG")

   At all times relevant to this complaint Plaintiff owns and had possession of the
Property located in San Juan Capistrano unincorporated, Orange County,
California State unincorporated, bearing assessor parcel number 125-120-27 and
formerly known as 40701 Ortega Highway, San Juan Capistrano, California 00000
rural ("Property").  And since Title CANNOT pass by fraud by law Plaintiff still
holds title to her property. (The UCC at Section 2-401 provides that "title to goods
cannot pass under a contract for sale prior to their identification to the contract."
(In a lease, of course, title to the leased goods does not pass at all, only the right to
possession and use for some time in return for consideration. Uniform Commercial
Code, Section 2A-103(1)(j).) So identification to the contract has to happen before
title can shift. Identification to the contract here means that the seller in one way or
another picks the goods to be sold out of the mass of inventory so that they can be
delivered or held for the buyer. Article 67 of the CISG says the same thing: "[T]he
risk does not pass to the buyer until the goods are clearly identified to the contract,
whether by markings on the goods, by shipping documents, by notice given to the
buyer or otherwise."

 see link https://saylordotorg.github.io/text_law-of-commercial-transactions/s21-
title-and-risk-of-loss.html)


103.    In January 2008 Bank of America purchased Countrywide Financial.

Substantially all of COUNTRYWIDE FINANCIAL's assets were to have been

transferred to Defendant BOA on November 7, 2008, in connection with

COUNTRYWIDE FINANCIALS integration with Defendant BOA'S other businesses and operations.  COUNTRYWIDE FINANCIAL ceased filing its own financial statements in November 2008, and instead its purported assets and liabilities have been included in Defendant BOA'S financial statements.

104.     April 26, 2007 Seller, Roger De Long, executed a Grant Deed naming Plaintiff as the sole grantee and deposited the Grant Deed into escrow. That Grant Deed was materially altered and as the attached exhibit is an affidavit of timeline it will detail the events that are known as damages to the Plaintiff. These damages arise from a void contract, forged Grant Deed, Void Corporate Assignment of Deed of Trust and Lack of Standing to enforce a contract.

On July 2, 2007 Plaintiff closed escrow on her home, she caused $510,000.000 to be her "down payment" of equity and had what was told to her by COUNTRYWIDE BANK, FSB to be a $1,190,000.00 first loan balance on a $1,700,000.00 purchase price of the land and structures as well as water rights. After an audit showed that the documents Plaintiff held had a "0" principal balance (see Exhibit "S"), Plaintiff began asking questions and as she asked questions the answer became clear, not one party she was confronted by could prove standing to collect any debt from her and not one could actually say who the current "Lender" is who authorized any auction of her home.

105.     Lack of Standing to enforce a contract, also proves the wrongful foreclosure claim that Plaintiff believes Judge Carter errored on when he dismissed Plaintiff's wrongful foreclosure claim with Prejudice. Plaintiff is informed and believes, and thereon alleges, that in order to make debt collection claims, a person or entity must have standing.  That is why those who claim to be the Holder in Due Course must prove they have received all conveyances of title by the Trust, through Assignments by hand delivery of the said wet ink signature note for deposit. The fact that Bank of America bought Countrywide Financial Services is that BofA also took on the liability of the contracts they bought. (See Edward Davidson vs Sterus et al. case #D071502 decision filed on appeal March 13, 2018...Division One California Court of Appeal, mortgage lenders and servicers can, at least under certain circumstances, be "debt collectors" under the California Rosenthal Fair Debt Collection Practices Act, frequently referred to as the "Rosenthal Act."...)

106.     Plaintiff contends that Defendant SELECT PORTFOLIO SERVICING INC as alleged beneficiary through their hired Trustee known as QUALITY LOAN SERVICING CORPORATION, and through their claims that their California legal counsel told them to go ahead with the taking of Plaintiffs title, did not have the standing to take Plaintiffs Property.

107.   Defendants cannot show any authority of lending of credit, and did not deny

this fact in court on July 30, 2018, in fact Defendants distanced themselves

from a "loan" origination saying they had nothing to do with originating any

"loan" with the Plaintiff.  Defendants cannot show any consideration paid by

purported lender COUNTRYWIDE BANK, FSB., whatever entity is supposed

to be now at this stage, or authority to have the alleged lender

COUNTRYWIDE BANK FSB pass a void purported contract off to another

entity, claim duly perfected title, nor can they show a complete chain of valid

assignments or transfers of the Note together with the purported contract known

as the Deed of Trust along the chain of securitization.  The only real parties of

interest can be the parties who entered into the original MTA, where that wet

ink signature note is the evidence of all other transfers of interest, rights and

conveyances of title were originated

## CAUSES OF ACTION
## (Against All Defendants omitting THOMAS PEPPERS)

## COUNT I:  CONSPIRACY

**108.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs

and exhibits as though fully set forth herein.This claim is predicated upon

Defendants' strict liability for material misstatements and omissions in the

mortgage loan transfer to a REMIC in the securitization process, governed by a

PSA, a Trust Agreement filed under penalty of perjury with the United States Securities and Exchange Commission.

    a. At no time did COUNTRYWIDE BANK FSB have authority to lend credit per Congressional Regulation. (INSERT) and as alleged successor to the purported contract Bank of America, NA as master servicer had a fiduciary duty to stop false claims and have their servicer known as Select Portfolio Servicing, Inc. settle as agreed in good faith through negotiations open at the time of the taking of Plaintiffs property. Defendants have a duty to act in law and not under the color of it through procedurally recording documents knowingly causing false claims without authority to do such.

    b. Defendants claim to be acting on behalf of a contract that systematically ignored underwriting standards imposed by state and federal laws in issuing the mortgages pooled into the REMIC. Reference the 49 State National Mortgage Settlement. See link; http://www.ncsl.org/research/financial-services-and-commerce/national-mortgage-settlement-summary.aspx

    c. Defendants promoted "unfair" claims of loans under Federal and California law and concealed problems with contracts known as Deeds of Trusts dressed as mortgages, failing to take sufficient steps

to avoid placing problem contracts in securitization pools. In fact the actual inclusion into the Pooling and Servicing Agreements were to hold the collateral to the alleged "loans" which we now know are the required "COLLATERAL DEPOSITS" equal to 100 percent of the credit lent, not the residential real property of Plaintiff. We know that the alleged Lender is nothing more than a broker usurping the US CITIZENS accounts at Federal Reserve Window claiming to be a lender when in fact no money or cash is lent, there is no consideration or penny invested by purported lenders or their servicers, representatives or assigns. The SPV is being disguised intentionally, as it appears to be Public Transmitting Utilities/US CITIZENS/LEGAL NAME ENTITIES that are the Special Purpose Vehicles that American wo/men are issuing by their signatures for authorization to their private credit (the people are the credit that backs the nation, see Congressman McFadden's speech Exhibit " "). The unfair business practices included:  Telling those seeking to buy a home or land that they were "borrowing money" from COUNTRYWIDE BANK FSB, or other alleged lenders, to buy their new home and land, when in fact there is no money lent, it is all credit and only book entries, the fact is DEFENDANTS have zero skin in

the game, no investment of money. Barney Frank, former chairman of the House Financial Services Committee, said, "The loophole has eaten the rule, and there is no residential mortgage risk retention." He made this quote in response to; See link: https://www.nytimes.com/2014/10/24/business/banks-again-avoid-having-any-skin-in-the-game.html "In 2011, when the regulators first proposed rules to carry out the risk-retention law, the idea was that there would be a two-tier mortgage market. Mortgages deemed to be Q.R.M. would be characterized by substantial down payments that would minimize the risk of default, while the other tier would include riskier mortgages — although still safer than some of the ridiculous mortgages that characterized the boom — and could be securitized only if those responsible for either the loans or the securitizations kept some of the risk. But when the final rule was adopted this week, that idea was dropped."... "Since securitizers won't be required to retain risk for private-label securities," said Sheila Bair, a former chairwoman of the Federal Deposit Insurance Corporation, "investors will continue to be reluctant to buy their securities. So the government-backed ones will remain pretty much the only game in town. Of course, taxpayers will be holding the bag if, or when, there is

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

47

another downturn."  In the final weeks before the rules were formally

issued, it was clear that the lenders had pretty much won all the

arguments on residential mortgage lending. But there was an intense

lobbying campaign from lenders to eliminate or minimize risk-

retention requirements on another form of securitizations, called

collateralized loan obligations, or C.L.O.s. That effort failed, in part

because the loans making up C.L.O.'s are often of low credit quality

and in part because they reminded regulators of collateralized debt

obligations, which played a significant role in the financial crisis.

Wall Street's response to that loss was to warn that loans might not be

made if those making them had to bear the losses if the loans went

"bad"".  Plaintiff reminds the court that a 100% Cash Collateral

Deposit isrequired on all credit transactions, not just some, but all and

in fact they do not exist. See CIVIL JOINDER OF CRIMINAL

ACTIONS documents. "Lenders" have zero skin in the game, not one

penny invested.

d. Plaintiff has demonstrated herein how all Defendants conspired

against Plaintiff, inflicting continuous emotional distress, for one

cause, "economic gain."  The scheme consisted of Conversion, many

attempts to take Plaintiff's home, violating Plaintiff's rights,

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

committing trespass on Plaintiff's land and person, committing

identity theft, committing financial crimes against Plaintiff, despite

the threat of becoming physically harmed, threats of arresting Plaintiff

for trespass on Plaintiff's own property and making Plaintiff

homeless.  Defendants' took all that was not theirs to take from

Plaintiff and her heirs. This is the very act of Conversion which is a

TORT. Defendants' acting in concert as they held and could see the

evidence that the Plaintiff provided and validated through Notary

bond claims, notary affidavits, legal publications Plaintiff caused to

run and a notice of default Plaintiff filed against them.

e.  Each Defendant, by virtue of his and/or her control, ownership,

offices, directorship, and specific acts was, at the time of the wrongs

alleged herein and as set forth herein, a controlling person of

Defendant BOA, N.A. within the meaning of Section 15 of the

Securities Act.  Defendants' had the power and influence, and

exercised the same to cause Defendant BOA to engage in the acts

described herein.  BOA has been the master servicer as evidenced by

Gavin Tsang as fact.

f.  Plaintiff has raised triable issues which exposes Defendants' willful

and reckless disregards for others which portrays callus and unethical

practices contrived through fraudulent Instruments in Court records, without remorse. "While an attorney should represent his client with singular loyalty, such loyalty does not demand that he act dishonestly or fraudulently; on contrary, attorney's loyalty to court, as officer thereof, **demands integrity and honesty** in dealing with the court, and **when he departs from such standard** in conduct of case, **he perpetrates fraud upon the court.**" *Kupferman v Consolidated Research & Mfg. Corp. (1972, CA2 NY) 459 F2d 1072, 16 FR Serv 2d 160, 19 ALR Fed 747.*

g. Plaintiff contends Plaintiff has had no contract with the Defendants. Further, Hearsay of Defendants Counsel and any others who have no connection to the origination of the purported loan do not have any standing to bring any claims when in fact the underlying contract is deemed void by law. Defendants Select Portfolio Servicing, Inc, MERS and BANK OF NEW YORK MELLON AS TRUSTEE are all using the same lawyer. Plaintiff questions conflict of interest. It is a conflict that the Bank of New York Mellon as Trustee claims it has no ownership of the property or a loan against the property, yet Select Portfolio Servicing, Inc says it took the property via a credit bid through the Trustee it hired for the BONYM, and then Mortgage

Electronic Registration System Inc. purported to be the beneficiary went inactive on the supposed account years ago after the void assignment, using robosigner Nichole Clavendetshcer as an alleged MERS employee, was filed and has a conflict of recording documents . As all three are claimed by Plaintiff to be in collusion through a conspiracy to take Plaintiff's property it is Plaintiffs belief this association of counsel makes conspiracy factual.

109.    Defendants BANK OF AMERICA, N.A., JON SECRIST, and NICHOLE CLAVENDETSHER have the same lawyer. Plaintiff questions the conflict of interest. Plaintiff is aware that Jon Secrist sued Bank of America, N.A.  for Assault, Libel and Slander in 2016. The Case #2:16-cv-00067 California Central Court with Judge Wu presiding. The summons and complaint are sealed and the case settled in one month. Now he is using a lawyer representing Bank of America N.A, him and robo signer Clavendetsher. Clavendetsher has a conflict with Secrist as it was him falsely notarizing her name that caused his notary bond to be taken in insurance settlement to me. This alleged representation alludes to confirming conspiracy as the Defendants have conflict coming into this case with each other. As all three are claimed by Plaintiff to be in collusion through a conspiracy to take her property it is Plaintiff's belief this association of counsel makes conspiracy factual.

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
51

110.    When Quality Loan Servicing Corporation was a Defendant they filed to join Legal Representation with Commonwealth Land Title Insurance Company. Plaintiff contends this is a conflict as Commonwealth Land Title Insurance Company has a duty by contract to the Plaintiff to protect her title, not conspire with a Trustee to cover their false claims to assist other Defendants in taking her title through a void contract.

111.    Plaintiff found that Commonwealth Land Title Insurance Company as First National Fidelity "FNF" & as their subsidiary Black Knight Financial, is a stock holder in Crown Castle Communications. Crown Castle and Global Signal Acquisitions merger was just recently completed.  Crown Castle Communications is the party who allegedly had a cell tower contract to lease land from the Plaintiff. Plaintiff found the forged cell tower contract in 2014 and confronted FNF regarding the refusal to honor the Title Policy she bought. Plaintiff sees the stock ownership as a conflict of interest as FNF the Stock Holder as she was refused coverage that would have allowed her to remove the cell tower and believes that Commonwealth's interest in the Stock was a conflict that created collusion between the entities against Plaintiff. (See Exhibits "S-W" and "X")

112.    Plaintiff believes she can show a jury the two entities conspiring helped cause the refusal to honor her insurance. Plaintiff never got an answer to her request for transparency. (See Exhibit "D " ) See links:

https://finance.yahoo.com/news/crown-castle-announces-third-quarter-201500820.html ; just today researching investors Plaintiff found that **Bank of America** is a big investor in Crown Castle**https://finance.yahoo.com/quote/CCI/holders/** and on page 36 of this link **Bank of America N.A.** is also involved **http://investor.crowncastle.com/static-files/1f7029c3-c921-4379-bd4c-466cbe622095**;

http://investor.crowncastle.com/news-releases/news-release-details/crown-castle-present-bank-america-merrill-lynch-2018-media ; Crown Castle Overview http://investor.crowncastle.com/encrypt/files?file=nasdaq_kms/assets/2018/08/01/1 1-36-12/CCI_Presentation_July_18.pdf&file_alias=33846

113.    On or about 2014 Crown Castle became a Real Estate Investment Trust http://investor.crowncastle.com/news-releases/news-release-details/crown-castle-convert-reit

   **About Fidelity National Financial, Inc.** Fidelity National Financial, Inc. is organized into

two groups, FNF Group (NYSE: FNF) and FNFV Group (NYSE: FNFV).  FNF is a leading provider of title insurance, technology and transaction services to the real estate and mortgage industries.  FNF is the nation's largest title insurance company through its title insurance underwriters - Fidelity National Title, Chicago Title, **Commonwealth Land Title**, Alamo Title and National

Title of New York - that collectively issue more title insurance policies than any other title company in the United States.  FNF also provides industry-leading mortgage technology solutions and transaction services, including MSP®, the leading residential mortgage servicing technology platform in the U.S., through its majority-owned subsidiaries, Black Knight Financial Services and ServiceLink Holdings.  FNFV holds majority and minority equity investment stakes in a number of entities, including American Blue Ribbon Holdings, LLC, Ceridian HCM, Inc. and Del Frisco's Restaurant Group, Inc. Plaintiff claims that the Defendants conspired together, created false documentation of taxable events as nontaxable and in return unjustly collected assets without lawful standing or lawful sale. (See Exhibit "Q" as an instance of tax avoidance)

114.     The 49 State National Mortgage Settlement of the 5 big servicers included IRS transfer tax violation facts which were left open with ability for the government to readdress at any time. To review the settlement documents for each servicer, go to link www.NationalMortgageSettlement.com . Although the settlement resolves some violations, the federal government and state attorneys general did not release all the potential claims against these five servicers..."or any tax claims relating to real estate transfer taxes. Mortgage borrowers can still file claims on an individual or class action basis. Violations of the IRS have directly

affected the Plaintiff as the Defendants as a whole got around the law by way of "weaseling" in a void contract uttered as nontaxable exchanges and more unknown to Plaintiff at this time. (See Exhibit "Q") ,the purported "Notice of Trustee's Deed Upon Sale", it shows zero taxable event when in fact the event is well over the $1.190,000.00 void contract figures due to alleged increase by fees and escrows that Plaintiff does not owe. The document is also only recorded as an accommodation without legal insurance of truth or effect on title. And, see Exhibit "GG", "payoff statement of SPS as servicer with an open account showing BILLIE RENE POWERS as their "customer" when in fact the Defendants allege an August 8, 2016 credit bid to the Bank of New York Mellon as Trustee, though BONYM denies it holds any right of title to the property (See Exhibit "JJ"). Plaintiff sought discovery of IRS claims by Defendant Bank of America, for instance, the 8954 Form requested and unanswered or presented by Bank of America to her. (See Exhibit "II" request for required IRS form 8954 to Bank of America).

115.    Defendants acted in concert and conspired together to commit the tortuous acts described herein, as result from the conversion of the contract with COUNTRYWIDE BANK, FSB.  Accordingly, these Defendants should be held jointly and severally liable for any damages awarded to Plaintiff as a result of this action.

116. For this ponzi scheme to work all involved, from the notaries, such as JON SECRIST, and Robo signers, such as NICHOLE CLAVENDETSCHER [T. Sevillano/Ahmad Afzal], to the parties recording the documents for the alleged lender as beneficiary, SELECT PORTFOLIO SERVICING, INC, MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC, their assigns or representatives, must stick together and protect each other's interest in the taking of the properties to be perceived as lawful when in fact the conspiring in this case proves sloppy and full of material facts of void.

## COUNT II:

**VIOLATION OF HOMEOWNER'S BILL OF RIGHTS (HBOR)**
**AS IT RELATES TO ONLY THE BANK OF NEW YORK MELLON**
**F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF**
**THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-HY9,**
**MORTGAGE PASS-THROUGH**
**CERTIFICATES SERIES 2007-HY9; SELECT PORTFOLIO**
**SERVICING, INC.;**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

117.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. The Three Defendants, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON

BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-HY9, MORTGAGE PASS-THROUGH

CERTIFICATES SERIES 2007-HY9; SELECT PORTFOLIO SERVICING, INC.;

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. have violated this bill.

118.    The national mortgage settlement was only applicable to the five settling banks and their customers; the Homeowner Bill of Rights extends the reforms addressed in the national mortgage settlement to almost all mortgage lenders and servicers that conduct foreclosures in California. Borrowers will have authority to seek redress of "material" violations of the new foreclosure process protections. Injunctive relief will be available prior to a foreclosure sale and recovery of damages will be available following a sale. (AB 278, SB 900).

Homeowner's may sue the lender or servicer for material violations of certain sections of the California Homeowner Bill of Rights. Potential relief includes:

- injunctive relief (prior to the recording of a trustee's deed upon sale), or
- actual economic damages if the trustee's deed upon sale has already been recorded.

In addition, if the court finds that the violation was intentional, reckless, or resulted from willful misconduct by a loan servicer or lender, the court may

award the borrower the greater of treble actual damages or statutory damages of $50,000.

119.   California Code of Civil Procedure, Section 2923.7 states, upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer must promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.  The "single point of contact" must be either an individual or team of personnel each of whom is knowledgeable about the borrower's situation and has the ability and authority to carry out specified types of activities relating to the borrower's situation such as ensuring that the borrower is considered for foreclosure prevention alternatives offered by or through the mortgage servicer and informing the borrower about the status of his or her application.

120.   Upon Plaintiff's request to Select Portfolio Servicing, Inc. of a foreclosure prevention alternative, she was not provided a "single point of contact" who at any time knew her case or her issues. Plaintiff was passed to the Ombudsman's office and still found lack of knowledge or follow through to help her. Plaintiff was promised documents and when it was found there were no genuine documents with wet ink signatures to produce SPS attorney Scott Hansen entered into a verbal contract with Plaintiff to negotiate and settle the matter.  Plaintiff opened an

escrow to settle as requested by SPS believing that the fraudulent documents would be cured by settlement. (see exhibit "D", "CC,DD,EE,FF,GG, HH ")

121.    Prohibition on "Robo signing", California Code of Civil Procedure, Section 2924.17 says that declarations recorded pursuant to Sections 2923.5 or 2923.55, notices of default, notices of sale, assignments of deeds of trust, and substitutions of trustee recorded in connection with a non-judicial foreclosure, and declarations filed in court with respect to any foreclosure proceeding must be accurate and complete and supported by competent and reliable evidence. If a Contract is breached it is void and unenforceable, leaving no standing for a party to pursue the contract.  Before recording any of those documents, the mortgage servicer must review competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information. Select Portfolio Servicing, Inc. was negligent at best and intentionally deceptive to causing severe injury to Plaintiff. Robo-signing.  Defendants Jon Secrist and Nichole Clavendetscher conspired and continue to conspire to use a void assignment with robo signed signature of Clavendetscher as standing to enforce the void contract.  Jon Secrist worked for Bank of America as a notary, also in the bankruptcy division.  His name was used to create a void "Corporation Assignment of Deed of Trust" against Plaintiffs property. Plaintiff found robo-signer Nichole Clavendetscher on the document, found misspellings," MERS" misidentified, false

claims of Clavendetscher being a MERS employee and based on the fraud and

forgeries filed a notary bond claim against Secrist. Plaintiff prevailed and robo-

signing was a direct claim she made against Clavendetscher based on the list used

by Lyn Szysmoniac on the The 49 State National Mortgage Settlement. violations

included, among other laws, the Unfair and Deceptive Acts and Practices laws of

the Plaintiff States, the False Claims Act, the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989.

See link; http://www.ncsl.org/research/financial-services-and-commerce/national-
mortgage-settlement-summary.aspx

> The Settlement addressed the crime of robosigning, among many other
> misconduct and crimes claimed herein. Additionally; Robo-Signing, Chain of
> Title, Loss Mitigation, and Other Issues in Mortgage Servicing: Hearing Before
> the Subcomm. on Hous. and Comty. Opportunity of the H. Fin. Servs. Comm.,
> 111th Cong. 105, at 18 (2010) (statement of Adam J. Levitin, Associate
> Professor of Law, Georgetown University Law Center) [hereinafter Levitin
> Testimony],
> http://financialservices.house.gov/Media/file/hearings/111/Levitin111810.pdf.
> "The chain of title problems are highly technical, but they pose a potential
> systemic risk to the US economy. If mortgages were not properly transferred in
> the securitization process, then mortgage-backed securities would in fact not be
> backed by any mortgages whatsoever. The chain of title concerns stem from
> transactions that make assumptions about the resolution of unsettled law. If
> those legal issues are resolved differently, then there would be a failure of the
> transfer of mortgages into securitization trusts, which would cloud title to
> nearly every property in the United States and would create contract
> rescission/putback liabilities in the trillions of dollars, greatly exceeding the
> capital of the US's major financial institutions

122. Plaintiff won Secrist's notary bond claim for fraud and forgery on the Oct

2010 Corporation Assignment of Deed of Trust (See Exhibits "H-K"), also the

other assignment for MERS by Ahmad Afzal (See Exhibits "N") This fact and the

fact it was over 3 years late, makes that assignment VOID, not voidable. <u>BofA</u>

<u>National Association v Bassman FBT, LLC., et al. 981 NE 2d 1, 7 (Ill. App. Ct.</u>

<u>2012)</u> In this case it was cited "However, a borrower may raise a defense to an

assignment that would render it absolutely invalid, that is, VOID", id at 735-36;

<u>Tri-Cities Construction, Inc. v American National Insurance Co., 523 S.W. 2d 426,</u>

<u>430 (Tex. Civ. App. 1975)</u> "The law is settled that the obligors of a claim may

defend the suit brought thereon on any ground which renders the assignment

VOID, but may not defend on any ground which renders the assignment voidable

only, because the only interest or right which an obligor of a claim has in the

instrument of assignment is to insure himself that he will not have to pay the same

claim twice." See also <u>Greene v Reed, 486 p. 2d 222, 224 (Ariz. Ct. App.</u>

<u>1971)</u>;CF.<u>Young v Chicago Federal Savings & Loan Ass'n, 180 Ill.App. 3d 280,</u>

<u>284 (1989)</u> "If a valid assignment is effected, the assignee requires all of the

interest of the assignor in the property that is transferred." <u>O'Neill v. De Laney,</u>

<u>92 Ill.App.3d 292, 297 (1980)</u> (holding that third party could challenge validity of

a contract where she established a "significant and direct interest" in its validity)

[emphasis added]. Ibid .

123.    Defendants herein this cause permitted fraudulent real estate document to

be recorded and an illegal auction to occur. Mortgage Electronic Registration

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

Systems, Inc., Jon Secrist and Defendant NICHOLE CLAVADETSCHER, robo

signature appears on recorded document; despite code specifying "the mortgage

servicer must review competent and reliable evidence to substantiate the

borrower's default.  (see exhibit "H-L ")

124. The law prohibits Dual Tracking.  California Code of Civil Procedure, Section

2924.18 states, if a borrower submits a complete application for a first lien loan

modification offered by, or through, the borrower's mortgage servicer, the

mortgage servicer shall not record a notice of default, record a notice of sale, or

conduct a trustee's sale while the complete application is pending, and until the

borrower has been provided with a written determination by the mortgage servicer

regarding that borrower's eligibility for the requested loan modification. Dual

tracking refers to the practice of moving ahead with the foreclosure process while

simultaneously evaluating a homeowner for a loan modification or ***other***

***assistance*** (See Exhibit "DD"-"HH") as Plaintiff was receiving "other assistance"

to  settle and negotiate the purported account with SPS (See Exhibit "CC-HH").

Plaintiff had an open  escrow with SPS to modify and  settle the false claims

against her title and the auction was held, dual tracking occurred.

Whether through negligence or malicious intent, dual tracking was a very

common practice in the industry, and HBOR was passed, in large part, to rein it in.

Both large and small servicers are prevented from moving forward with

foreclosures—through recording a notice of default, notice of trustee sale, or by conducting the sale itself—while a complete, first lien loan modification is pending. The servicer must provide a written denial and wait for an appeal period to expire before moving forward with foreclosure. SPS did not send a denial letter for the escrow and did not address Plaintiffs offer to tender, as they refused tender. In Plaintiffs case SPS agreed to negotiation settlement discussions and did not follow through in good faith.

125.    California Code of Civil Procedure, Section 2924.19 provides a private right of action against Smaller Residential Mortgage Lenders for material violations of Sections 2923.5, 2924.17 or 2924.18, and Section 2924.12 provides a private right of action against Larger Residential Mortgage Lenders for material violations of Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.  After foreclosure, a borrower may recover actual economic damages resulting from a material violation of any of those sections, where the violation was not corrected prior to the foreclosure. If the material violation was intentional or reckless or resulted from willful misconduct by the mortgage servicer, the court may award the borrower the greater of *treble actual damages* or statutory damages of $50,000.  A prevailing borrower under either Section 2924.19 or 2424.12 may be awarded attorney's fees and costs.  Plaintiff believes SPS acted in willful misconduct and was intentionally reckless.

126.    The foregoing is in addition to any other rights, remedies, or procedures

available under any other law. A violation of the sections shall also be deemed a

violation of the lender's license, and subject it to appropriate action by its licensing

agency.  Plaintiff has not been answered as to who or what the "lender" is

represented to be and as a matter of fact, in court July 30, 2018 there was no

current "lender" to identify, see exhibit " " attached, the transcript from that

hearing, the purported current "lender" is conjecture and confused the court,

Plaintiff and Defendants, no answer could be reached. Plaintiff stated the paper

could have been sold 60 different times by Defendants, she did not know who the

current lender was supposed to be, but she knew none of the Defendants had

standing to take her property.

127.    California Code of Civil Procedure, Section 2924(a)(6) was added stating

that **no entity shall record or cause a notice of default to be recorded or**

**otherwise initiate the**

**        foreclosure process unless it is the holder of the beneficial interest under**

**the mortgage or deed of trust,** the trustee under the deed of trust, or the

designated agent of the holder of the beneficial interest acting within the scope of

its authority. Select Portfolio Servicing, Inc  and The Bank of New York Mellon

as Trustee caused unlawful recorded documents to be uttered and recorded.   No

one can be holder in due course of a void contract and Defendants were given

evidence enough to cause them to stop their damages against Plaintiff, the

Defendants chose to ignore the evidence and proceed.

127.    Plaintiff claims breach of contract related to the forgeries and misconduct

of the Defendants violating this cause of action under HBOR. The forged Grant

Deed, The forged and robo-signed Corporation Assignment of Deed of Trust, The

Forged Cell Tower Contract, to name three known (see Exhibits "B","G"-"L"):

more may be known or unknown and found through discovery, yet all fall under

the following CA Penal Codes; Recording false documents include in California:

for instance actions rose to the level of violations pursuant to;

> *CA Penal Code §115 - felony* (knowingly procures or offers false document for recording or filling);
> *CA Penal Code §115.5 - felony* (recording false document affecting title);
> *CA Penal Code §115.5 - felony* (false sworn statement to notary);
> CA Penal Code §118 - felony (perjury).
> *CA Penal Code §132 - felony* (offering false evidence);
> *CA Penal Code §134 - felony* (preparing false document for deceitful purposes);
> *CA Penal Code §470(a) - felony* (forgery - no authorization to sign);
> *CA Penal Code §470 (c) - felony* (forgery - falsified court evidence);
> *CA Penal Code §470(d) - felony* (forgery - falsified acknowledgement);
> *CA Penal Code §471 - felony* (forgery - falsifying records);
> *CA Penal Code § 471 - felony* (falsified acknowledgement);
> *CA Penal Code § 475 - felony* (forgery - facilitating passage of forged instrument);
> *CA Penal Code 484(a) - felony (*fraudulent representation to defraud a person of money or real property);
> CA Penal Code 1189(a)(2) - felony (notary false statement);
> Cal. Government Code 8225 - (Notary coercion);
> *Texas Government Code 406.009(6) - (*Notary/Signatory fraud);
> Orange County Real Property Transfer Tax Code misdemeanor; and,

CA Penal Code 489(b) - felony (Grand Theft and grounds for) *Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal. App. 4th 579, 583 (2009)

128.     "The trustee in non-judicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary." (See Exhibit "CC "Plaintiff sent to Defendants in October 2015) The Trustee had a duty to both Plaintiff and also to an unknown alleged beneficiary, but Plaintiff claims the Trustee sale was void due to breach of contract, biased and unlawful without any concern by the Trustee acting for SPS to the integrity of the action and had a complete disregard for the law or forgeries.

129.     Defendants SPS and BONYM, MERS violations of dual tracking, robo-signing, to name two and not to be inclusive but a piece of the HBOR violations, not proving that they have standing or authority to act against the Plaintiff and these malicious actions and their unclean hands  have caused Plaintiff injuries, and such violations of the HBOR is the proximate cause of  those un-liquidated damages. Plaintiff had her equity down payment of $510,000.00 stripped, her payments that are still not correctly calculated by documents but in excess of $1,000,000.00. Plaintiff lost the equine therapy animals, home, land, personal belongings, family heirlooms, and the inheritance of Plaintiff's children, as interested parties and heirs. Plaintiff has lost good health, happiness and security. Plaintiff lost the ability to trust law enforcement or public servants.  The

Defendants have taken all of Plaintiffs trust in the judicial system as Plaintiff fears

prejudice and bias due to being treated as an indigent by both when in fact Plaintiff

is the Real Party of secured interest.

130.    Plaintiff has a Notice of Default, filed in the Orange County Land Records

July, 2015,(See Exhibit "D") without rebuttal by Defendants, in the amount of

$15,300,000.00 and a writ of tort for another $15,100,000.00 combined and

verified in escrow. These are verifiable damages.

131.    Under HBOR Home owners Bill of Rights (4) violation of Business and

Professions Code section 17200; and (5) accounting.  The Defendants

SPS/BONYM/MERS have entered documents into the court that have material

defects and create unfair disadvantage and injury for the Plaintiff when the court

views them as fact, when in fact Plaintiff brings evidence that proves the material

defects with use of robo signers and false notaries. These documents are uttered to

the court to give a false perception of a contract existing and standing the

Defendants as a whole do not have against these claims. To include, but not be

exclusive of others Plaintiff brings more claims of injury for, these documents;

132.    T. Sevillano's name appears on two (2) documents Defendants' have

presented to the Court previously known as "M", "N" and void for facts in evidence

Plaintiff  proves. Notice of Default and Election to Sell Under Deed of Trust Doc

#2010000213610  recorded May 6, 2010 (See Exhibit "M").  It claims a default on May 4,

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
67

2010 to Bank of New York Mellon as Trustee, and it is signed by Betty Jo Livingston as an agent for the "beneficiary" Recontrust Company, N.A.  The document attached with it is California Declaration was signed by a T.A. Simmons with false claims of speaking to Plaintiff on April 15, 2010.

  a. Document filed without assignment of Corporate Deed of Trust to the BONYM as Trustee.

  b. Recontrust Company, N.A. was removed in July 2008 as Trustee replaced by ReconTrust Company.   Defendants Exhibit "E" known as Substitution of Trustee. Another was recorded in Riverside County.

  c. The name of BONYM as Trustee does not match the alleged name currently on Plaintiff's title.

  d. The Declaration was created April 15, 2010, and again, no assignment.

  e. Debt Collectors and Attorneys' have relied upon this document and presented as fact at the time to proceed in an election to sell under the Contract known as a Deed of Trust, which caused Plaintiff extreme stress and severe emotional injury, when in fact it is a void instrument ab initio.

  f. T. Sevillano is the named party to return the document to c/o ReconTrust Company.

g.  The document lacks the notice that it is an attempt to collect a debt as required.

133.  "I" Corporate Assignment of Deed of Trust Doc #2010000234975 recorded May 19, 2010 . This document claims to assign the contract to The Bank of New York Mellon as Trustee allegedly signed by Ahmad Afzal and notarized on May 10, 2010 by T. Sevillano as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. This document is over 3 years past the cutoff date of July 1, 2007 required in the Pooling and Servicing agreement and Prospectus.

134.  The Document has been notarized to include two (2) known robo signers, Ahmad Afzal and T. Sevillano.  Ahmad Afzal's name is in Block Letters, with signature not being legible.  The Date of May 4, 2010 is written in at the time of the notary, not a valid date and used to give an appearance of happening the same day as the NOD with Sevillano's name on it. This was deceptive, intentional and malicious intent to file a forged document.

135.  Plaintiff had filed a notary bond claim for Afzal's document and was denied only due to the fact that said bond was already being paid out for fraud by a judgment.  Plaintiff was two (2) weeks too late to join in the Action. (See Exhibit "O")

136.  Corporation Assignment of Deed of Trust Recorded October 26. 2010 as doc # 2010000564031.

a. Plaintiff was awarded the notary bond of Jon Secrist for her forgery and robo signing claim

b. Nichole Clavendetshcer is a known robo signer

c. This document is three (3) years past the cutoff date

## COUNT III:

## PROMISSORY ESTOPPEL

## AS RELATING TO DEFENDANTS COMMONWEALTH LAND TITLE INSURANCE COMPANY

137.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

138.    Promissory estoppel serves as a "consideration substitute" in purported contract law that renders certain promises otherwise lacking in consideration binding and enforceable.  In such cases, the promisee's reliance is treated as an independent and sufficient basis for enforcing the promise. Promissory estoppel can be viewed as a legal device that prohibits the promissor from denying the existence of a purported contract for lack of consideration.

139.  In general, the elements of promissory estoppel are:  1) a promise reasonably expected by the promissor to induce action or forbearance; 2) action or forbearance by the promisee in justifiable reliance on the promise (i.e. "detrimental reliance"); 3) injustice can be avoided only through enforcement of the promise.

140.  Plaintiff's entire life (family, friends, work, fellowship…) relied on the promise that was made to her when she purchased her home and Title Insurance to protect her Title Integrity.  For the past eleven (11) years, Plaintiff has been in a fragmented state of mind, unable to stay focus, due to the on-going high level of stress in her life, inflicted by Commonwealth Land Title Insurance Companies failure to perform under the terms of the Title Insurance Contract owned by Plaintiff.

141.  As a direct and proximate result of the Defendants' conduct, Plaintiff has been damaged in an amount to be established at trial, but not less than the NOD she filed July 13, 2015 (See Exhibit "D").

142.  As a result, Plaintiff has suffered physical, psychological, emotional, and economic damages. Defendants' have caused Plaintiff damages, and such breach is the proximate cause of those un-liquidated damages. Plaintiff had her equity down payment of $510,000.00 stripped, her payments that are still not correctly calculated by documents but in excess of $1,000,000.00. Plaintiff lost her equine therapy animals, she lost her home, land, personal belongings, family heirlooms, and the inheritance of her children, as interested parties and heirs. Plaintiff has lost her health, happiness and security. Plaintiff lost her ability to trust law enforcement or public servants, the Defendants have taken all of Plaintiffs trust in the judicial

system as she fears prejudice and bias due to being treated as an indigent by both when in fact she is the Real Party of secured interest.

## COUNT III

## PROMISSORY ESTOPPEL AS RELATING TO DEFENDANTS, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ALTERNATIVE LOAN TRUST 2007-HY9, BANK OF AMERICA, N.A.; MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY9; SELECT PORTFOLIO SERVICING, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; JON SECRIST; NICHOLE CLAVADETSCHER

143.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein and realleges her claims in the Promissory Estopple of COMMONWEALTH LAND TITLE INSURANCE.

144.    Promissory estoppel serves as a "consideration substitute" in purported contract law that renders certain promises otherwise lacking in consideration binding and enforceable. In such cases, the promisee's reliance is treated as an independent and sufficient basis for enforcing the promise. Promissory estoppel can be viewed as a legal device that prohibits the promisor from denying the existence of a purported contract for lack of consideration.

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
72

145.   In general, the elements of promissory estoppel are:  1) a promise reasonably

expected by the promisor to induce action or forbearance; 2) action or

forbearance by the promisee in justifiable reliance on the promise (i.e.

"detrimental reliance"); 3) injustice can be avoided only through enforcement

of the promise.

146.     Plaintiff's entire life (family, friends, work, fellowship…) relied on the

promise that was made to her when she purchased her home and Title Insurance

to protect her Title Integrity.  For the past eleven (11) years, Plaintiff has been

in a fragmented state of mind, unable to stay focus, due to the on-going high

level of stress in her life, inflicted by Defendants failure to be transparent and

not having a meeting of the minds.

147.     As a direct and proximate result of the Defendants' conduct, Plaintiff has

been damaged in an amount to be established at trial. As a result, Plaintiff has

suffered physical, psychological, emotional, and economic damages.

Defendants' have caused Plaintiff damages, and such breach is the proximate

cause  of those un-liquidated damages. Plaintiff had her equity down payment

of $510,000.00 stripped, Plaintiff's payments that are still not correctly

calculated by documents but in

excess of $1,000,000.00. Plaintiff lost her equine therapy animals, she lost her

home, land, personal belongings, family heirlooms, and the inheritance of her

children, as interested parties and heirs. Plaintiff has lost her health, happiness and security. Plaintiff lost her ability to trust law enforcement or public servants, the Defendants have taken all of Plaintiffs trust in the judicial system as she fears prejudice and bias due to being treated as an indigent by both  when in fact she is the Real Party of secured interest.

**COUNT V**

**BREACH OF CONTRACT**

**AS IT RELATES TO COMMONWEALTH LAND TITLE INSURANCE COMPANY**

148.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff is required to plead and show specific elements:  (1) The existence of a purported  contract; (2) Plaintiff's performance or excuse for nonperformance; (3) Defendant's breach, and (4) Damages to Plaintiff there from. (See Exhibits "T-V")**Plaintiff factually claims that her Title Policy is a breached contract.** *What Is a Title  Company?*

*link;https://www.legalmatch.com/law-library/article/title-company-lawsuits.html*

A title company is a company that provides title insurance for property owners. The title insurance provides protection from the owner, and sometimes mortgage lenders, from any legal claims or lawsuits connected with the

property title. In addition to title insurance, title companies also handle a number of different tasks. For instance, they also:

Check to ensure that a title is true, legitimate, and free of any defects that might hinder a sale or transfer of property. This includes performing a title search with the county recorder of deeds to ensure that no other person owns the property and that there are no disputes or claims on the title; Check for any liens, judgments, mortgages, or unpaid taxes; Check for any easements, leases, or other issues that might affect ownership of the property; Request and oversee a property inspection and boundary inspection, to ensure that there are no conflicts regarding fences, boundaries, and encroachments onto the surrounding property areas; Maintain real estate trust fund accounts and escrow accounts; Ensure that all titles, deeds, and other documents are recorded and filed in the appropriate manner. Common Legal Issues Associated with Title CompaniesWorking with a title company can help a property transaction go more smoothly. However, title companies can also be associated with some specific types of legal disputes. These include...

- ***Breach of contract between the property owner and the title company***
Title companies and their agents are generally held to a certain standard when it comes to the thoroughness and accuracy of their work. If the homeowner or potential buyer feels that the company or their agent did not

exercise reasonable efforts in performing their duties, they might be able to

hold the title company...liable for losses connected with the transaction...

149.   The Title Insurance Policy was issued by COMMONWEALTH LAND

TITLE INSURANCE COMPANY through Equity Title Company as their agent.

150.   Defendant COMMONWEALTH LAND TITLE INSURANCE COMPANY,

as a Title Insurance Company. Required by COUNTRYWIDE BANK FSB

purported contract to give clear title in order for Purported contract to be executed.

Plaintiff contacted the Title Insurer as evidence of forgeries, clouds on title, void

contracts and easement issues were found. (See Exhibit "T")

151.   Defendant denied coverage and refused to help Plaintiff with her landlocked

title policy and forged grant deed, forged Cell Tower Contract.

152.   Plaintiff was forced to contact the California Insurance Commission

153.   Plaintiff spent 2 years seeking approval and help from Title Insurance only to

have one issue begin remedy, that issue was no legal easement. This ended in

November 2016 after the auction sale took Plaintiffs title. Although, the Title

insurance is clear that Plaintiff does not have to be on title in order to pursue

damages to her title that existed at he time the insurance was issued.

154. The Cell Tower Company, Crown Castle Communications, does not have a

legal easement or contract recorded in Orange County California in 2007, they

only filed a document during the time escrow was open, May 2007, and it was

deceptively placed in Los Angeles County Records, later to be recorded in Orange

county years later. In 2014 Plaintiff was sent a document by representatives of the

Cell Tower Company and what they sent showed a void contract, it was signed

before existing. It was notarized on May 5, 2007 but the contract was actually

dated May 10, 2007, notarized 5 days before existence. Commonwealth refused to

help and Plaintiff experienced Orange County Sheriff Swat teams without warrant,

on or about October 2015, trespass and Sheriffs forced Plaintiff to give a right of

way to the Cell Tower employees through a gate on Los Robles street, that Plaintiff

does not have an easement to give.

155.  Plaintiff spent countless hours sending evidence and proof of void contract to

all Defendants and their representatives and assigns, evidence and proof that

Plaintiff believes Commonwealth as her Title Insurer should have done for her.

The amount of extreme forgeries and uttering of false claims against Plaintiffs

property could have ended in 2012 When the Title Company was first contacted,

but the damages escalated in severity and today Plaintiff is homeless due to the

forged documents and void contract defending  Plaintiff's life and property against

the very parties who she paid to protect and defend her title for her as paid to do.

Plaintiff brought valid claims for coverage to be granted by Title Insurance; The

forged Grant Deed dated April 27, 2007; The forged and robo-signed Corporate

Assignment of Deed of Trust dated October 10, 2010 but required to be in the

Trust at closing July 1, 2007; The Forged Cell Tower Contract dated May 10, 2007.  Plaintiff names three known, more may be known or unknown and found through discovery, yet all fall under  the following CA Penal Codes; (see Exhibit "CC")

156. Recording false documents include in California: for instance, actions rose to the level of  violations pursuant to;

> *CA Penal Code §115 - felony* (knowingly procures or offers false document for recording or filling);
> *CA Penal Code §115.5 - felony* (recording false document affecting title);
> *CA Penal Code §115.5 - felony* (false sworn statement to notary);
> CA Penal Code §118 - felony (perjury).
> *CA Penal Code §132 - felony* (offering false evidence);
> *CA Penal Code §134 - felony* (preparing false document for deceitful purposes);
> *CA Penal Code §470(a) - felony* (forgery - no authorization to sign);
> *CA Penal Code §470 (c) - felony* (forgery - falsified court evidence);
> *CA Penal Code §470(d) - felony* (forgery - falsified acknowledgement);
> *CA Penal Code §471 - felony* (forgery - falsifying records);
> *CA Penal Code § 471 - felony* (falsified acknowledgement);
> *CA Penal Code § 475 - felony* (forgery - facilitating passage of forged instrument);
> *CA Penal Code 484(a) - felony (*fraudulent representation to defraud a person of money or real property);
> CA Penal Code 1189(a)(2) - felony (notary false statement);
> Cal. Government Code 8225 - (Notary coercion);
> *Texas Government Code* 406.009(6) - (Notary/Signatory fraud);
> Orange County Real Property Transfer Tax Code misdemeanor; and,
> CA Penal Code 489(b) - felony (Grand Theft and grounds for) Pro Value Properties, Inc. v. Quality Loan Service Corp., 170 Cal. App. 4th 579, 583 (2009)

157.   FEDERAL FORGERY LAWS AND PENALTIES. Plaintiff claims that the three (3) documents herein mentioned above, the forged Grant Deed dated April 27, 2007; The forged and robo-signed Corporate Assignment of Deed of Trust dated October 10, 2010 but required to be in the Trust at closing July 1, 2007; The Forged Cell Tower Contract dated May 10, 2007 but notarized 5 days prior, fall under Federal forgeries as "uttering false instrument". Without the forgeries Plaintiff would still have possession of all her property and not have the injuries she has sustained from the Defendants. Commonwealth Land Title Insurance Company was paid for Plaintiffs Title policy to protect her from this kind of title theft and her Title Policy has been breached for failure of Commonwealth Land Title Insurance Company to perform.

Forgery (also known as "uttering a false instrument") is a serious offense, punishable as a felony in all fifty states and by the federal government. Forgery involves the making, altering, use, or possession of a false writing in order to commit a fraud. It can occur in many forms, from signing another person's name on a check to falsifying one's own academic transcript. When the subject of forgery is currency, it is also referred to as counterfeiting.

"forging another person's signature on a document is a material alteration because it misrepresents the identity of the person who signed the document, which has serious legal consequences. Deleting, adding, or changing significant portions of documents may also be "material" alterations, if these changes affect the legal rights or obligations represented in the documents. Additionally, as discussed above, using or possessing false writings also constitutes forgery, although in some jurisdictions this is known as "uttering a forged instrument."...

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
79

A false writing: Not all writings meet the definition of forgery. To serve as the basis for forgery charges, the writing in question must have both legal significance and be false, as discussed below.

**The writing must have apparent legal significance.** In order to be punishable as forgery, the writing in question must have apparent legal significance. This includes government-issued documents such as drivers' licenses and passports; transactional documents such as deeds, conveyances, and receipts; financial instruments such as currencies, checks, or stock certificates; and other documents such as wills, patents, medical prescriptions, and works of art.

**Federal Anti-Forgery Laws.** Although forgery is most commonly prosecuted at the state level, certain types of forgery are also considered felonies under federal law. For example, <u>identity theft</u>, a type of forgery wherein a person forges a writing in order to assume the identity of another, is a felony under federal law, punishable by a fine and many years' imprisonment. Federal law also prohibits other types of forgery, such as counterfeiting money; forging federal documents like immigration documents or military discharge certificates; or forgery intended to defraud the federal government. Forgery also automatically becomes a federal offense if a forged document is carried or mailed across interstate lines, or if the forgery occurs in multiple states.

158.     Defendants' breach has caused Plaintiff damages, and such breach is the proximate cause of those un-liquidated damages. Defendants would not honor their Title Insurance Contract as Plaintiff had paid for them too. Plaintiff had her driveway defaced by a fake survey taking some of her driveway and Defendants did nothing to assist. Plaintiff had her equity down payment of $510,000.00 stripped, her payments that are still not correctly calculated by documents but in all it is in excess of $1,000,000.00. Plaintiff was swat teamed without warrant by OC Sheriffs, she was threatened by Deputies and had trespass of her property due

to disagreements with easements, she lost her equine therapy animals, she lost her home, land, personal belongings, family heirlooms, and the inheritance of her children, as interested parties and heirs. Plaintiff has lost her health, happiness and security. Plaintiff lost her ability to trust law enforcement or public servants, the Defendants have taken all of Plaintiffs trust in the judicial system as she fears prejudice and bias due to being treated as an indigent by both when in fact she is the Real Party of secured interest.

*Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, Order at 1, No. 05–281 (E.D.Pa. Mar. 23, 2011), ECF No. 67.

> Conclusion; "We will affirm the District Court's holding that the ALTA 9 Endorsement insures against any loss sustained from an instrument that is covered by the plain language of ¶ 1(b)(2). This case will return to the District Court for the determination of damages owed to Nationwide."

## COUNT IV
## BREACH OF CONTRACT AS IT RELATES TO DEFENDENTS
## SELECT PORTFOLIO SERVICING,
## MORTGAGE ELECTRONIC REGISTRATION SYSTEM,
## THE BANK OF NEW YORK MELLON AS TRUSTEE

160.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff is required to plead and show specific elements:  (1) The existence of a purported contract; (2) Plaintiff's performance or

excuse for nonperformance; (3) Defendant's breach, and (4) Damages to Plaintiff there from.

161.      (1) The Deed of Trust in this case is an unenforceable purported contract under CALIFORNIA law.  The purported Deed of Trust defines "Lender" as "COUNTRYWIDE BANK, FSB".  Purportedly funded July 2, 2007,$1,190.000.00 and a $510,000.00 down payment, plus fees, was made by Plaintiff. When Countrywide Employees told Plaintiff she had to stop payments in order to seek assistance, creating a breach of contract and as successors as Beneficiary Select Portfolio Servicing should be the likely party responsible to this breach.

162.      (1) MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC" is allegedly  defined as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns . . . MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is a beneficiary under this Security Instrument . . ." Plaintiff will show the jury how MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is a concealed patent and trademark that is not authorized to be a beneficiary or authorized to do business in California at the time, the Contract was created.(3) The term 'Lender' includes any **holder of the Note** who is entitled to receive  payments under the Note." Only the "Lender" can foreclose on the property.  **Plaintiff's purported Note was secured by a void Contract. Plaintiff has already produced evidence that there is no original**

**note and that SPS entered into a negotiation to settle after this fact was made**

**known in their office in Utah. (See Exhibit "CC"-GG")** SPS Attorney Scott

Hansen breached his contract with Plaintiff when he failed to negotiate and settle

the matter.

163.     Plaintiff gives evidence established in fact herein that there is no genuine

promissory note or contract in this case as fact shown in the meeting of February

2016 in the SPS Utah office where no genuine documents, for the 3rd time were

able to be produced and SPS Attorney Scott Hansen contracted to negotiate and

settle the account. (See Exhibit "CC" -"GG" escrow documents regarding

settlement)

164.     The party under the Deed of Trust taking property must be a "Lender" as

the Deed of Trust defines "Lender." No Defendant is or can be a "Lender" with

power to foreclose because the Deed of Trust defines "Lender" to "include "any

Note Holder," and no Defendant can prove it holds or held the Note and in FACT

Plaintiff proved there is no original wet ink signature document.  The only other

party that can be a "Lender" under the Deed of Trust, other than the Note Holder,

is the original lender, who sold the Note along the chain of securitization years ago

and destroyed the NOTE.

165.     In order for the original lender to sell the Note they must abide by the Deed

of Trust which states the Note must be sold "together with the security

instrument." No Defendant properly transferred the Note "together with" the Deed of Trust; therefore, no Defendant is a "Lender" with the right to foreclose under the Deed of Trust.

166.    Defendants have breached the Deed of Trust by causing to be filed documents in the Real Property records indicating they have a secure interest under the contract as Deed of Trust when they do not and cannot act as a "Lender" under that instrument.

167.    Defendants Select Portfolio Servicing, Inc falsely appear on Insurance Documents as the "mortgagee". SPS is not the "holder in due course, "Lender" or "Mortgagee" and could not have recorded documents without the consorted effort of other Defendants.

168.    Defendants' breach has caused Plaintiff damages, and such breach is the proximate cause of those un-liquidated damages. Plaintiff had equity down payment of $510,000.00 stripped, Plaintiff's payments that are still not correctly calculated by Documents. Plaintiff lost equine therapy animals, home, land, personal belongings, family heirlooms, and the inheritance of Plaintiff's children, as interested parties and heirs. Plaintiff has lost her health, happiness and security. Plaintiff lost her ability to trust law enforcement or public servants, the Defendants have taken all of Plaintiffs trust in the judicial system as Plaintiff fears prejudice and bias due to being treated as an indigent by both when in fact Plaintiff is the

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

Real Party of secured interest. Plaintiff has a Notice of Default, filed in the Orange

County Land Records July, 2015, without rebuttal by Defendants, in the amount of

$15,300,000.00 and a writ of tort for another $15,100,000.00 combined and

verified in escrow. These are verifiable damages.(See Exhibit "D")

**COUNT V:**

**UNFAIR COMPETITION LAWS (UCL)**

**AS IT RELATES TO ALL DEFENDANTS,**

**OMITTING BANK OF AMERICA, N.A. AND THOMAS PEPPERS**

169.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as
though fully set forth herein.

170.  Defendants, omitting BofA, N.A. and Thomas Peppers, are a business that
have engaged in acts or practices that are unlawful and unfair with respects to their
dealings with and concerning Plaintiff.

171.  California state courts have repeatedly held that all that is necessary to
establish a violation of B&P § 17200 et seq., is to show that the defendant is a
business engaged in acts or practices that are unlawful, fraudulent or unfair. "
*Daugherty v. American Honda Motor Co., Inc. (2006) 144 Cal. App. 4th 824, 837.*
*The government of the United States sees Defendants as using unlawful, fraudulent*
*or unfair practices too;* UNITED STATES OF AMERICA Before the SECURITIES AND
EXCHANGE COMMISSION v BANK OF NEW YORK;  INVESTMENT COMPANY ACT

OF 1940 Release No. 32151/ June 13, 2016 ADMINISTRATIVE PROCEEDING File No. 3-17286. All Defendants, less Peppers have cases involving the government bringing cases against them for such.

172.  The unlawful practices prohibited by the statute are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made. *Saunders v. Superior Court (1994) 27 Cal. App. 4th 832, 838-39.*

173.  An unlawful business practice or act is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *People v. Casa Blanca Convalescent Homes, Inc. (1984) 159 Cal. App. 3d 509, 530.*

174.  Plaintiff alleges that Defendants' conduct, to include and as already stated in Exhibits to the individual Defendants and their participation, uttering false claims and documents, recording documents with known forgeries, not removing falsely recorded documents all constitute an unfair business act or practice under Bus. and Prof. Code 17200, violating numerous Federal laws pertaining to residential real property.  Defendants' conduct has inflicted and continues to inflict harm onto Plaintiff, such conduct is without any legitimate business justification, and such conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiff and to the public at large.  The

harm to Plaintiff caused by Defendants' conduct far outweighs any alleged benefits that Defendants might claim.

175.  Defendants' unlawful business practices were intentional, malicious and oppressive, which has physically harmed Plaintiff, thereby entitling Plaintiff to recover punitive damages in an amount to be determined at trial.

Defendants' unlawful business practices together has caused Plaintiff a disadvantage in stopping the damages, and such deceptive actions are the proximate cause of those un-liquidated damages. Plaintiff had her equity down payment of $510,000.00 stripped, her payments that are still not correctly calculated by documents but in excess of $1,000,000.00 and through further Discovery Plaintiff will show unjust enrichment to Defendants. Plaintiff lost her equine therapy animals, she lost her home, land, personal belongings, family heirlooms, and the inheritance of her children, as interested parties and heirs. Plaintiff has lost her health, happiness and security. Plaintiff lost her ability to trust law enforcement or public servants, the Defendants have taken all of Plaintiffs trust in the judicial system as she fears prejudice and bias due to being treated as an indigent by both when in fact she is the Real Party of secured interest and real holder in due course.

Plaintiff has a Notice of Default, filed in the Orange County Land Records July, 2015, without rebuttal by Defendants, in the amount of $15,300,000.00 and a writ of tort for another $15,100,000.00 combined and verified in escrow. These are verifiable damages. (See Exhibit "D ")

## IN SUPPORT OF ALL CAUSES OF ACTIONS AND CLAIMS OF PLAINTIFF

176.   Defendants have all claimed they are without liability to the origination of the contract and therefore have no liability to the Plaintiffs injury or to congressional or other financial laws or regulations for such, but legal intent is clear as successors claiming holder in due course status for standing they are required to follow lending rules and regulations and when in fact any void is found successors have a fiduciary duty to the injured party, and to the court not to intentionally utter false claims. Defendants cannot weasel out of their liability to the Plaintiff for injuries they participate in directly, or indirectly through uttering and recording of false claims and forged documents filed with the courts by merely claiming they have nothing to do with the origination. All Defendants have lawful and legal responsibility not to participate in false claims and a Jury must hear the Plaintiffs evidence and facts as the evidence will clearly show all Defendants are responsible to the Plaintiff for injuries as she claims.

A. MAKING SENSE OF SUCCESSOR LIABILITY By MARIE T. REILLY, PENN STATE LAW. Link is provided in it's entirety as supportive of all of Plaintiffs claims and causes herein.

https://elibrary.law.psu.edu/cgi/viewcontent.cgi?article=1135&context=fac_works page 4..."The other two bases for successor liability reflect the same equitable intuition. When the transferee, although technically distinct, is sufficiently similar to the transferor, the court declares the transferee is the result of a de facto merger between the transferor and the transferee, or declares the transferee to be "mere continuation" of the transferor.7 Under the defacto merger basis, a court re-characterizes an asset transfer as though it were a statutory merger of the transferor with the transferee because the transferee is, in substance, indistinguishable from the transferor.' If the parties had complied with the requisites for statutory merger,

the merger statute would have treated the surviving entity as having acquired the
transferor's assets and liability.9 As one court noted, "[w]hen the form of the
transfer does not accurately portray substance, the courts will not refrain from
deciding that the new organization is simply the older one in another guise."

...footnote 43. Upon avoidance, the transferee must relinquish the transferred
assets or their value to the challenging creditor. See generally CHARLES
JORDAN TABB, THE LAW OF BANKRUPTCY 331 (1997). 44. (Plaintiff is the
challenging Creditor)


**B.** The 49 State National Mortgage Settlement was to resolve servicing
violations. To review the settlement documents for each servicer, go
to www.NationalMortgageSettlement.com. The chart below summarizes how
states allocated their share of the settlement funds...."Although the settlement
resolves some violations, the federal government and state attorneys general did
not release all the potential claims against these five servicers. The federal
government and states can still pursue criminal prosecutions for criminal offenses
and violations of the fair lending laws based on discriminatory conduct.
Securitization claims based on the offer, sale or purchase of mortgage securities are
not released by the settlement. The states also did not release any potential claims
against Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc. or any
tax claims relating to real estate transfer taxes. Mortgage borrowers can still file
claims on an individual or class action basis."

**C.** McGinnis v. American Home Mortgage Servicing, Inc., No. 14-13404
(11th Cir. 2018) Plaintiff does not want more time to pass to get the remedy she
deserves. In This case of McGinnis she had been awarded her jury win in 2014 and
it took 4 years for the appeals court to rule in McGinnis's favor, again. Appeal

ruling forced the Defendants in her case to perform and settle the case as she was awarded.

**D.** Property Title Trouble in Non-Judicial Foreclosure States: The Ibanez Time Bomb?  Plaintiff references this as fact she has no contract and there is no assignment of a contract involving her or her property to the purported CWALT 2007-HY9 Trust as falsely identified on her property title.
https://scholarship.law.wm.edu/cgi/viewcontent.cgi?referer=https://www.google.com/&httpsredir=1&article=1049&context=wmblr
..." In a typical private mortgage loan securitization, each mortgage loan is sold, assigned, or otherwise transferred to a trust through a series of steps and parties, starting with the lender and ending with the trustee. The trustee hires a servicer to collect on the loans, maintains the payment records, and selects foreclosure attorneys in the event of defaults. A document custodian usually stores the notes and mortgages on the trustee's behalf. Applicable state law and the terms of the transaction contracts govern the travel route and the documentation necessary to transfer the mortgage loans legally from one party to the next. The sloppiness and outright fraud exhibited by parties to the securitization deals contributed to a breakdown in the transfer of the mortgage loans from one entity to the next along the route, resulting in serious concerns about who possesses the authority to foreclose in the event of a homeowner default. This behavior is documented in federal and state court decisions, the findings of a state's attorney general and a city recorder office's investigation, studies by law professors, news reports, Congressional testimony, and shareholder lawsuits... What follows in Sections A and B of Part I is a sample of that evidence.

A. Inadequate Documentation; "The federal courts in Ohio were among the first to question standing in numerous foreclosure actions when plaintiffs could not produce relevant documents demonstrating they possessed the right to enforce the mortgage loans at the time of filing the action."... "As Professor Whitman posits, "[w]hile delivery of the note might seem a simple matter of compliance, experience during the past several years has shown that, probably in countless thousands of cases, promissory notes were never delivered to secondary market investors or securitizers, and, in many cases, cannot presently be located at all."

Plaintiff brings attention to a footnote to A. regarding court testimony of Countrywide employee Linda DeMartini who gave testimony that the notes and deeds of trust were destroyed and did not transfer as required. The case as a footnote is the case of  Kemp v. Countrywide Home Loans (In re Kemp), 440 B.R. 624, 628 (Bankr. D.N.J. 2010) (discussing the testimony of Linda DeMartini

regarding the transfer of the note to the trust pursuant to the securitization documents). Bank of America purchased Countrywide in early 2008, making Linda DeMartini a Bank of America employee when she testified. Bank of America to Acquire Countrywide, MSNBC.COM (Jan. 11, 2008), http://www.msnbc .msn.com/id/22606833/ns/business-real_estate/t/bank-america-acquire-countrywide.

Plaintiff also referenced this case in her 2014 Reconciliation and Audit of Records she sent to all the Defendants their assigns and representatives then and numerous times over the years since. It is an exhibit in her filing known as her "Declaration in Support of Preliminary Injunction" she took to the court for filing on September 14 where it was merely stamped as received and again on September 27, 2018 where it was filed in her Notice of Reminder to the court of Documents received and not filed.

   **E.** TRINSEY vs. PAGLIARO

In the Supreme Court of Pennsylvania decision; **Trinsey vs. Pagliaro, D.C.Pa. 1964, 229  F. Supp. 647. ...**
"Statements of counsel in brief or in argument are not facts before the court and are therefore insufficient for a motion to dismiss or for summary judgment."

   **F.** F.A.C.T. Report by Paris Dube; See exhibit "Z " attached

   **G.** In Bank of New York Mellon Trust Company v. Dennis M. Conley, 4D14- 2430 (Fla. 4th DCA Jan. 6, 2016), Florida's Fourth District Court of Appeal clarified the methods by which a foreclosure plaintiff can seek to enforce a note indorsed to another party. Specifically, the court held that, "[w]here a bank is seeking to enforce a note which his specially indorsed to another, the bank is a nonholder in possession." The court went on to hold that in order to prove standing as a non-holder the plaintiff must provide proof of an effective transfer, purchase of the debt, or a valid assignment. In Conley, the court held the foreclosing plaintiff did none of these things. Specifically, the court held that "there is nothing in the record connecting the indorsee, JP Morgan Chase Bank, to the Plaintiff, the Bank of New York Mellon."..." More often than not the evidence necessary to establish standing as a nonholder will require more than just the pooling and servicing agreement. The opinion in Conley is the latest in a series of opinions from the Fourth DCA to find against Plaintiffs where the pooling and servicing agreement was admitted, but the document referenced predecessors to the current players acting as trustee, servicer, custodian, etc. See also Murray v. HSBC Bank USA, 157 So. 3d 355 (Fla. 4th DCA 2015). If such evidence cannot be located, it is

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
91

best to seek to procure the necessary indorsements before filing the foreclosure so that standing can be demonstrated by the more simple proofs necessary to establish standing as a holder." See link https://mortgagefraudexaminers.com/caselaw/foreclosure/PROOF%20REQUIRED%20TO%20ENFORCE%20PROMISSORY%20NOTE%20SPECIALLY%20INDORSED%20TO%20ANOTHER.pdf

Plaintiff contends that Select Portfolio Servicing, Inc. claims to be the beneficiary as Holder in Due Course under the Bank of New York Mellon as Trustee, but BONYM denies owning the title or a loan on the property and Plaintiff already proved through confirmation on or about February 2016 that there is no genuine note held by SPS. See Exhibit "CC"-"HH" documents of escrow & Exhibit "JJ " Gavin Tsang emails)


**H**. HOLDER IN DUE COURSE.> U.C.C. Article 3 = NEGOTIABLE INSTRUMENTS (2002). PART 3. ENFORCEMENT OF INSTRUMENTS https://www.law.cornell.edu/ucc/3/3-302

§ 3-302. HOLDER IN DUE COURSE.

(a) Subject to subsection (c) and Section 3-106(d),"holder in due course" means the holder of an instrument if:

(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).


**I**. THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, v. COUNTRYWIDE FINANCIAL CORPORATION et al. Case # LC081846 The Honorable Carl J. West presiding. https://oag.ca.gov/system/files/attachments/press_releases/n2031_countrywide_complaint.pdf

**J.** Plaintiff filed concurrent as supporting this brief her Request for Judicial

Notice of Documents and the Exhibits all support and include more facts and law

**K.** BANA vs. GRISEL REYES-TOLEDO, SCWC-15-0000005 CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS (CAAP-15-0000005; CIVIL NO. 12-1-0668) OCTOBER 9, 2018in the Supreme Court in the State of Hawaii. Griesel prevailed on appeal. Bank of America, N.A. was tied back by merger to Countrywide and Griesel won on appeal of her claims that Bank of America, N.A. had no standing, (very similar to this case herein) see link. https://www.casemine.com/judgement/us/599ffdd1add7b05defc9b3f9

## L. LEGAL STANDING

Plaintiff claims she has standing as she has met the burden of establishing her injuries are a direct act by third parties and that the injuries are continuing until Plaintiff is awarded the remedy she seeks.  Plaintiff believes her claims are comprehendible  when explained through her evidence, further discovery and cross examination  of Defendants, so that any man or woman as a juror would find reasonable to a decision being made favorable to Plaintiff.

**FEDERAL PRACTICE MANUAL (known herein as "FPM")**
**http://www.federalpracticemanual.org/chapter3/section13.1.A. Overview**

The law of standing has its roots in Article III's case and controversy requirement.1 The U.S. Supreme Court has established a three-part test for standing. The "irreducible constitutional minimum of standing" requires the plaintiff to establish:

### 3.1.A. Overview (FPM)

First ... an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."2

Judge Carter already said this case is compensable at the hearing on November 2, 2017, and then on July 30, 2018.

Constitutional Standards: Injury in Fact, Causation, and Redressability.

Of increasing importance are causation and redressability, the second and third elements of standing, recently developed and held to be of constitutional requisite. There must be a causal connection between the injury and the conduct complained of; that is, the Court insists that the plaintiff show that "but for" the action, she would not have been injured. And the Court has insisted that there must be a "substantial likelihood" that the relief sought from the court if granted would remedy the harm.

The Defendants severe injuries caused against Plaintiff can be remedied in redress of these injuries. Plaintiff is seeking the return of all her property and financial remedy to return her equity and property,  to  include anything known and unknown at this time ie:, use of BILLIE RENE POWERS identity to procure payouts from escrows, property taxes, default insurance claims by Defendants, derivative and alleged securities gains by Defendants through unclean hands taking that which belongs to Plaintiff as the real party of interest and creditor. Redress of these injuries will cure the Plaintiffs damages as she is given the  ruling with Prejudice against Defendants.

Plaintiff proves she has standing for redress of her damages and her remedy is sought with standing to proceed. In the event remedy is not awarded Plaintiff her injuries continue as she has been made homeless, her family belongings, cherished pictures and family memories, her children without their inheritance as interested parties as heirs in succession and her entire estate taken from her through these actions by Plaintiffs, unless remedy is awarded these injuries continue. Causation and redressability are distinguishable and Plaintiff proves the injuries she sustained are directly caused by Defendants and continue.

*In addition to showing an injury-in-fact, plaintiff must also show **"causation" and "redressability."** In other words, plaintiff must show that defendant is the "cause" of the injury, and that the injury will be **redressable** by a favorable judicial decision.*

## CONCLUSION RELIEF BEING SOUGHT AND GROUNDS FOR THIS MOTION

**177.** Plaintiff, as the Real Party of Interest & Holder in Due Course, seeks relief for

the damages inflicted upon her by the Defendants who conspired together in

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

94

actions as debt collectors, with other labels and titles, to give a presumed standing for them to separate Plaintiff from her property. Plaintiff brings this case with legally sufficient claims.  She seeks financial relief, the return of her private residential real property, our family personal belongings, furnishings, her heirs inheritance and to correct the theft of their property through accounts of false claims and unclean hands of the Defendants.

Plaintiff claims that as a result of defendants' acts and misrepresentations, she and her family been deprived of the use, possession, and value of our property; have lost the funds, over $510,000,000.00, that she invested in the purchase down payment of the private residential real property; and the payments made to debt collectors, by her directly or on our behalf, in excess of $400,000.00 and have lost the funds, time, and labor that she invested in rehabilitating the property after purchase, in excess of $400,000.00 over the 10 years and 2 months Plaintiff had possession of the property and lived on it prior to the violent lock out on September 21, 2017.  i bring these 5 causes of actions as grounds to move forward; CONSPIRACY; VIOLATIONS OF HOMEOWNERS BILL OF RIGHTS HBOR; PROMISSORY ESTOPPEL; BREACH OF CONTRACT; UCL.

Plaintiff bring these causes with merit and through the best of her ability as a Pro Per claimant  with no legal training. She demonstrates to the court that she has standing and brings her claim with merits, where Defendants have no standing and are uttering false claims.

This motion is filed due to Commonwealth Land Title Insurance Company not giving Plaintiff what she paid for in her Title Policy, protection from theft of title and to insure her purchase of her home was free of false claims against her title. With knowledge of the evidence all Defendants knowingly proceeded against Plaintiff, conspiring together to complete the taking of her property, equity and the

estate with her heirs in succession also harmed. Plaintiff claims this to be a huge

ponzi scheme of misconduct and intentional theft.

When Plaintiff found, including but not inclusive of, the forgeries of the

purported April 2007 grant deed and the void assignment of Corporate Deed of

Trust notarized by Jon Secrist, and the one including Ahmad Afzal, she found she

has no legal easement and was sold a landlocked title policy. Plaintiff reached out

to have the Title Insurance policy enforced.  She found through due diligence and

research of the 49 State National Mortgage Settlement, among others related to the

Defendants involvement, that what she thought was a contract was void ab initio

and as such she sought out all Defendants who sent debt collection letters,

including threats of legal actions and taking her private residential real property.

Plaintiff contacted Defendants separately and due to the lack of offering her

the remedy to evidence and claims she must bring these defendants and their

accomplices, known and unknown at this time, forward to remedy her severe

injuries caused. Her evidence proves the injuries caused have been and continue to

be intentionally inflicted by the malicious hands of the Defendants.

This motion is filed to find additional answers, who is the alleged "lender"

that gave authority to all actions against the Contract?  Defendants as alleged

assigns or representatives of  "Countrywide Bank, FSB", Where is the authority for

that lender to lend Plaintiff any credit? Under what authority does the "lender" do

business in California? Where is the required Cash Collateral Deposit equal to

100% of the alleged loan of  $1.190,000.00?  Without a an assignment to a genuine

contract or note how can any Defendant claim to be a "Holder in Due Course" to

take Plaintiffs property? How can Defendants claim no knowledge or liability to

origination of the contract but feel entitled to create false documents and claims to

enforce it?

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT
96

"In commerce, truth is sovereign."[1] Thus, Plaintiff appreciate the court's request for a 4th amended complaint, as it will simplify future proceedings due to newly discovered evidence from this matter's recently completed disclosures and discovery process.

Plaintiff has exercised her right to disclosure and discovery since the day of the signing of escrow documents; and as of October 8, 2018, they are all now complete. They lend further credence as to why, by Notarial Presentment, Plaintiff in return defaulted the alleged first lender and Defendants; and did "rescind" all the original and subsequent manufactured, transactional documents she autographed due to numerous misrepresentations and consequential breaches of contract. Said rescission does not require court action; however, a court can enforce a rescission's peaceful, fair and equitable resolution under the law; but especially where deceit and misrepresentation by a fiduciaries', wrongdoers' silence[2] abundantly abounds.

That default and rescission was perfected and filed years ago in the public record on JULY 2015. (See Exhibit "D")

This motion is filed through order of Judge Carters dated September 19, 2018, where he allows for a 4th Amended Complaint. The Complaint is meant to bring the intent of the lawsuit and prove i have no contract or liability to any of the defendants, in fact the Defendants have liability to me for damages intentionally and maliciously inflicted. i thank the court for this opportunity to state the damages and the merits under which this case must move forward to a jury.

California Constitution as written

SEC. 1.

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and

---

[1]  Biblical Maxim of Law - See Exodus 20:16; Psalms 117:2; John 8:32; II Cor. 13:8.

[2]  *"Silence can only be equated with fraud when there is a legal and moral duty to speak or when an inquiry left unanswered would be intentionally misleading."* U.S. v. Prudden, 424 F2d. 1021, 1032 (1970); cert. denied 400 U.S. 831.  See also *United States of America v. Robson*, 477 F.2d 13, 14,15 (1973) 9th Circuit

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

protecting property, and pursuing and obtaining safety, happiness, and privacy. CALIFORNIA CONSTITUTION ARTICLE 1 DECLARATION OF RIGHTS SEC. 7. (a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws;...

Plaintiff has enough evidence of malicious and  intentional injuries by the Defendants, thousands of pages a vast quantity of expert witnesses available to verify her claims. Jane Doe (previous federal government employee, over 35 years experience, who prosecuted and investigated financial criminals)  is prepared to testify, under seal due to extenuating security needs, to the 1933 Banking Act, it's cause and effect. Jane Doe finds that "the lending industry has perpetuated the most sophisticated and arrogant fraud" using, to include but not inclusive of, Plaintiff being a victim of FINANCIAL CRIMES AGAINST HUMANITY and more facts she will prove to the jury.

Jane Doe will bring solid evidence that i have no lawful contract and that the alleged debt is an unsecured account paraded as a "loan" and taking credits directly from me as purported borrower who is actually the creditor. Jane Doe has evidence to support my claims. When the rule of law is followed the right party will prevail.

Plaintiff apologies to the court as she realizes this is a long claim but she has been accused by Defendants of not being clear on which Defendants did what and why they are liable to her and therefore she did her best to remedy that accusation against her. She prays this claim, although not professional, will been seen as having the merits to go forward to the jury and realizes that the court game the Defendants play is not one of bringing truth, but one like a checkers game and just winning at all cost and the Plaintiff should not have that cost her life.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

1. Plaintiff is the Real Party of Interest, fee simple owner of all rights, title, and interest in and to the described private residential real property;

2. Defendants do not have any lawful right, title, estate, or interest in or lien on the described real property;

3.  Return of possession of Plaintiffs home, land and family belongings

4.  Actual Damages in a sum according to proof, but not less than $30,400,000.00.

5.  Special Damages in an amount to be determined by proof at trial;

6.  General Damages in an amount to be determined by proof at trial;

7.  Punitive Damages in the sum, no less than $63,000,000.00;

8.  Restitution as allowed by law;

9.  Reasonable Attorney's cost and expenses incurred in this action, including counsel fees and expert fees; HBOR also allows for this request; and

10. Such other relief as the Court may deem just and proper.

Plaintiff hereby demands a jury trial on all issues raised in this complaint.

DATED: _Oct 11, 2018_    Respectfully and without prejudice, submitted,

Billie Rene' Frances Lillian Powers
Plaintiff Pro Per

**VERIFICATION**

i am the Plaintiff in this action.  i have read the foregoing Third Amended Complaint, and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, i believe it to be true.

PLAINTIFF'S VERIFIED FOURTH AMENDED COMPLAINT

1         i declare under penalty of perjury under the laws of The united States

2   of America, California State and the State of California that the foregoing is true

3   and correct.

4   Executed on _October 12_ , 2018 at _Casta Mesa_ , California.

5

6   BY: _Billie Rene Frances Lillian Powers_

7   Billie Rene Frances Lillian Powers

8   Plaintiff Pro Per

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28